## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

LEONARD LICHT, ZHENGJUN CAI,
HENRY CHEN, DANIEL CHANG,
DOMINIC CHOW, CHENGGUO DONG,
AMINE FENNANE, IHAB W. FRANCIS,
JOHN GORDON, SHAI GRANOVSKI,
DALTON GREEN, MICHAEL GRILLI,
IRAKLIS KARABASSIS, ALICIA LAU,
TREVOR LAU, NADER LOBANDI, EISI
MOLLANJI, JAMES MOSKWA, ANH
NGUYEN, BRIAN ROTHAUS, GORDON
SHAYLOR, RICHARD SLAVANT,
NATHANIAL THRAILKILL, JACK YAO,
EDMUND YEO, and JUN ZHAI,

     Plaintiffs,

v.

BINANCE HOLDINGS LIMITED, d/b/a
BINANCE.COM, BAM TRADING
SERVICES, INC., d/b/a BINANCE.US, and
CHANGPENG ZHAO,

     Defendants.

No. 1:24-cv-10447-NMG

**Oral Argument Requested**

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' JOINT MOTION TO DISMISS</u>

<u>**TABLE OF CONTENTS**</u>

Table of Authorities ........................................................................................................ ii

Preliminary Statement ..................................................................................................... 1

Background ...................................................................................................................... 4

    I.      Plaintiffs' Exposure to Crypto Fraud Schemes Unrelated to Defendants ............... 4

    II.     Plaintiffs' Five Alleged RICO Enterprises ............................................................. 5

         A.      Enterprises #1–#3 ........................................................................................ 6

         B.      Enterprises #4 and #5 ................................................................................. 7

    III.    Plaintiffs' Inadequate Allegations of Personal Jurisdiction .................................... 8

    IV.    Plaintiffs' Other Cases Seeking the Same Relief from Different Defendants ........ 9

         A.      Coinbase Arbitration .................................................................................... 9

         B.      Plaintiff Licht's Texas Case ...................................................................... 10

Argument ...................................................................................................................... 10

    I.      The FAC Should Be Dismissed for Lack of Personal Jurisdiction ...................... 10

    II.     The FAC Should Be Dismissed for Failure to State a Claim. ............................. 14

         A.      Plaintiffs Fail to Allege Causation. ........................................................... 14

         B.      Plaintiffs Fail to Allege the Existence of a RICO Enterprise. .................. 24

          C.      Plaintiffs Fail to Plausibly Allege Domestic Injury. ................................. 29

          D.      Counts 1–3 Fail to Allege a Proper RICO Predicate. .............................. 31

          E.      Count 1 Fails to Allege BAM's Operation of BHL. ................................. 33

          F.      Counts 5 and 6 Fail to Allege a Conspiracy. ........................................... 34

Conclusion .................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Adams*,
601 F.3d 1 (1st Cir. 2010).................................................................................10

*AngioDynamics, Inc. v. Clarion Med. Techs.*,
No. 18-30038-MGM, 2019 WL 10787926 (D. Mass. Sept. 25, 2019)...................32

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)...........................................................................20, 21, 23

*Bascuñán v. Elsaca*,
874 F.3d 806 (2d Cir. 2017)................................................................29, 30, 31

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................18

*Blockburger v. United States*,
284 U.S. 299 (1932)...................................................................................32

*Boston Carriage, Inc. v. Boston Suburban Coach, Inc.*,
No. 1:21-cv-10688-IT, 2022 WL 4626918 (D. Mass. Sept. 30, 2022)...................28

*Boyle v. United States*,
556 U.S. 938 (2009)..............................................................................25, 27

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
582 U.S. 255 (2017)..........................................................................10, 11, 13

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC, Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) .......................................................................12

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
315 F.R.D. 116 (D. Mass. 2016), *aff'd*, 915 F.3d 1 (1st Cir. 2019)......................14

*Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.*,
788 F. Supp. 54 (D. Mass. 1991) ............................................................26, 28

*City of Almaty, Kaza. v. Ablyazov*,
No. 15-cv-5345 (AJN), 2018 WL 3579100 (S.D.N.Y. July 25, 2018)...................30

*Cory v. Aztec Steel Bldg., Inc.*,
468 F.3d 1226 (10th Cir. 2006) ....................................................................12

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..................................................................................................11, 12

*Deane v. Weyerhauser Mortg. Co.*,
  967 F. Supp. 30 (D. Mass. 1997) .........................................................................27

*Douglas v. Lalumiere*,
  No. 2:20-cv-00227-JDL, 2022 WL 860250 (D. Me. Mar. 23, 2022) ....................34

*Doyle v. Hasbro, Inc.*,
  103 F.3d 186 (1st Cir. 1996).................................................................................25

*Ezell v. Lexington Insurance Company*,
  335 F. Supp. 3d 91 (D. Mass. 2018) .....................................................................28

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
  529 F.3d 1087 (D.C. Cir. 2008), *overruled on other grounds by Erwin-
  Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021)...................................12

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*,
  46 F.3d 138 (1st Cir. 1995)...................................................................................11

*Ginsburg v. Dinicola*,
  No. 06-11509-RWZ, 2007 WL 1673533 (D. Mass. June 7, 2007)........................13

*Gov't of Berm. v. Lahey Clinic, Inc.*,
  No. 17-cv-10242-IT, 2018 WL 1243954 (D. Mass. Mar. 8, 2018) .................29, 31

*Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*,
  No. 15-cv-3784 (PKC), 2016 WL 6110565 (S.D.N.Y. Aug. 4, 2016) ..................26

*Hamilton v. Partners Healthcare Sys., Inc.*,
  209 F. Supp. 3d 379 (D. Mass. 2016) ...................................................................32

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010)...............................................................3, 14, 15, 20, 21, 22, 23

*Holmes v. Securities Inv. Protection Corp.*,
  503 U.S. 258 (1992)..............................................................................................15

*Kalika, LLC v. Boston & Maine Corp.*,
  No. 15-14043-GAO, 2019 WL 1276099 (D. Mass. Mar. 20, 2019) .....................13

*Kotteakos v. United States*,
  328 U.S. 750 (1946)..............................................................................................29

*Kowalski v. Gagne*,
  914 F.2d 299 (1st Cir. 1990)...................................................................................9

*Laurel Gardens, LLC v. McKenna*,
948 F.3d 105 (3d Cir. 2020) ...............................................................................12

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d Cir. 2003), *abrogation on other grounds recognized by*
*American Psych. Ass'n v. Anthem Health Plans, Inc.,* 821 F.3d 352 (2d Cir.
2016) ..............................................................................................................15, 16

*Lisak v. Mercantile Bancorp, Inc.*,
834 F.2d 668 (7th Cir. 1987) ..............................................................................12

*Metropolitan Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*,
266 F. Supp. 3d 502 (D. Mass 2017) ..............................................................26, 28

*Odishelidze v. Aetna Life & Cas. Co.*,
853 F.2d 21 (1st Cir. 1988) ................................................................................25

*Oki Semiconductor Co. v. Wells Fargo Bank*,
298 F.3d 768 (9th Cir. 2022) ...............................................................19, 22, 23

*Patel v. Fendler*,
No. 15-cv-0366-MJR-PMF, 2016 WL 6248285 (S.D. Ill. Oct. 26, 2016) ..............34

*Perkins v. Benguet Consol. Mining Co.*,
342 U.S. 437 (1952) ...........................................................................................11

*Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*,
40 F.4th 432 (6th Cir. 2022) ..............................................................................12

*In re Pharm. Indus. Average Wholesale Price Litig.*,
263 F. Supp. 2d 172 (D. Mass. 2003) ...........................................................26, 28, 29

*Pritzker v. Yari*,
42 F.3d 53 (1st Cir. 1994) ..................................................................................11

*PT United Can Co. v. Crown Cork & Seal Co.*,
138 F.3d 65 (2d Cir. 1998) .................................................................................12

*Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.*,
118 F. Supp. 3d 447 (D.P.R. 2015) .....................................................................27

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ...........................................................................................34

*Rhone v. Energy North, Inc.*,
790 F. Supp. 353 (D. Mass. 1991) ......................................................................26

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016)................................................................29

*Rodriguez v. Nationstar Mortg. LLC*,
    No. 14-cv-12330, 2014 WL 5426972 (D. Mass. Oct. 24, 2014) ............................................31

*Ryan v. Greif, Inc.*,
    No. 22-cv-40089-MRG, 2023 WL 5979711 (D. Mass. Sept. 1, 2023), *adopted
    in relevant part*, 2023 WL 8828220 (D. Mass. Dec. 21, 2023)................................13

*Scivally v. Graney*,
    No. 92-11688-Z, 1993 WL 207758 (D. Mass. June 7, 1993), *aff'd*, 21 F.3d
    420 (1st Cir. 1994) ................................................................14, 18

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*,
    990 F.3d 31 (1st Cir. 2021)................................................................19, 20, 21

*Super Vision Int'l, Inc. v. Mega Int'l Commer. Bank Co., Ltd.*,
    534 F. Supp. 2d 1326 (S.D. Fla. 2008) ................................................................34

*United States v. Binance Holdings Limited*,
    No. 2:23-cr-00178-RAJ (W.D. Wash.)................................................................5

*United States v. Crater*,
    93 F.4th 581 (1st Cir. 2024)................................................................33

*United States v. Liggins*,
    No. 1:22-cr-10152-IT, 2023 WL 7693958 (D. Mass. Nov. 15, 2023)............................24, 33

*United States v. Snider*,
    957 F.2d 703 (9th Cir. 1992) ................................................................24

*United States v. Swiss Am. Bank, Ltd.*,
    274 F.3d 610 (1st Cir. 2001)................................................................10

*United States v. Varrone*,
    554 F.3d 327 (2d Cir. 2009) (Sotomayor, J.)................................................................24

*United States v. Velazquez-Fontanez*,
    6 F.4th 205 (1st Cir. 2021)................................................................34

*United States v. Zhao*,
    No. 2:23-cr-00179-RAJ (W.D. Wash.)................................................................5

*World Depot Corp. v. Onofri*,
    No. 16-12439-FDS, 2017 WL 6003052 (D. Mass. Dec. 4, 2017)................................13

*Zhu v. First Atl. Bank,*
    No. 05 Civ. 96 (NRB), 2005 WL 2757536 (S.D.N.Y. Oct. 25, 2005) ...................................33

**Statutes**

18 U.S.C. § 371 ...........................................................................................................5

18 U.S.C. § 1956 ....................................................................................................31, 32

18 U.S.C. § 1956(a)(1) ...............................................................................................32

18 U.S.C. § 1956(a)(1)(A)(i) ..................................................................................6, 31

18 U.S.C. § 1956(c)(7)(A) ..........................................................................................32

18 U.S.C. § 1960 .........................................................................................................31

18 U.S.C. § 1960(a) ..................................................................................5, 6, 24, 31

18 U.S.C. § 1960(b) ....................................................................................................24

18 U.S.C. § 1960(b)(1)(B) ............................................................................................5

18 U.S.C. § 1961 .........................................................................................................32

18 U.S.C. § 1961(1) ...............................................................................................31, 32

18 U.S.C. § 1961(1)(B) ...............................................................................................32

18 U.S.C. § 1962(c) ...............................................................5, 24, 25, 27, 33, 34

18 U.S.C. § 1962(d) ...........................................................................................5, 34, 35

18 U.S.C. § 1964(c) ...............................................................................................14, 29

18 U.S.C. § 1965 .........................................................................................................12

18 U.S.C. § 1965(b) ....................................................................................................12

18 U.S.C. § 1965(d) ....................................................................................................12

18 U.S.C. § 3583 .........................................................................................................24

18 U.S.C. § 3663(a)(2) ................................................................................................24

31 U.S.C. § 5318 ...........................................................................................................5

31 U.S.C. § 5318(h) ......................................................................................................5

50 U.S.C. § 1705 ...........................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(2).............................................................................................................10

Defendants Binance Holdings Limited ("BHL"), BAM Trading Services, Inc. ("BAM"), and Changpeng Zhao ("Mr. Zhao") (collectively, "Defendants") move to dismiss the First Amended Complaint ("FAC") for lack of personal jurisdiction and failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiffs seek to hold BHL, BAM, and Mr. Zhao accountable for damages sustained by 26 different Plaintiffs who were victimized by an unknown number of fraudulent "pig butchering" schemes orchestrated by an unknown number of unidentified individuals and entities. Plaintiffs do not allege that Defendants participated in those schemes or even knew about them before Plaintiffs filed this lawsuit. Indeed, the ***only*** alleged connection between the fraudsters and Defendants is Plaintiffs' allegation that the fraudsters ultimately transferred unspecified amounts of Plaintiffs' stolen cryptocurrency through Binance.com accounts. In their strained and misguided attempt to place the blame on Defendants, Plaintiffs allege implausible and legally insufficient RICO violations that fail for numerous independent reasons.

In the first instance, the Court lacks personal jurisdiction. As for general jurisdiction, no Defendant is alleged to be headquartered, have its principal place of business, live, or otherwise be "at home" in Massachusetts. To get around these infirmities, Plaintiffs attempt to confer jurisdiction through RICO's authorization of nationwide service of process. But that provision requires that at least one defendant have minimum contacts with Massachusetts and that Plaintiffs show that the ends of justice require nationwide service over the other defendants. The FAC does not meet either requirement. Finally, the Court lacks specific jurisdiction because Plaintiffs' claims do not relate to or arise out of any activity here.

Plaintiffs' allegations also fail to state a cognizable civil RICO claim. Plaintiffs must plead, among other things, that the Defendants willfully or knowingly participated in, or conducted the affairs of, an enterprise through a pattern of racketeering activity (or conspired to

do so); that the alleged racketeering activity caused injury to Plaintiffs; and that any such injury was a domestic injury. The FAC fails to adequately allege these elements.

*First*, Plaintiffs fail to plead causation. Their theory of harm is dizzyingly convoluted; connecting Plaintiffs' alleged losses to Defendants' alleged predicate offenses requires a series of unfounded assumptions, inferential leaps, and third-party interventions by U.S. regulators and law enforcement. Specifically, Plaintiffs allege that they were damaged because Defendants (1) failed to register BHL in the U.S. as a money transmitting business, which meant that it (2) failed to implement sufficient anti-money laundering ("AML") protocols, which meant that it (3) sometimes processed transactions by suspicious individuals, which transactions (4) may have included some or all of the transactions through which the fraudsters laundered Plaintiffs' money here. According to Plaintiffs, had BHL complied with applicable regulations and registered with FinCEN, (5) it might have flagged the specific transactions at issue and frozen those individuals' accounts, at which point (6) U.S. law enforcement could have chosen to investigate those transactions and, assuming (7) those investigations turned up evidence of wrongdoing, (8) could have seized the funds in those accounts and returned them to the victims. Enumerating this meandering causal chain exposes its insufficiency. Plaintiffs do not plead facts plausibly establishing that any of these steps (let alone all of them) would necessarily have occurred but for Defendants' alleged conduct. Indeed, for 25 of the 26 plaintiffs, the *only* allegation tying their injuries to Defendants is the conclusory observation that a "substantial portion" of the stolen assets was laundered through the "Binance exchange."

Given Plaintiffs' inability to establish but-for causation, they certainly cannot meet RICO's more stringent standard of proximate causation, which requires a direct connection between a defendant's predicate offense and a plaintiff's harm. There is no proximate causation

when predicate acts are "entirely distinct" from the conduct which caused the alleged injury. Here, there are several (speculative) steps between Plaintiffs' harm (which directly resulted from pig butchering schemes) and Defendants' alleged offenses (failure to register BHL as a money transmitter and maintain an effective AML program). The lack of proximate cause comes into "even sharper" relief because Plaintiffs' "theory of liability rests not just on separate *actions*, but separate actions carried out by separate parties." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 11 (2010) (plurality) (emphasis in original).

**Second**, Plaintiffs fail to adequately plead the existence of any of the five separate criminal enterprises they identify. To survive a motion to dismiss, they must plausibly allege (1) a shared purpose among the members of the enterprise separate and distinct from their predicate acts; (2) a relationship among those same members; and (3) longevity sufficient to allow those members to pursue their common purpose. In addition, Plaintiffs must distinguish between the person conducting the unlawful scheme and the enterprise itself.

None of the alleged enterprises meets these standards. The members of Enterprise #1 (BAM and BHL) are both the enterprise and the parties who designed and carried out the unlawful scheme. With respect to Enterprises #2 and #3 (Mr. Zhao and various named and unnamed BHL and BAM executives), the FAC fails to distinguish between the enterprises themselves and Mr. Zhao, who is identified as the person directing each enterprise. Moreover, the FAC fails to establish an association-in-fact enterprise with respect to Enterprise #2 because it contains no allegations that its members functioned as a continuing unit carrying out coordinated activities or that it even existed in its alleged form at the time the racketeering activity at issue purportedly took place.

Enterprise #4, which includes BHL, Mr. Zhao, and the criminal syndicates who allegedly

carried out the pig butchering schemes, also is fatally flawed. Plaintiffs do not (and cannot) allege that Defendants even knew of the schemes or their perpetrators, let alone coordinated with them to carry out criminal activities. Enterprise #5, which simply drops BHL and Mr. Zhao in favor of an "association in fact" enterprise encompassing only the "pig butcherers," fares no better; as the FAC itself concedes, Plaintiffs know nothing about the makeup, identity, or even the number of alleged "syndicates" which victimized them (individually, at that), and thus cannot plead that they were working together towards a common purpose.

*Finally*, the FAC suffers from numerous other deficiencies. Plaintiffs do not allege facts regarding the geographic location of the purportedly stolen funds, and thus do not plead a domestic injury; do not put forth a viable theory establishing money laundering as a RICO predicate; and do not allege plausible facts to establish either BAM's operation of BHL or a RICO conspiracy.

Defendants thus respectfully request that this Court dismiss the FAC in its entirety.

## BACKGROUND

### I. Plaintiffs' Exposure to Crypto Fraud Schemes Unrelated to Defendants

Plaintiffs allege they are victims of cryptocurrency fraud schemes perpetrated by at least 26 individuals and entities, ***none of whom is a defendant***. Using various forms of social media and messaging platforms, Plaintiffs communicated with a number of scammers. *E.g.*, FAC ¶¶ 79, 82, 87, 93, 100, 106, 120, 133, 140, 157, 164, 171, 183, 190, 200, 209, 215, 222, 236, 245, 251. The scammers convinced Plaintiffs to purchase the cryptocurrency Tether ("USDT") for investing in crypto mining pools, but the scammers stole Plaintiffs' USDT. *E.g.*, *id.* ¶¶ 79–83, 87–90, 93–98, 100–04, 106–09, 114–18, 120–24, 126–31, 133–37, 140–43, 145–48, 151–54, 157–62, 164–68, 171–75, 178–80, 183–87, 190–98, 200–06, 209–12, 215–19, 222–27, 229–33, 236–40, 245–48, 251–54. Plaintiffs do not allege that Defendants perpetrated or had knowledge

of the fraudulent schemes or the scammers, that Plaintiffs were customers of BHL or BAM, or that Plaintiffs' crypto wallets were hosted by BHL or BAM.

All Plaintiffs, except for Leonard Licht, allege that malicious code allowing the scammers to steal their crypto was executed on their wallets, and that a "substantial" or "significant portion" of these assets was transferred through "Binance accounts" and then converted to legal tender. *Id.* ¶¶ 87–256. Licht alleges that he transferred his crypto to scammers who then transferred them through "Binance accounts" before cashing out. *Id.* ¶¶ 79–86.

BHL and BAM are separate entities and do not operate under a unified corporate structure. *Id.* ¶ 37. Plaintiffs allege that BHL is a Cayman Islands corporation that operates the cryptocurrency exchange Binance.com, *id.* ¶¶ 1, 36, and that BAM is a Delaware corporation headquartered in Florida or California that operates a platform called Binance.US. *Id.* ¶ 37. Mr. Zhao, BHL's founder, is alleged to be a Canadian citizen domiciled in Dubai. *Id.* ¶ 38.[1]

## II.  Plaintiffs' Five Alleged RICO Enterprises

Plaintiffs advance six civil RICO claims corresponding to five alleged enterprises (Enterprises #1–#5)[2] engaged in alleged violations of 18 U.S.C. §§ 1962(c) and 1962(d).

---

[1] In November 2023, BHL and Mr. Zhao entered guilty pleas in the United States District Court for the Western District of Washington. *Id.* ¶ 2. BHL pled guilty to (1) conspiracy to conduct an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(a) and (b)(1)(B), and failure to maintain an effective anti-money laundering program, in violation of 31 U.S.C. § 5318(h), all in violation of 18 U.S.C. § 371; (2) conducting an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960(a) and (b)(1)(B); and (3) violation of the International Emergency Economic Powers Act, in violation of 50 U.S.C. § 1705. *United States v. Binance Holdings Limited*, No. 2:23-cr-00178-RAJ (W.D. Wash.). Mr. Zhao pled guilty to willful failure to maintain an effective anti-money laundering program, in violation of 31 U.S.C. § 5318. *United States v. Zhao*, No. 2:23-cr-00179-RAJ (W.D. Wash.). BHL agreed to pay a criminal fine of more than $1.8 billion and criminal forfeiture of more than $2.5 billion; Mr. Zhao was sentenced to four months in prison and ordered to pay a fine of $50 million. FAC ¶ 2.

[2] For ease of reference, Defendants refer to these alleged enterprises as Enterprises #1–#5 but do not admit that any enterprise exists or existed and contest the existence of each enterprise.

A. **Enterprises #1–#3**

Plaintiffs allege that BHL and BAM were the members of Enterprise #1, which enabled BHL "to operate an unlicensed, unregistered money transmitting business" and "avoid complying" with United States law. FAC ¶ 258; *see id.* Count 1 (against all Defendants).

Plaintiffs allege that Mr. Zhao, as well as BHL and BAM employees, officers, and executives with whom Mr. Zhao conspired, were the members of Enterprise #2, which enabled BHL "to operate as an unlicensed money transmitting business," "to conduct financial transactions on the Binance exchange," and "to allow Binance to operate in a manner that was hospitable to, and would facilitate, the laundering of illicit proceeds . . . , including cryptocurrency assets that had been stolen from United States citizens." FAC ¶ 259; *see id.* Count 2 (against Zhao).

Plaintiffs allege that BHL was the sole member of Enterprise #3, which operated as an "illegal money transmitting business in violation of 18 U.S.C. § 1960(a), with every transaction that Binance conducted on the Binance exchange also being a violation of 18 U.S.C. § 1956(a)(1)(A)(i) by virtue of 18 U.S.C. § 1956(c)(7)(A)'s cross-reference to 18 U.S.C. § 1961(1) . . . ." FAC ¶ 260; *see id.* Counts 3 & 5 (against Mr. Zhao and BAM, respectively).

Plaintiffs allege that Enterprises #1–#3 operated an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a) (to which BHL pled guilty) and 18 U.S.C. § 1956(a)(1)(A)(i) (to which no Defendant pled guilty), purportedly by virtue of the guilty pleas. *Id*. ¶ 264–65. Plaintiffs allege that "but for" the activities of Enterprises #1-#3, "Binance would have registered with FinCEN . . . and operated with the anti-money laundering program required by the Bank Secrecy Act, which would have thwarted fraudsters from using the Binance exchange to launder cryptocurrency that they stole from innocent victims, including [Plaintiffs], and to convert that stolen cryptocurrency into fiat currency that United State law enforcement

would never be able to recover and return to the victims." *Id.* ¶ 270.

## B. Enterprises #4 and #5

Plaintiffs allege that BHL, Mr. Zhao, and every supposed "criminal syndicate" that defrauded Americans in crypto schemes and used the "Binance exchange" to convert crypto to legal tender were the members of Enterprise #4, which knowingly allowed fraudsters to use the "Binance exchange" in crypto transactions involving illicit proceeds in violation of the money laundering statute. FAC ¶¶ 261, 266; *see id.* Count 4 (against BHL and Mr. Zhao).

Plaintiffs allege that all "criminal syndicates that defrauded the Plaintiffs" were the members of Enterprise #5, and that these syndicates acted with the common purpose of "steal[ing] cryptocurrency assets and then launder[ing] the stolen assets on cryptocurrency exchanges (including Binance)." FAC ¶ 262; *see id.* Count 6 (against BHL and Mr. Zhao). The alleged racketeering activity consisted of "using international wire communications to defraud [Plaintiff] Lenny [Licht] and U.S.-based victims out of money or property, in violation of 18 U.S.C. § 1343, and then laundering those proceeds via the Binance cryptocurrency exchange, in violation of 18 U.S.C. § 1956(a)(1)(A)." *Id.* ¶ 267. None of the criminal syndicates or their members alleged to have participated in Enterprises #4 and #5 is a defendant in this case. Instead, Plaintiffs allege that BHL and Mr. Zhao "conspired in Enterprise #5's pattern of racketeering activity, to wit, by allowing criminal syndicates including Enterprise #5 to use the Binance cryptocurrency exchange as a laundering facility and cash-out point for their illicit activities." *Id.* ¶ 290.

Plaintiffs allege that "[b]ut for" the racketeering activity of Enterprises #4 and #5, "Plaintiffs would not have [*sic*] targeted and victimized . . . because it was the presence of the unlawful Binance exchange and the welcoming 'cake' that it knowingly and purposefully offered to illicit actors that fueled the rise of the pig butchering schemes." *Id.* ¶ 271. Alternatively,

Plaintiffs allege that, "but for Enterprise #4's and Enterprise #5's pattern of racketeering activity, Plaintiffs would have been able to recover their stolen cryptocurrency assets with the assistance of United States law enforcement" because "but for Enterprise #4's and Enterprise #5's successful laundering and cashing out of the assets via the Binance exchange, the assets would have remained in the fraudsters' Binance accounts, easily traced through a forensic analysis of the blockchain, subject to rapid seizure by United States law enforcement, and available to be returned to the fraud victims." *Id*. ¶¶ 270-71.

### III.    Plaintiffs' Inadequate Allegations of Personal Jurisdiction

The FAC's personal jurisdiction allegations rely almost exclusively on non-specific contacts between Defendants and the United States, with none of the allegations concerning Massachusetts relating to the claims at issue.

As to BHL, Plaintiffs allege that general and personal jurisdiction exists based on various contacts between BHL and the United States, including that BHL "regularly and continuously solicit[ed] and d[id] business with customers located in the Commonwealth of Massachusetts, including on information and belief Commonwealth-based market makers." *Id*. ¶¶ 40–41.

As to BAM, Plaintiffs allege that general personal jurisdiction exists because BAM is a Delaware corporation headquartered in Florida or California. *Id*. ¶ 42. Plaintiffs allege specific jurisdiction arising from BAM's business operations in Massachusetts, "including regularly and continuously soliciting and doing business with customers based in the Commonwealth." *Id*.

As to Mr. Zhao, Plaintiffs allege general personal jurisdiction exists because he was CEO of BHL and chairman of BAM's board and held approximately 90% of the equity in BHL and BAM. *Id*.¶ 43. They allege specific jurisdiction because he "participated in and directed the conduct of the various RICO enterprises' predicate racketeering acts that were specifically directed at the United States market" and "conspired in the laundering on the Binance exchange

of cryptocurrency assets stolen from U.S. citizen plaintiffs." *Id*. ¶ 44.

## IV. Plaintiffs' Other Cases Seeking the Same Relief from Different Defendants

Nineteen of the 26 Plaintiffs have filed **other cases** before **other tribunals** against **other defendants** based on the **same crypto fraud schemes** and seeking to recover the **same damages**. Their admissions in those cases, which are judicially noticeable, undercut their claims against Defendants here. *See Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

### A. Coinbase Arbitration

In late-2022, 18 Plaintiffs in this case[3] filed an arbitration demand against Coinbase. *See Coinbase Wallet Victims v. Toshi Holdings PTE. Ltd. d/b/a Coinbase Wallet, et al.*, No. 01-22-0004-3719 (Am. Arb. Ass'n), Consolidated Demand for Arbitration ("Coinbase Arb.") and First Supplement.[4] The Coinbase Arbitration is based on the same fraud schemes alleged here and, as set forth in **Exhibit 3**, seeks substantially the same damages. The claimants alleged that they had Coinbase wallets from which fraudsters stole cryptocurrency. They sought to hold Coinbase liable for their losses by claiming that their crypto assets were stolen because of a "glaring" and "horrific security flaw" in Coinbase wallets. Coinbase Arb. ¶ 1 ("[A] compromised user interface . . . effectively lulls Wallet users into a false sense of security, the Wallet allows scammers to hijack customers' Wallets and withdraw all of their crypto assets without authorization.").

---

[3] Daniel Chang, Henry Chen, Dominic Chow, Chengguo Dong, Amine Fennane, Ihab W. Francis, Shai Granvoski, Dalton Green, Alicia Lau (Lau Pui Mei), Trevor Lau, Eisi Mollanji, James Moskwa, Anh Nguyen, Richard Slavant, Edmund Yeo, Jun Zhai, Nader Lobandi, and Brian Rothaus.

[4] Attached as **Exhibits 1 and 2**, respectively. The Coinbase Arb. is available at https://cdn.arstechnica.net/wp-content/uploads/2022/10/Coinbase-Arbitration-Demand-Roche-Freedman-2022.pdf; the First Supplement is available at https://www.fnf.law/assets/b115bf5e-f8d9-4aa9-84b8-f4ac0f8a2e54.

**B.    Plaintiff Licht's Texas Case**

In May 2023, Licht brought federal securities fraud, common law fraud, conversion, and Texas Theft Liability Act claims against two fraudsters—"Tina Ling" and "Luxkey"—to whom he transferred crypto assets. *See Licht v. Ling*, No. 3:23-cv-01018-X (N.D. Tex.), at Dkt. No. 1 (the "Texas Case" or "TX Compl."), attached as **Exhibit 4**. Just as he alleges here, FAC ¶¶ 79–86, Licht alleged in the Texas case that Ling and Luxkey convinced him to invest in Luxkey and ultimately "stole approximately $2.7 million from" him. TX Compl. ¶¶ 1–2, 21, 23, 27, 30. In the Texas Case, however, Licht alleged that he "trace[d] the stolen funds to specific wallets maintained at ***various cryptocurrency platforms***." *Id*. ¶ 2 (emphasis added); *see id*. ¶ 29 ("[A] forensic firm . . . traced Licht's stolen funds to specific cryptocurrency wallets maintained at a ***number of different cryptocurrency platforms***.") (emphasis added). Licht seeks to recover from Ling and Luxkey "all damages available at law or equity." *Id*. at p. 6, Wherefore ¶ 1. That case remains pending.

<u>**ARGUMENT**</u>

**I.    The FAC Should Be Dismissed for Lack of Personal Jurisdiction.**

A complaint must be dismissed when the plaintiff fails to establish that the court has personal jurisdiction as to all defendants. *See* Fed. R. Civ. P. 12(b)(2); *Adams v. Adams*, 601 F.3d 1, 4 (1st Cir. 2010). To comport with the requirements of due process, the Court must have general or specific jurisdiction over ***each*** defendant. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). General jurisdiction allows the court to "hear ***any*** claim against that defendant." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017) (emphasis in original). For an individual defendant, general jurisdiction lies in the state where he/she is domiciled. *See id*. For a corporate defendant, general jurisdiction lies only when the defendant's "'affiliations with the State are so continuous and systematic as to

render [it] essentially at home'" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127, 139 (2014) (citation omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id*. at 137 (alteration in original) (quotations and citation omitted). In contrast, specific jurisdiction exists only if "the ***suit*** . . . arise[s] out of or relate[s] to the defendant's contacts with the ***forum***." *Bristol-Myers*, 582 U.S. at 262 (cleaned up; emphasis in original). The plaintiff must show that "'the forum in which the federal district court sits has a long-arm statute'" and that "'the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir. 1995) (quoting *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994)). The constitutional analysis "implicates three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." *Foster-Miller*, 46 F.3d at 144. Plaintiffs have not alleged that the Court has general or specific jurisdiction over any Defendant.

The Court lacks general personal jurisdiction for two reasons. ***First***, there is no allegation that any Defendant is subject to general jurisdiction in Massachusetts. Plaintiffs' allegation that Mr. Zhao is not domiciled in Massachusetts, *see* FAC ¶ 38 ("[T]he United States is not where Zhao is 'domiciled.' . . . Zhao's domicile is Dubai."), forecloses general jurisdiction as to him. *See Bristol-Myers*, 582 U.S. at 262. The same is true for BHL nor BAM, neither of which is incorporated or has a principal place of business in Massachusetts. *See* Factual Background Sections I and III. Plaintiffs do not allege that BHL or BAM has offices or employees, or is essentially "at home," in Massachusetts. *See, e.g.*, *Daimler*, 571 U.S. at 137–39 (defendant not "at home" in California because it neither was incorporated nor had its principal place of business there); *cf. Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952) (general

jurisdiction over foreign corporation existed where its president had an office, maintained the company files, and oversaw the company's activities). Plaintiffs' generalized assertions that BHL "regularly and continuously" conducted business in Massachusetts and that BAM is "registered" to do business in Massachusetts do not include any factual allegations as to what BHL or BAM did in Massachusetts. *See, e.g.*, FAC ¶¶ 40, 45. Such conclusory allegations are insufficient. Indeed, in *Daimler*, the Supreme Court expressly rejected Plaintiffs' suggestion that general jurisdiction exists wherever a corporation engages in a substantial, continuous, and systematic course of business. 571 U.S. at 137–38.

      ***Second***, Plaintiffs rely on (i) allegations of "continuous and systematic" contacts with the United States, FAC ¶¶ 40, 43, coupled with (ii) RICO's provision allowing for nationwide service of process, *id.* ¶ 42. But their argument improperly conflates the distinction between service of process and venue under RICO's procedural provision, 18 U.S.C. § 1965, and the separate due process requirements for asserting personal jurisdiction. The FAC incorrectly alleges that the nationwide service provision in § 1965(d) confers personal jurisdiction over all defendants in a RICO case so long as they have minimum contacts with the United States as a whole. *See* FAC ¶ 40.[5] District courts in this circuit interpret § 1965(b) to authorize nationwide service of process ***only*** when: (1) there is at least one defendant who has minimum contacts with

---

[5] That is not the law in the majority of circuits. Although the First Circuit has not interpreted the scope of § 1965, as noted above, district courts in this Circuit follow the majority approach. The Courts of Appeals in the majority are the Second, Third, Sixth, Seventh, Ninth, Tenth, and D.C. Circuits. *See, e.g., Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC, Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir. 1987); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71–72 (2d Cir. 1998); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006); *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1098–1100 (D.C. Cir. 2008), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 892 (D.C. Cir. 2021); *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 117 (3d Cir. 2020); *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 439–41 (6th Cir. 2022).

the forum state justifying the exercise of general or specific personal jurisdiction over it; and (2) the ends of justice require nationwide service of process over other out-of-state defendants. *See Ryan v. Greif, Inc.*, No. 22-cv-40089-MRG, 2023 WL 5979711, at *13–14 (D. Mass. Sept. 1, 2023), *adopted in relevant part*, 2023 WL 8828220, at *2–4 (D. Mass. Dec. 21, 2023); *Kalika, LLC v. Boston & Maine Corp.*, No. 15-14043-GAO, 2019 WL 1276099, at *7 (D. Mass. Mar. 20, 2019); *World Depot Corp. v. Onofri*, No. 16-12439-FDS, 2017 WL 6003052, at *5 (D. Mass. Dec. 4, 2017); *Ginsburg v. Dinicola*, No. 06-11509-RWZ, 2007 WL 1673533, at *4–5 (D. Mass. June 7, 2007). Here, no Defendant is subject to this Court's personal jurisdiction. As such, RICO's authorization of nationwide service of process cannot bring any Defendant within the Court's jurisdiction.

Plaintiffs' allegations of specific jurisdiction fare no better because Plaintiffs fail to identify some "activity or an occurrence" in Massachusetts that gave rise to their claims. *Bristol-Myers*, 582 U.S. at 262 (quotations and citation omitted). For BHL, the FAC's specific jurisdiction allegations have nothing to do with Massachusetts. FAC ¶ 41. The FAC (i) contains no factual allegations about how BHL allegedly solicited or did business with Massachusetts customers or market-makers, (ii) does not identify any such customers or market-makers, and (iii) does not include any facts that BHL targeted business in Massachusetts. Plaintiffs' specific jurisdiction allegations are equally scant as to BAM. *Id.* ¶ 42. The allegation that BAM was allegedly "concealing (and therefore facilitating) Binance's and Zhao's criminal conduct," *id.*, is unrelated to Massachusetts. Similarly, the allegation that "BAM conducted substantial and continuous business operations in the Commonwealth, including regularly and continuously soliciting and doing business with customers," is wholly conclusory and devoid of factual description. *Id.* Finally, for Mr. Zhao, Plaintiffs ***do not even attempt*** to make specific jurisdiction

allegations based on conduct connected to Massachusetts. *Id*. ¶ 44.

In light of the FAC's threadbare allegations of conduct in the Commonwealth, Plaintiffs do not reasonably plead the requisite minimum contacts in the Commonwealth for the exercise of personal jurisdiction over Defendants. Accordingly, the FAC must be dismissed for lack of personal jurisdiction.

## II. The FAC Should Be Dismissed for Failure to State a Claim.

As set forth below, the entire FAC should be dismissed because it falls to allege but-for and proximate causation, fails to allege the existence of a RICO enterprise, and fails to allege a domestic injury. In addition, Counts 1–3 should be dismissed because Plaintiffs fail to allege a proper RICO predicate. Count 1 should also be dismissed for failure to plausibly allege BAM's operation of BHL. Finally, Counts 5 and 6 should be dismissed for failure to allege conspiracy.

### A. Plaintiffs Fail to Allege Causation.

The FAC should be dismissed in its entirety because it fails to adequately allege causation. RICO § 1964(c) creates a private right of action for "[a]ny person injured in his business or property ***by reason*** of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (emphasis added). Under this standard, the predicate offense must be both the actual (but-for) cause and the proximate cause of the injury. *Hemi Grp.,* 559 U.S. at 9.

"The inquiry with respect to but-for causation asks whether the plaintiff would have suffered the injury absent the alleged misconduct." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 315 F.R.D. 116, 125 (D. Mass. 2016) (citation omitted), *aff'd*, 915 F.3d 1 (1st Cir. 2019). But-for causation may not be established through "wholly speculative" assertions about a supposed causal relation between separate events. *See, e.g., Scivally v. Graney*, No. 92-11688-Z, 1993 WL 207758, at *3 n.3 (D. Mass. June 7, 1993), *aff'd*, 21 F.3d 420 (1st Cir. 1994). Proximate causation is a higher standard, which "requires 'some direct relation between the

injury asserted and the injurious conduct alleged.'" *Hemi Grp.*, 559 U.S. at 9 (quoting *Holmes v. Securities Inv. Protection Corp.*, 503 U.S. 258, 268 (1992)). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.* (quoting *Holmes*, 503 U.S. at 271, 274) (alterations in original). A RICO plaintiff generally fails to plead proximate causation if his or her injury is more than one step removed from the alleged predicate act. *See id.* at 10 (in RICO cases, the law generally does not "go beyond the first step").

The FAC falls far short of alleging either but-for or proximate causation. Plaintiffs allege that they are victims of online fraud schemes, FAC ¶¶ 6–9, 79–256, but they do not allege that Defendants defrauded them, orchestrated or participated in those schemes, held Plaintiffs' money, *or even knew Plaintiffs or the alleged non-party fraudsters*. Instead, Plaintiffs' theory of causation is that Defendants failed to register BHL as a money transmitting business and failed to maintain an effective AML program, which in turn created the circumstances that enabled a series of events ultimately resulting in Plaintiffs being defrauded by non-parties. Courts routinely reject such tenuous causation theories in civil RICO cases where a plaintiff's injury is multiple steps removed from the alleged predicate offense. *See, e.g.*, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 116 (2d Cir. 2003) (Sotomayor, J.) ("The creative pleading in the instant cases serves as a reminder why [RICO's] treble damages provisions are not available to remedy every possible injury that can, with some ingenuity, be attributed to a defendant's injurious conduct."), *abrogation on other grounds recognized by American Psych. Ass'n v. Anthem Health Plans, Inc.,* 821 F.3d 352 (2d Cir. 2016).

1.      **The FAC Fails to Adequately Allege that Defendants' Purported RICO Violations Were the But-For Cause of Plaintiffs' Injuries.**

Although courts generally resolve RICO cases under the statute's more demanding proximate cause standard, Plaintiffs' claims here rely on a series of speculative assumptions that

fail even to adequately allege that Defendants' conduct was the but-for cause of their injuries. Plaintiff Licht attempts to tie his injury to Defendants' alleged predicate acts through convoluted inferences, many resting on pure conjecture:

1. Defendants failed to register BHL with FinCEN as a money transmitting business and willfully violated the BSA by failing to cause BHL to implement and maintain an adequate AML program. FAC ¶ 46.

2. If BHL had registered as a money transmitting business with FinCEN and implemented an adequate AML program, BHL would have properly vetted customers and flagged suspicious transactions for FinCEN. *Id.* ¶¶ 53, 54, 63.

3. If BHL had properly vetted customers and monitored suspicious transactions, it would not have processed transactions by users who laundered proceeds of crimes, including "pig butchering schemes." *Id.* ¶ 49.

4. If BHL had vetted customers and monitored suspicious transactions, it would have flagged the accounts or transactions of the criminal syndicate that stole Licht's money. *Id.* ¶¶ 49, 73.

5. If BHL had flagged that criminal syndicate's accounts or transactions, BHL would have reported the transactions to FinCEN and frozen the syndicate's accounts before the proceeds could be transferred out of the accounts. *Id.*

6. If BHL had frozen the syndicate's accounts and reported the transactions to FinCEN, U.S. law enforcement would have investigated the reports. *Id.* ¶ 75.

7. If U.S. law enforcement had investigated the reports, it would have obtained legal process to seize the stolen cryptocurrency from the frozen accounts. *Id.*

8. If U.S. law enforcement had seized the stolen cryptocurrency, Licht would have been able to recover "all or substantially [*sic*]" of the stolen assets. *Id.*

As is often true in RICO cases dismissed at the pleading stage, "[t]he mere recitation of the chain of causation alleged by the plaintiffs is perhaps the best explanation of why they do not have standing in this case." *Lerner*, 318 F.3d at 123 (citation omitted). Licht's multi-step theory of but-for causation is riddled with logical fallacies. First, he asserts, in general terms, that BHL would have flagged suspicious transactions had it implemented an effective AML program (steps 1-3). FAC ¶¶ 49, 74. Even if that is true, it does not mean that this hypothetical AML program would have flagged ***the specific transactions that allegedly laundered his money*** (step 4

above)—an entirely speculative inference supported by nothing but general, conclusory assertions about AML programs and fraud. *See, e.g., id.* ¶ 270 (alleging that an AML program "would have thwarted fraudsters from using the Binance exchange to launder cryptocurrency that they stole from innocent victims, ***including Lenny and his co-Plaintiffs***") (emphasis added).

In an attempt to demonstrate that BHL should have known these transactions were suspicious even though Plaintiffs never reported them as such, Licht alleges that nine accounts associated with the syndicate received over $40 million of USDT across approximately 140 transactions between August 2021 and November 2022. *Id.* ¶ 85. But Licht never explains why that fact, even if true, would or should have led any accounts or transactions to be flagged (step 5) and subsequently frozen. Indeed, Licht alleges facts to the contrary—that the syndicate coaxed him, over the many months, into gradually investing his entire life savings into a cryptocurrency investment, which suggests, if anything, that the syndicate's actions were cautious, discrete, and could have flown under the radar of a hypothetical AML program. *Id.* ¶ 80.[6]

Licht also fails to allege any facts plausibly establishing that U.S. law enforcement would have investigated BHL's hypothetical reports of the syndicate's activities (step 6 above) and seized the stolen assets (step 7), permitting Licht to recover them (step 8). The FAC does not allege, for example, that FinCEN promptly investigates every (let alone most) reported transactions, that FinCEN's investigations always (let alone usually) lead to law enforcement referrals, or even that those referrals ultimately result in the seizure of the relevant assets. Nor does the FAC attempt to explain why FinCEN would have done so here. Again, it simply

---

[6] In the Texas Case, Licht alleges that the criminal syndicate laundered his money through six different cryptocurrency exchanges, apparently without being flagged by any of them. *See Licht v. Ling, et al.*, No. 23-cv-1018, Dkt. No. 23, Order Granting Preliminary Injunction at 7–9 (N.D. Tex. June 20, 2023). Here, Licht alleges that he purchased cryptocurrency on Coinbase. FAC ¶ 80. Yet, over many months of cryptocurrency purchases and transfers to "Tina Ling," Coinbase apparently did not block or otherwise stop the scammers from defrauding Licht.

assumes that those events would have happened, without providing any supporting facts to push those assumptions "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Scivally*, 1993 WL 207758, at *3 n.3 ("[Plaintiff's] assertion that but for the domination the Committee would have been organized by Polaroid employees, entered into a collective bargaining agreement, and negotiated higher wages and benefits is wholly speculative.").[7]

Because Licht alleges no specific facts regarding how the syndicate laundered his money, why an AML program would or should have flagged the syndicate's alleged transactions, or why law enforcement would have intervened, he fails to plausibly plead but-for causation.

The FAC's attempt to allege but-for causation is even weaker as to the other 25 Plaintiffs, whose cursory allegations fail to allege *a single fact* regarding the transactions through which their money was laundered. Each Plaintiff provides the same singular, conclusory allegation purporting to tie their injuries to Defendants. *See, e.g.,* FAC ¶¶ 92 ("Through investigation on the public blockchain website etherscan.io, [plaintiff] has been able to verify that a substantial portion of her stolen assets were laundered through the Binance exchange."), 99, 105, 111, 119, 125, 132, 139, 144, 150, 156, 163, 170, 177, 182, 189, 199, 208, 214, 228, 235, 244, 250, 256 (same). They allege no details regarding the transactions through which their money was laundered, nor do they allege why those transactions would have been flagged or why FinCEN would have investigated them and seized the assets. They do not even allege how much money was purportedly laundered on the "Binance exchange." *See id.*

Plaintiffs' fallback, Hail Mary theory of but-for causation—that "the presence of the

---

[7] Plaintiffs' claims also rest on the implausible theory that funds could have been recovered because, as they allege, BHL would have frozen the funds (step 5) before a law enforcement investigation (step 6), and before law enforcement obtained a valid and enforceable seizure request (step 7). Even under the best of circumstances, this is simply an impossible standard.

unlawful Binance exchange ... **fueled the rise** of the pig butchering schemes," *id*. ¶ 271 (emphasis added)—is frivolous. Plaintiffs offer no specific facts in support of the conclusion that Defendants' alleged offenses caused such an increase in these schemes, nor are there any facts in existence that could render that conclusion plausible. *See Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002) ("[S]peculative 'but for' causation is insufficient to state a RICO violation."). Indeed, Plaintiff's vague allegation that BHL somehow "fueled" pig butchering schemes indicates that those schemes predated BHL and would have existed regardless. FAC ¶ 271.

### 2. The FAC Does Not Adequately Allege that Defendants' Predicate Offenses Were the Proximate Cause of Plaintiffs' Injuries.

Even if Plaintiffs had adequately alleged but-for causation, proximate causation is a higher bar that readily forecloses their claims, as any injury Plaintiffs suffered is many steps removed from Defendants' alleged predicate offenses.

Courts in the First Circuit look to "three functional factors with which to assess whether proximate cause exists under RICO": (1) "concerns about proof" because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"; (2) "concerns about administrability and the avoidance of multiple recoveries"; and (3) "the societal interest in deterring illegal conduct and whether that interest would be served in a particular case," considering that "directly injured victims can generally be counted on to vindicate the law . . . without any of the problems attendant upon suits by plaintiffs injured more remotely." *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 35–36 (1st Cir. 2021) (internal citations and quotations omitted).

Courts routinely reject RICO claims on proximate cause grounds where the conduct causing the harm is even one step removed from the RICO predicate. In *Anza v. Ideal Steel Supply Corp.*, for example, plaintiff (a steel company) alleged that its competitor's failure to pay taxes (an alleged RICO predicate) caused the plaintiff to lose customers because the competitor's tax avoidance allowed it to undercut the plaintiff's prices. 547 U.S. 451, 453–54 (2006). The Supreme Court found proximate cause lacking because the RICO predicate (failure to pay taxes) was "entirely distinct" from the conduct causing the injury (lowering of prices). *Id.* at 458; *see also Sterling*, 990 F.3d at 36 (no proximate cause as plaintiff's injury was "several steps" removed from alleged crime underlying civil RICO claim).

The case for proximate cause is even weaker when the alleged harm stems not only from distinct conduct, but distinct conduct of **third parties** not before the court. In *Hemi Group, LLC v. City of New York*, for example, New York City sued an out-of-state cigarette retailer under RICO for failure to provide New York State with information about the retailer's in-state customers, which allegedly caused New York City to lose tax revenues from those in-state customers. 559 U.S. at 4. The Supreme Court rejected the RICO claim for lack of proximate cause because the residents' failure to pay taxes to the City—not the retailer's failure to report information to the State—was the direct cause of the City's injury. *Id.* at 11. Like Plaintiffs' alleged causation in this case, the Supreme Court held that failing to provide information to the government—even information that could aid in the enforcement of a law—would not satisfy proximate causation under RICO because "the City's theory of liability rests not just on separate *actions*, but separate actions carried out by separate **parties**." 559 U.S. at 11 (original emphasis).

Here, Plaintiffs fall well short of pleading proximate causation. **First**, Plaintiffs' injuries arise from conduct that is "entirely distinct" from Defendants' alleged predicate offenses. *Anza*,

547 U.S. at 458. The alleged predicate offenses are BHL's and Zhao's failure to register BHL as a money transmitter and failure to implement and maintain an effective AML program. FAC ¶ 46. Plaintiffs' alleged injuries, by contrast, arose from non-parties' pig butchering schemes that stole their money. *Id.* ¶ 5. Even drawing every inference in Plaintiffs' favor, there are several steps separating these two events. *Sterling*, 990 F.3d at 36 (affirming civil RICO claim dismissal because plaintiff's "theory of causation both 'go[es] beyond the first step' of the injuries from the alleged RICO scheme" (alteration in original) (quoting *Hemi Grp.*, 559 U.S. at 9, 10)).

The causal distance between Plaintiffs' injury and Defendants' conduct makes it impossible to determine whether any (let alone how much) of Plaintiffs' alleged harm arose from Defendants' alleged predicate offenses—as opposed to multiple independent factors far beyond Defendants' control. *Anza*, 547 U.S. at 458 ("One motivating principle [behind proximate cause] is the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action."). As noted, 25 of the 26 Plaintiffs essentially concede they do not know how much of their stolen money, if any, was allegedly laundered through BHL, or how much of it could have been recovered in a but-for world. *See* FAC ¶¶ 92, 99, 105, 111, 119, 125, 132, 139, 144, 150, 156, 163, 170, 177, 182, 189, 199, 208, 214, 228, 235, 244, 250, 256; *see also id.* ¶ 75 (alleging "Lenny and his co-Plaintiffs would have been able to recover all or **substantially** [*sic*] of the assets that the criminals stole from them") (emphasis added). And while Licht implies here that all of his stolen money was laundered through BHL,[8] in the Texas Case, he alleged that the syndicate transferred his money to 20 accounts, most of which were held at ***other***

---

[8] *See, e.g.,* FAC ¶ 86 ("The nine Binance accounts to which the Cambodian syndicate transferred Lenny's USDT are no longer active, and further investigation confirmed that the wallets are essentially empty, which means the Cambodian syndicate was able to successfully use those Binance wallets as cash-out points, converting the USDT to fiat currency and **leaving Lenny without any means of recovering the specific USDT assets that were stolen from him**.") (emphasis added).

*cryptocurrency exchanges*. *See* Order Granting Preliminary Injunction at 7–9, *Licht v. Ling et al.*, No. 3:23-cv-01018 (N.D. Tex., June 20, 2023). The problems of proof that arise from indirect injuries are hardly theoretical in this case—they are evidenced by Plaintiffs' own representations to other tribunals.

*Second*, as in *Hemi Group*, the case for proximate causation is particularly weak here because Plaintiffs' injuries rest "not just on separate *actions*, but separate actions carried out by separate *parties*." 559 U.S. at 11 (original emphasis). Plaintiffs allege that their money was stolen by international criminal syndicates—not Defendants. They do not allege that Defendants were part of these criminal syndicates or even that Defendants knew about their fraudulent activities. Rather, as in *Hemi Group*, they allege that Defendants' actions purportedly "made it easier" for a non-party "to cause harm to the plaintiff." *Id.* at 3. The pig butchering schemes carried out by non-parties are a quintessential example of an intervening cause that severs any direct causal link between Defendants' actions and Plaintiffs' injuries.

The Ninth Circuit's closely analogous decision in *Oki Semiconductor Co. v. Wells Fargo Bank* is directly on point. There, a victim of armed robbery sued a bank under RICO, alleging a bank employee's laundering of proceeds from the armed robbery caused his harm. 298 F.3d at 771. The Ninth Circuit rejected the argument, holding that "[t]he direct and proximate cause of [plaintiff's] loss was not [the employee's] money laundering . . . ; it was theft." 298 F.3d at 774. Because the plaintiff's allegations established, "at most, that [the employee] laundered the proceeds *after* the Conspiracy stole the semiconductors and sold them," the money laundering lacked a direct relationship to the armed robbery. *Id.* This was true even though the defendant's employee **knew about the armed robbery and provided support for it**. *Id.* Here, the case for

proximate causation is substantially weaker, given that Plaintiffs do not (and cannot) allege that Defendants **knew about or supported** the specific schemes that stole their money. *See id.*

*Third*, courts frequently find proximate cause inadequately alleged where another entity, such as the government, is better positioned to enforce the law and hold the appropriate parties accountable. *See, e.g., Hemi Grp.*, 559 U.S. at 12 (State of New York was better positioned to sue, as the direct victim of tax fraud); *Anza*, 547 U.S. at 458–61 (same); *Roe v. Healey*, 78 F.4th 11, 27 (1st Cir. 2023) (rejecting RICO claim predicated on defendants' misrepresentations about compliance with federal law because, "as the proximate victim of the alleged fraud, the United States would be the better party to sue were there fraud"). Here, the United States, as the direct victim of the alleged predicate acts, is better positioned to vindicate the law in these circumstances. *See Healey*, 78 F.4th at 27 (collecting cases rejecting RICO claims because the United States was a more direct victim of the alleged violations). In fact, the United States **has** vindicated the law, securing BHL's and Mr. Zhao's criminal convictions and more than \$4 billion in monetary relief for the exact conduct Plaintiffs cite as giving rise to the alleged RICO violation. *See* FAC ¶ 2 & *supra* note 1. Plaintiffs' lawsuit, a substantial portion of which is cut and pasted from plea documents in the Defendants' criminal cases, is a transparent attempt to piggyback on criminal cases that the United States has brought and resolved while seeking double recovery for the same misconduct as alleged in the Texas Case. RICO does not permit duplicative relief for legal violations the government is better positioned to enforce. *See, e.g., Hemi Grp.*, 559 U.S. at 12; *Healey*, 78 F.4th at 27.

*Fourth*, and relatedly, while Plaintiffs claim they were harmed "as a direct result of the Defendants' actions," FAC ¶ 3, their allegations contradict the federal restitution framework. The crimes to which BHL and Mr. Zhao pleaded guilty in their criminal cases do not permit victim

restitution. *See United States v. Snider*, 957 F.2d 703, 706 (9th Cir. 1992) ("[A] violation of 31 U.S.C. §§ 5322 . . . is not among those for which the VWPA authorizes restitution."); *United States v. Liggins*, No. 1:22-cr-10152-IT, 2023 WL 7693958, at *3 (D. Mass. Nov. 15, 2023) (mandatory restitution is not authorized for violations of 18 U.S.C. §§ 1960(a) and (b)). While restitution may be imposed as a condition of supervised release, 18 U.S.C. § 3583, only "victims"—defined as persons "**directly and proximately** harmed as a result of the commission of an offense"—are entitled to restitution. 18 U.S.C. § 3663(a)(2) (emphasis added). That is the same causation standard that applies here and highlights why Plaintiffs' allegations fall short. Under federal criminal law, Plaintiffs cannot be considered victims of Defendants' offenses who are entitled to restitution because their harm was not directly and proximately caused by Defendants' conduct; it was caused by pig butchering schemes that had nothing to do with Defendants. *See United States v. Varrone*, 554 F.3d 327, 334 (2d Cir. 2009) (Sotomayor, J.) ("[A]s the government concedes, Bruss's loss was directly caused by a fraudulent scheme, and not by Castello's failure to file CTRs."). This Court should not endorse Plaintiffs' attempt to circumvent the federal criminal justice system by obtaining victim restitution through a civil RICO lawsuit that was unavailable in the criminal cases that the Department of Justice brought and resolved against BHL and Mr. Zhao.

**B.      Plaintiffs Fail to Allege the Existence of a RICO Enterprise.**

The FAC should also be dismissed in its entirety because it fails to allege the existence of *any* criminal enterprise. *See* 18 U.S.C. § 1962(c) (it is "unlawful for any person employed by or *associated with **any enterprise*** . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." (emphasis added)).

To plead an association-in-fact enterprise under § 1962(c), a plaintiff must plausibly allege that: (1) the enterprise shares a purpose, (2) there is a relationship among those associated

with the enterprise, and (3) there is longevity among the enterprise sufficient to permit the associates to pursue the enterprise's purposes. *See Boyle v. United States*, 556 U.S. 938, 944–46 (2009). In addition, "the unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it." *See Doyle v. Hasbro, Inc*., 103 F.3d 186, 190 (1st Cir. 1996).

None of Plaintiffs' five alleged criminal enterprises, detailed in Background Section II, satisfies these requirements. For each alleged enterprise, Plaintiffs' allegations fail on one of two grounds (and sometimes both). First, Plaintiffs do not establish an association-in-fact in the first instance because they fail to plead a common purpose or satisfy the longevity requirement. Second, Plaintiffs fail to adequately distinguish between the person conducting the unlawful scheme and the enterprise itself. *See* FAC ¶¶ 258–62.

*Enterprise 1.* Enterprise #1 fails because it does not allege an enterprise distinct from the "person" purportedly engaged in racketeering activity—instead alleging that BHL and BAM are both the enterprise and the racketeering participants. *See Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23–24 (1st Cir. 1988). In *Odishelidze*, the complaint characterized Aetna, its subsidiaries, its officers, and some employees as both the enterprise and the "persons" who conducted the enterprise's affairs through a pattern of racketeering activity. *Id.* The First Circuit held that the complaint failed to distinguish the "person" from the "enterprise" and dismissed the plaintiff's section 1962(c) claim. *Id.* at 23 (affirming dismissal of RICO claims because the "Aetna companies and their officers or employees . . . cannot be the entity that conducts its own affairs through a pattern of racketeering activity"). Here, "Enterprise #1," which alleges that "Binance, BAM, and Zhao participated in . . . a pattern of racketeering activity" to mislead the United States, is no different than the failed allegations in *Odishelidze*. FAC ¶ 264.

*Enterprise 2.* "Enterprise #2" fails for multiple reasons. ***First***, the FAC does not

distinguish between the enterprise and the named defendant directing the enterprise, pointing to Mr. Zhao as the single individual who conducted the enterprise, employed its officers and executives, and directed the pattern of racketeering activity. *See Rhone v. Energy North, Inc.*, 790 F. Supp. 353, 358–59 (D. Mass. 1991) (dismissing RICO complaint because, in the same paragraph, it identified individuals as the enterprise and then identified those same corporate officers and the individuals conducting the pattern of racketeering activity). Indeed, Plaintiffs allege Mr. Zhao maintained majority ownership of BHL, served as its CEO until November 2023, and "[u]ntil at least 2022 . . . owned approximately 90% of Binance's equity and BAM's equity and directed and controlled all of Binance's and BAM's corporate decisions, strategies, and conduct." FAC ¶¶ 1, 38. One person does not constitute an enterprise. *Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.*, 788 F. Supp. 54, 58 (D. Mass. 1991) ("[a] 'person' charged with a RICO offense cannot also be the 'enterprise' under the statutory scheme").

**Second**, Plaintiffs' barebones allegations referencing Mr. Zhao's guilty plea—without identifying the executives in question or how they acted in coordination—fail to adequately allege an enterprise by association-in-fact because "something more than parallel conduct" must be alleged to satisfy the relationship requirement. *Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*, No. 15-cv-3784 (PKC), 2016 WL 6110565, at *4–7 (S.D.N.Y. Aug. 4, 2016); *see Metropolitan Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*, 266 F. Supp. 3d 502, 524 (D. Mass 2017) (an association-in-fact enterprise requires a showing that the defendants functioned as a continuing unit, and not merely as individual entities, carrying out separate business activities); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183–84 (D. Mass. 2003) ("a doctor in Massachusetts and a doctor in Minnesota [we]re not part of the same RICO enterprise" simply because both allegedly took payments in exchange for prescriptions and were

"aware of the involvement of other similarly-situated providers").

*Third*, Plaintiffs fail to establish an association-in-fact enterprise as they do not allege *any* facts demonstrating "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. "Enterprise #2" does not satisfy the longevity requirement because Mr. Shroder did not become CEO of BAM until "August 2021 [] *after* the Cambodian syndicate's fraud scheme against" lead Plaintiff Licht. FAC ¶ 66. Accordingly, this alleged association-in-fact lacks the requisite longevity as it did not even exist in its alleged form at the time of the pattern of racketeering activity. *See Boyle*, 556 U.S. at 946 (an "'enterprise' must have some 'longevity,' since [RICO requires] proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity'") (citations omitted); *cf. Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puerrtorriquena, Inc*., 118 F. Supp. 3d 447, 455 (D.P.R. 2015) (the alleged enterprise had "longevity" because the insurance scheme perpetuated "from 2007 through 2014").

*Enterprise 3.* "Enterprise #3" fails because it does not identify an enterprise distinct from a named defendant. Plaintiffs again allege that Mr. Zhao directed the conduct of "Enterprise #3." *Id*. This Court has been clear that the person committing the illegal acts must be distinct from the enterprise. *See Deane v. Weyerhauser Mortg. Co.*, 967 F. Supp. 30, 34 (D. Mass. 1997) (the First Circuit looks to the complaint's allegations to determine whether the person and enterprise are distinct at the time of the RICO activity). Here, as in *Deane*, there is an "integrated operational relationship" between BHL and Mr. Zhao and therefore no RICO enterprise is established. *Id.* at 34–35 (the "three entities . . . are not distinct" because "[w]hen the enterprise benefits from the person's unlawful activities neither is distinct for Section 1962(c) purposes"). Plaintiffs allege that Mr. Zhao founded BHL, owned approximately 90% of its equity at all relevant times, and

"directed and controlled all of Binance's and BAM's corporate decisions, strategies, and conduct." FAC ¶ 38. Therefore, just as for "Enterprise #2," no RICO enterprise is pled because one person does not constitute an enterprise. *Boston Carriage, Inc. v. Boston Suburban Coach, Inc.*, No. 1:21-cv-10688-IT, 2022 WL 4626918, at *15 (D. Mass. Sept. 30, 2022) ("A single entity cannot be both an enterprise and person for purposes of RICO."); *Charles River Data Sys.*, 788 F. Supp. at 58 (same).

*Enterprise 4.* "Enterprise #4" consists solely of unsubstantiated allegations that are woefully insufficient to establish an association-in-fact enterprise. For this alleged enterprise, Plaintiffs have not pleaded an association-in-fact between BHL and Mr. Zhao and the pig butchering schemes that forms a "continuing unit with a common purpose." *In re Pharm. Indus.*, 263 F. Supp. 2d at 184. Plaintiffs do not, and cannot, allege that BHL or Mr. Zhao knew of these specific pig butchering schemes, let alone coordinated with them in carrying out criminal activities. The absence of such allegations is fatal. *Id.* (dismissing the AWP Enterprise because the "complaint makes no allegation . . . [plausibly pleading] a common fraudulent purpose" amongst the doctors and pharmaceutical companies). As in *Ezell v. Lexington Insurance Company*, Plaintiffs fail to allege that the supposed participants in "Enterprise #4" "associated together for a common illegal purpose as opposed to merely conducting their business in parallel"—and therefore they fail to plead a RICO enterprise. 335 F. Supp. 3d 91, 96–97 (D. Mass. 2018) (no association-in fact enterprise where two insurance brokers engaged in alleged fraudulent practices in parallel because there was no common purpose established).

*Enterprise 5.* "Enterprise #5" fails to establish an association-in-fact enterprise because no pleaded facts indicate a "continuing unit that functions with a common purpose." *Metropolitan Prop. & Cas. Ins. Co.*, 266 F. Supp. 3d at 523 (holding that "RICO does not

penalize parallel uncoordinated fraud" and therefore "allegations that show different subsets of [a] group pursuing their own ends separately rather than functioning together as a coherent unit fail to establish an association-in-fact enterprise" (citations and quotations omitted)). Instead, Plaintiffs here assert a series of criminal acts by distinct criminal syndicates carrying out pig butchering schemes, with each organization consisting of unknown and unidentified individuals with no alleged relationships or connections to each other. A random collection of individuals who happen to be engaged in the same conduct does not constitute a RICO enterprise. *See In re Pharm. Indus.*, 263 F. Supp. 2d at 184 (dismissing portions of the complaint because "plaintiffs have not alleged an association in fact . . . that forms a continuing unit with a common purpose"); FAC ¶ 262 ("[I]t is not presently known whether the Plaintiffs were victimized by a single common syndicate or multiple syndicates."). The Supreme Court has explicitly cautioned against confusing "the common purpose of a single enterprise with the several, though similar, purposes of numerous separate enterprises of like character." *In re Pharm. Indus.*, 263 F. Supp. 2d at 183 (*citing Kotteakos v. United States,* 328 U.S. 750, 769 (1946)).

### C.      Plaintiffs Fail to Plausibly Allege Domestic Injury.

The FAC should also be dismissed for another independent reason: Plaintiffs fail to adequately allege that they suffered a domestic injury. To "overcome the presumption against extraterritoriality," § 1964(c) requires a "private RICO plaintiff [to] allege and prove a domestic injury to business or property." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016). "[W]here plaintiffs' injuries were felt . . . [or] suffered" is dispositive of whether an injury is domestic or foreign. *Gov't of Berm. v. Lahey Clinic, Inc.*, No. 17-cv-10242-IT, 2018 WL 1243954, at *4 (D. Mass. Mar. 8, 2018) (adopting the Second Circuit's property-focused approach to determining domestic injury, as set forth in *Bascuñán v. Elsaca*, 874 F.3d 806, 809 (2d Cir. 2017)). In cases of financial fraud, the "geographic location of [plaintiffs']

misappropriated funds" at the time they were stolen determines where the injury was felt or suffered. *See id.* (plaintiff suffers a domestic injury only "if [their] property was located in the United States when it was stolen or harmed").

Here, the FAC alleges **no facts** regarding the geographic location of Plaintiffs' allegedly misappropriated funds. Indeed, the FAC does not even attempt to allege where Plaintiffs suffered harm. *See* FAC ¶¶ 10–35 (alleging Plaintiffs' residencies without specifying whether they suffered injuries there); *id.* ¶¶ 92, 99, 105, 111, 119, 125, 132, 139, 144, 150, 156, 163, 170, 177, 182, 189, 199, 208, 214, 228, 235, 244, 250, 256 (alleging Plaintiffs were harmed without specifying where).

Although the complaint alleges that **some** Plaintiffs were in the United States—while saying nothing about the location of their stolen funds—an allegation of residency is insufficient to allege a domestic injury arising from stolen property. *See City of Almaty, Kaza. v. Ablyazov*, No. 15-cv-5345 (AJN), 2018 WL 3579100, at *3 (S.D.N.Y. July 25, 2018) (noting that the court in *Bascuñán*, 874 F.3d at 819, "distinguished its more property-focused approach from . . . [a] residency-based test" for deciding whether an injury is foreign or domestic). That is especially true here, where Plaintiffs allege that they transferred their funds into digital wallets, from which non-U.S. criminal syndicates ultimately stole them. *See, e.g.*, FAC ¶ 80 ("[A]t 'Tina Ling's' instruction, Lenny transferred all of this USDT to a pair of digital wallets that he understood to be LuxKey."); *cf. Bascuñán*, 874 F.3d at 810, 824 (plaintiff "plausibly alleged a domestic injury" because "the misappropriation of [funds was from] . . . a bank account in New York"). The FAC does not plead that their cryptocurrency was physically located in the United States at the time it was stolen, nor is that a necessary or plausible inference, given Plaintiffs' allegations that "Binance is a Cayman Islands corporation," the syndicates were based abroad, and the syndicates

"transferred" Plaintiffs' funds to other accounts at crypto exchanges. *See, e.g.*, FAC ¶¶ 1, 6,8, 84–86, 262; *Bascuñán*, 874 F.3d at 824.

By not pleading that the stolen cryptocurrency was in the United States when it was stolen, Plaintiffs have failed to adequately allege a domestic injury. *Lahey Clinic*, 2018 WL 1243954 at *4 (dismissing portions of plaintiff's complaint under Rule 12(b)(6) because the allegations relating to the Scanning and Bidding Schemes did "not allege misappropriation of domestic funds"); *see also Bascuñán*, 874 F.3d at 819 (domestic injury only occurs "if the [stolen] property was physically located in the United States," even if a defendant exploited the "U.S. financial system to conceal or effectuate his tort"). Accordingly, all 26 Plaintiffs' claims must be dismissed for lack of a domestic injury. *Rodriguez v. Nationstar Mortg. LLC*, No. 14-cv-12330, 2014 WL 5426972, at *2 (D. Mass. Oct. 24, 2014) ("A court **must** dismiss a complaint for failure to state a claim 'if the complaint does not set forth factual allegations . . . respecting each material element necessary to sustain recovery . . .'" (emphasis added) (citation omitted)).

### D. Counts 1–3 Fail to Allege a Proper RICO Predicate.

Counts 1–3 of the FAC should be dismissed because they lack a RICO predicate. The alleged RICO predicates for Enterprises #1–#3 are based on Plaintiffs' assertion that because BHL operated an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), every transaction on the "Binance exchange" necessarily and automatically constitutes money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), which is a RICO predicate. *See* FAC ¶¶ 264–65; *see also id*. ¶¶ 41, 52, 68, 260 (asserting that violations of § 1960 had the effect of making every transaction on the Binance exchange money laundering in violation of § 1956).

This strained attempt to identify two RICO predicates fails for several reasons. **First**, just because RICO § 1961(1) defines "racketeering activity" to include violations of §§ 1956 (money laundering) and 1960 (unlicensed money transmitting), that does not mean that the commission

of unlicensed money transmitting necessarily results in the commission of other offenses enumerated under § 1961. Similarly, § 1956's definition of a "specified unlawful activity" ("SUA") includes offenses listed in § 1961, but that does not mean that a § 1961 eligible offense automatically implicates a § 1956 offense.

***Second***, Plaintiffs must allege that Defendants engaged in racketeering activity by committing an "indictable" predicate act and must allege facts supporting all elements of the predicate offense. 18 U.S.C. § 1961(1)(B); *AngioDynamics, Inc. v. Clarion Med. Techs.*, No. 18-30038-MGM, 2019 WL 10787926, at *13 (D. Mass. Sept. 25, 2019) ("The complaint also must sufficiently allege the elements of the predicate acts.") (citing *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 396 (D. Mass. 2016)). Plaintiffs' attempt to include money laundering as a RICO predicate is based solely on the money laundering statute's (18 U.S.C. § 1956(c)(7)(A)) cross-reference to 18 U.S.C. § 1961(1). Plaintiffs have not even attempted to allege facts supporting each element of money laundering. Those elements are: a defendant (i) conducted financial transactions involving the "proceeds" of a SUA (i.e., unlicensed money transmitting) while (ii) knowing the "proceeds" were "of some form of unlawful activity" and (iii) either (a) knowing the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the SUA proceeds or (b) with the intent to promote the carrying on of the SUA. *See* 18 U.S.C. § 1956(a)(1). Because Plaintiffs have not set forth facts establishing each element, they have failed to plausibly allege money laundering as a predicate.

***Finally***, contrary to Plaintiff's improper reading, violations of the unlicensed money transmitting and money laundering statutes do not—and cannot—merge because each offense requires proof of a fact which the other does not. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory

provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."); *Liggins*, 2023 WL 7693958 at *3 (comparing differing elements of money transmitting and money laundering statutes); *cf. United States v. Crater*, 93 F.4th 581, 585 (1st Cir. 2024) (defendant was charged with operating an unlicensed money transmitting business but not with money laundering). Plaintiffs' position would improperly conflate the two statutes and render every money transmitting violation a money laundering violation based on the same financial transactions.

Therefore, Counts 1–3—which are based on Plaintiffs' contorted money laundering theory underlying Enterprises #1–#3—must be dismissed for lack of a RICO predicate.

### E. Count 1 Fails to Allege BAM's Operation of BHL.

Count 1 should be dismissed for the additional reason that Plaintiffs fail to allege facts regarding BAM's purported "operation" of BHL. Plaintiffs allege that "Binance, BAM, and Zhao were each associated with Enterprise #1 and participated in and/or directed the conduct of Enterprise #1's affairs through a pattern of racketeering activity, to wit, operating Binance in violation of 18 U.S.C. § 1960(a)." FAC ¶ 274. Enterprise #1 is defined as "an association-in-fact RICO enterprise," made up of BHL and BAM. *Id*. ¶ 258. The FAC, however, is completely devoid of any allegations concerning BAM's purported role in operating BHL, despite Count 1 being based on "operating Binance in violation of 18 U.S.C. 1960(a)." *Id*. ¶ 274. Indeed, Plaintiffs directly undercut their own allegations by asserting that "BAM is not even a corporate **affiliate** of Binance," *id*. ¶ 37, and that "Binance clandestinely maintained custody and control of the cryptocurrency assets that [sic] deposited, held, and traded on BAM's Binance.US platform, and maintained extensive ties to the operation of the Binance.US platform," *id*. ¶ 40.

To sustain a § 1962(c) claim against BAM, Plaintiffs must allege that BAM "engaged in criminal activity by means of [its] 'operation and management' of the alleged enterprise." *Zhu v.*

*First Atl. Bank*, No. 05 Civ. 96 (NRB), 2005 WL 2757536, at *5 (S.D.N.Y. Oct. 25, 2005); *see also Patel v. Fendler,* No. 15-cv-0366-MJR-PMF, 2016 WL 6248285, at *2 (S.D. Ill. Oct. 26, 2016) ("Each person or entity targeted for liability for a violation of 18 U.S.C. § 1962(c) must have 'participated in the operation or management' of the enterprise, such that it played a role 'in directing the enterprise's affairs' and not just its own operations.") (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)); *Super Vision Int'l, Inc. v. Mega Int'l Commer. Bank Co., Ltd.,* 534 F. Supp. 2d 1326, 1338 (S.D. Fla. 2008) ("[T]he civil RICO defendant must exercise some degree of direction of the enterprise as well as an element of control, and liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." (internal quotation marks and citation omitted)). This is particularly important here, given the absence of any allegations that the stolen cryptocurrency was laundered through BAM's (regulated) trading platform. Accordingly, Plaintiffs' inability to allege facts supporting BAM's control or operation of BHL (and their inclusion of specific allegations undermining that conclusion) is fatal to Count 1.

### F.    Counts 5 and 6 Fail to Allege a Conspiracy.

To state a RICO conspiracy claim, Plaintiffs must allege at a minimum that Defendants conspired **with others** to commit civil RICO. 18 U.S.C. § 1962(d); *Douglas v. Lalumiere*, No. 2:20-cv-00227-JDL*,* 2022 WL 860250, at *3 (D. Me. Mar. 23, 2022) ("'To prove a RICO conspiracy offense, the [plaintiff] must show that the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense.'") (alteration in original) (quoting *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021)). With respect to Counts 5 and 6, Plaintiffs do not allege a conspiracy involving any Defendant, compelling their dismissal.

In support of Count 5, Plaintiffs allege that "BAM conspired with Enterprise #3's pattern

of racketeering activity" and "with Enterprise #3's RICO violations." FAC ¶ 286. Enterprise #3 is defined as the "Binance corporate RICO enterprise." *Id*. ¶ 260. Notably, Plaintiffs do not allege that BAM conspired with Enterprise #3 itself, as opposed to with Enterprise #3's alleged "pattern of racketeering activity." *Id*. ¶ 286. And Plaintiffs do not allege any conduct by BHL or Mr. Zhao to demonstrate their participation in a conspiracy concerning Enterprise #3.

Similarly, in support of Count 6, Plaintiffs allege that Enterprise #5 consists of a collection of one or more criminal syndicates that are "association-in-fact enterprises," *id*. ¶ 262, and that "Binance and Zhao conspired in Enterprise #5's pattern of racketeering activity," *id*. ¶ 290. However, as with Count 5, section 1962(d) prohibits entities from conspiring ***with other entities***; it does not prohibit conspiring with conduct or actions.

In sum, Plaintiffs have not alleged facts establishing any element of a RICO conspiracy.

## **CONCLUSION**

For the reasons set forth above, the FAC should be dismissed in its entirety.

Dated: June 28, 2024

Respectfully submitted,

<u>*/s/ Joseph P. Davis III*</u>
Joseph P. Davis III (BBO # 551111)
Linda M. Ricci (BBO # 600284)
Mian R. Wang (BBO # 683656)
Alison T. Holdway (BBO # 690569)
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, MA 02110
Tel.: (617) 310-6000
davisjo@gtlaw.com
linda.ricci@gtlaw.com
wangm@gtlaw.com
alison.holdway@gtlaw.com

- and -

David I. Miller (*pro hac vice* forthcoming)
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Tel.: (212) 801-9200
david.miller@gtlaw.com

*Counsel for Defendant Binance Holdings Limited*

*/s/ Avi Perry*
Isaac Saidel-Goley (BBO # 699659)
Zi Chun Wang (BBO # 709803)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02118
Tel.:   (617) 712-7100
isaacsaidelgoley@quinnemanuel.com
michellewang@quinnemanuel.com

- and -

Avi Perry (*pro hac vice*)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC 2005
Tel.:   (202) 538-8330
aviperry@quinnemanuel.com

- and -

Peter Fountain (*pro hac vice*)
Ted Ovrom (*pro hac vice*)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
51 Madison Avenue, Floor 22
New York, NY 10010
Tel.:   (212) 849-7000
peterfountain@quinnemanuel.com
tedovrom@quinnemanuel.com

*Counsel for Defendant Changpeng Zhao*

*/s/ George Mastoris*

Seth C. Farber (BBO # 554652)
George Mastoris (*pro hac vice*)
Thania Charmani (*pro hac vice*)
Gabriela Beata Wolk (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel.:    (212) 294-6700
sfarber@winston.com
gmastoris@winston.com
acharmani@winston.com
gwolk@winston.com

- and -

Daniel T. Stabile (*pro hac vice*)
WINSTON & STRAWN LLP
200 S. Biscayne Boulevard
Miami, FL 33131
Tel.:    (305) 910-0500
dstabile@winston.com

*Counsel for Defendant BAM Trading
Services, Inc.*