**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEONARD LICHT, ZHENGJUN CAI, HENRY CHEN, DANIEL CHANG, DOMINIC CHOW, CHENGGUO DONG, IHAB W. FRANCIS, JOHN GORDON, DALTON GREEN, MICHAEL GRILLI, IRAKLIS KARABASSIS, NADER LOBANDI, JAMES MOSKWA, ANH NGUYEN, BRIAN ROTHAUS, GORDON SHAYLOR, RICHARD SLAVANT, NATHANIAL THRAILKILL, JACK YAO, and JUN ZHAI,<br><br>        Plaintiffs,<br><br>v.<br><br>BINANCE HOLDINGS LIMITED, d/b/a BINANCE.COM, BAM TRADING SERVICES, INC., d/b/a BINANCE.US, and CHANGPENG ZHAO,<br><br>        Defendants. | No. 1:24-cv-10447-NMG<br><br>**Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' JOINT MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

Preliminary Statement ..................................................................................................1

Factual Background .....................................................................................................3

    I.      Plaintiffs' Exposure to Crypto Fraud Schemes Unrelated to Defendants ..............3

    II.     Plaintiffs' Five Alleged RICO Enterprises ................................................4

          A.      Enterprises #1–#2 (Alleged Association-in-Fact Enterprises) and Enterprise #3 (Alleged "Binance Corporate Enterprise") ..........................4

          B.      Enterprises #4 and #5 (Alleged Association-in-Fact Enterprises) ..............5

    III.    Plaintiffs' Inadequate Allegations of Personal Jurisdiction ..............................6

    IV.    Plaintiffs' Other Cases Seeking the Same Relief from Different Defendants.................................................................................................7

Procedural Background ...............................................................................................7

Argument......................................................................................................................8

    I.      The Court Lacks Personal Jurisdiction Over BAM. ......................................8

    II.     The Court Lacks Personal Jurisdiction Over BHL and Mr. Zhao. ..................8

          A.      The Court Lacks General Personal Jurisdiction. ...................................9

          B.      The Court Lacks Specific Personal Jurisdiction. .................................11

    III.    The SAC Should Be Dismissed for Failure to State a Claim. ......................14

          A.      Plaintiffs Fail to Allege Causation. ....................................................14
              1.      The SAC Fails to Adequately Allege But-For Causation. ............15
              2.      The SAC Fails to Adequately Allege Proximate Causation. ........19

          B.      Plaintiffs Fail to Plausibly Allege Domestic Injury ...................................23

          C.      Plaintiffs Fail to Allege the Existence of a RICO Enterprise....................26

          D.      Plaintiffs Fail to Allege a Proper RICO Predicate. ...................................31
               1.      The SAC Fails to Allege Money Laundering. ...............................31
               2.      The SAC Fails to Allege Aiding and Abetting. .............................32

          E.      Count 6 Fails to Allege a Conspiracy. .........................................................35

Conclusion..........................................................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*AngioDynamics, Inc. v. Clarion Med. Techs.*,
  2019 WL 10787926 (D. Mass. Sept. 25, 2019) ........................................................ 12

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
  8 F.4th 1 (1st Cir. 2021) ........................................................................................ 34

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*,
  480 U.S. 102 (1987) ......................................................................................... 9, 13

*Asociación Hosp. Del Maestro, Inc. v. Becerra*,
  10. F.4th 11 (1st Cir. 2021) .................................................................................. 34

*Blockburger v. United States*,
  284 U.S. 299 (1932) ............................................................................................. 32

*Boston Carriage, Inc. v. Boston Suburban Coach, Inc.*,
  2022 WL 4626918 (D. Mass. Sept. 30, 2022) ......................................................... 28

*Boyle v. United States*,
  556 U.S. 938 (2009) ........................................................................................ 26, 29

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
  582 U.S. 255 (2017) ........................................................................... 8, 9, 11, 13

*Bucci v. Essex Ins. Co.*,
  393 F.3d 285 (1st Cir. 2005) ................................................................................... 7

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC,*
  *Inv., Inc.*,
  788 F.2d 535 (9th Cir. 1986) ................................................................................. 10

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
  315 F.R.D. 116 (D. Mass. 2016), *aff'd*, 915 F.3d 1 (1st Cir. 2019) .................... 14, 19

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) ..................................................................................... 32, 33, 34

*Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.*,
  788 F. Supp. 54 (D. Mass. 1991) ........................................................................... 28

*Chen v. U.S. Sports Acad., Inc.*,
  956 F.3d 45 (1st Cir. 2020) ..................................................................................... 8

*Cory v. Aztec Steel Bldg., Inc.*,
  468 F.3d 1226 (10th Cir. 2006) .............................................................................. 10

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ...............................................................................8, 9, 10

*Deane v. Weyerhauser Mortg. Co.*,
  967 F. Supp. 30 (D. Mass. 1997) ...............................................................29

*Dinco v. Dylex Ltd.*,
  111 F.3d 964 (1st Cir. 1997) ......................................................................34

*Dixit v. Smith*,
  2023 WL 6150816 (W.D. Tenn. Aug. 11, 2023) ......................................26

*Douglas v. Hershon*,
  63 F.4th 49 (1st Cir. 2023) .........................................................................35

*Douglas v. Lalumiere*,
  2022 WL 860250 (D. Me. Mar. 23, 2022) .................................................35

*Doyle v. Hasbro, Inc.*,
  103 F.3d 186 (1st Cir. 1996) .................................................................26, 27

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
  902 F.3d 132 (2d Cir. 2018) .......................................................................15

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
  529 F.3d 1087 (D.C. Cir. 2008) .................................................................10

*Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*,
  2016 WL 6110565 (S.D.N.Y. Aug. 4, 2016) .............................................28

*U.S. ex rel. Hawkins v. ManTech Int'l Corp.*,
  ---F.Supp.3d ---, 2024 WL 4332117 (D.D.C. Sept. 27, 2024) .............24, 25

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ................................................................................14, 20

*Holmes v. Securities Inv. Protection Corp.*,
  503 U.S. 258 (1992) ...................................................................................14

*Jakuttis v. Town of Dracut, Mass.*,
  656 F. Supp. 3d 302 (D. Mass. 2023) ........................................................35

*Kotteakos v. United States*,
  328 U.S. 750 (1946) ...................................................................................31

*Laurel Gardens, LLC v. McKenna*,
  948 F.3d 105 (3d Cir. 2020) .......................................................................10

*Lisak v. Mercantile Bancorp, Inc.*,
    834 F.2d 668 (7th Cir. 1987) .................................................................. 10

*Metropolitan Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*,
    266 F. Supp. 3d 502 (D. Mass. 2017) ........................................... 27, 28, 30

*Miranda v. Ponce Fed. Bank*,
    948 F.2d 41 (1st Cir. 1991) .................................................................. 23

*Natale v. Espy Corp.*,
    2 F. Supp. 3d 93 (D. Mass. 2014) ......................................................... 31

*Odishelidze v. Aetna Life & Cas. Co.*,
    853 F.2d 21 (1st Cir. 1988) .................................................................. 27

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
    298 F.3d 768 (9th Cir. 2002) ......................................................... 18, 21, 22

*Pennsylvania Ass'n of Edwards Heirs v. Rightenour*,
    235 F.3d 839 (3d Cir. 2000) .................................................................. 33

*Percival Partners Ltd. v. Nduom*,
    99 F.4th 696 (4th Cir. 2024) .................................................................. 26

*Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*,
    40 F.4th 432 (6th Cir. 2022) .................................................................. 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    263 F. Supp. 2d 172 (D. Mass. 2003) ........................................... 28, 30, 31

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998) .................................................................. 10

*Rhone v. Energy North, Inc.*,
    790 F. Supp. 353 (D. Mass. 1991) ......................................................... 28

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016) .................................................................. 24

*Roe v. Healey*,
    78 F.4th 11 (1st Cir. 2023) .................................................................. 20

*Ross v. Patrusky, Mintz & Semel*,
    1997 U.S. Dist. LEXIS 5726 (S.D.N.Y. 1997) ......................................... 33

*Ryan v. Greif, Inc.*,
    2023 WL 5979711 (D. Mass. Sept. 1, 2023) .......................................... 11

*Salas v. Int'l Union of Operating Eng'rs*,
   2015 U.S. Dist. LEXIS 20077 (C.D. Cal. 2015) ........................................................ 33

*Scivally v. Graney*,
   1993 WL 207758 (D. Mass. June 7, 1993), *aff'd*, 21 F.3d 420 (1st Cir. 1994) ...................... 14

*Singh v. Illusory Sys., Inc.*,
   2024 WL 1386356 (D. Del. Mar. 29, 2024) ............................................................ 17

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*,
   990 F.3d 31 (1st Cir. 2021) ....................................................................... 19

*Trustees of Boston Univ. v. ASM Communs. Inc.*,
   33 F. Supp. 2d 66 (D. Mass. 1998) ................................................................. 34

*United States v. Fernandez-Jorge*,
   894 F.3d 36 (1st Cir. 2018) ....................................................................... 18

*United States v. Liggins*,
   2023 WL 7693958 (D. Mass. Nov. 15, 2023) ......................................................... 32

*United States v. Loder*,
   23 F.3d 586 (1st Cir. 1994) ....................................................................... 34

*United States v. Swiss Am. Bank, Ltd.*,
   274 F.3d 610 (1st Cir. 2001) ....................................................................... 8

*United States v. Velazquez-Fontanez*,
   6 F.4th 205 (1st Cir. 2021) .................................................................... 23, 35

*Walden v. Fiore*,
   571 U.S. 277 (2014) ........................................................................... 9, 13

*Young v. Wells Fargo & Co.*,
   671 F.2d 1006 (S.D. Iowa 2009) .................................................................. 33

**Statutes**

18 U.S.C. § 1343 ..................................................................................... 5

18 U.S.C. § 1956(a) .................................................................................. 5

18 U.S.C. § 1956(a)(1) .............................................................................. 32

18 U.S.C. § 1956(a)(1)(A)(i) ...................................................................... 4, 31

18 U.S.C. § 1956(c)(7)(A) ........................................................................... 31

18 U.S.C. § 1960(a) .............................................................................. 4, 5, 31

18 U.S.C. § 1961(1) ........................................................................................................31, 33

18 U.S.C. § 1961(1)(B) ........................................................................................................31

18 U.S.C. § 1962(c) ...................................................................................................... passim

18 U.S.C. § 1962(d) ......................................................................................................4, 35

18 U.S.C. § 1964(c) ....................................................................................................14, 23

18 U.S.C. § 2 .........................................................................................................................33

**Other Authorities**:

Fed. R. Civ. P. 12(b)(2) ...........................................................................................................8

Rule 4(k) ...................................................................................................................... passim

Defendants Binance Holdings Limited ("BHL"), BAM Trading Services, Inc. ("BAM"), and Changpeng Zhao ("Mr. Zhao") (collectively, "Defendants") move to dismiss the Second Amended Complaint (ECF 79, "SAC") for lack of personal jurisdiction and failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiffs allege they are victims of an unknown number of "pig butchering" schemes orchestrated by an unknown number of unidentified individuals and entities. Plaintiffs do not allege that Defendants even knew about these particular fraudulent schemes, much less participated in them, before being named in this lawsuit. Instead, the **only** alleged connection between the fraudsters and Defendants is Plaintiffs' allegation that the fraudsters transferred some of Plaintiffs' cryptocurrency through Binance.com accounts after stealing it. Despite no connection between Defendants and Plaintiffs' losses, Plaintiffs seek to hold Defendants liable for any fraudulent scheme in which the subject cryptocurrency ever touched Binance.com.

The Court dismissed Plaintiffs' First Amended Complaint (ECF 36, "FAC") for failure to establish personal jurisdiction over BAM and failure to state a claim against BHL and Mr. Zhao. In doing so, the Court allowed Plaintiffs an opportunity to replead. Plaintiffs' latest attempt—the SAC—conclusively demonstrates that they cannot establish personal jurisdiction or state a viable RICO claim against any Defendant.

First, the Court lacks personal jurisdiction. As to BAM, the SAC makes no attempt to repair the allegations that the Court previously found deficient, and thus the Court should again dismiss all claims against BAM for lack of personal jurisdiction. As to BHL and Mr. Zhao, the SAC adds nothing to the FAC: neither BHL nor Mr. Zhao is alleged to be headquartered, have a principal place of business, live, or otherwise be "at home" in Massachusetts, so general jurisdiction is lacking. Specific jurisdiction is also lacking, as in the FAC, for multiple reasons. Plaintiffs' claims do not arise out of, or relate in any way, to activity occurring in Massachusetts. Also, RICO's

nationwide service provision does not confer jurisdiction because no defendant has minimum contacts with Massachusetts and the ends of justice do not require nationwide service over other defendants. Finally, Rule 4(k)(2) does not confer specific jurisdiction because Plaintiffs' claims do not arise out of BHL's or Mr. Zhao's alleged U.S. contacts.

The SAC also fails to state a cognizable RICO claim for several reasons. ***First***, Plaintiffs fail to plead causation. To rehabilitate the FAC's speculative causation theory, Plaintiffs allege a new RICO predicate—aiding and abetting wire fraud. But this new RICO predicate is based on the same factual allegations as Plaintiffs' other RICO predicates, which cannot save their claims. The SAC still does not establish a but-for or proximate causal link between the non-party scammers who stole Plaintiffs' cryptocurrency and Defendants, who did not even know about those particular scammers' activities. Regardless of what labels Plaintiffs assign to Defendants' conduct, their theory of harm rests on the separate conduct of separate parties whose actions are several steps removed from Defendants. This attempt to merge Defendants' conduct with the scammers' conduct by alleging an amorphous conspiracy among parties who did not even know each other is futile and underscores why the SAC should be dismissed with prejudice.

***Second***, Plaintiffs still do not plead domestic injury. The SAC only alleges harm flowing from international wires that Plaintiffs received from international scammers who directed their conduct from abroad. Plaintiffs' new barebones allegations relying on their area codes and social media profiles do not establish the scammers were solely or primarily targeting Americans. And Plaintiffs' conclusory allegations that they and their cryptocurrency were located in the U.S. cannot establish a domestic injury under Supreme Court precedent.

***Third***, Plaintiffs fail to adequately plead the existence of any enterprise, which requires (1) a shared purpose among the members of the enterprise separate and distinct from their predicate

acts; (2) a relationship among the members; and (3) longevity sufficient to allow those members to pursue their common purpose. Plaintiffs must also distinguish between the person conducting the unlawful scheme and the enterprise itself. None of Plaintiffs' five alleged enterprises satisfy these elements. The members of Enterprise #1 (BAM and BHL) are both the enterprise and the parties who carried out the alleged scheme. With respect to Enterprises #2 and #3 (Mr. Zhao and various named and unnamed BHL and BAM executives), the SAC fails to distinguish between the enterprises themselves and Mr. Zhao, the person allegedly directing each enterprise. For Enterprise #2, the SAC also fails to establish that its members functioned as a continuing unit carrying out coordinated activities. For Enterprise #4, which includes BHL, Mr. Zhao, and the non-party syndicates, Plaintiffs do not allege that Defendants knew of the schemes or their perpetrators, let alone coordinated with them to carry out criminal activities. Enterprise #5, comprised only of the syndicates, fares no better because Plaintiffs know nothing about the makeup, identity, or number of alleged syndicates, and thus cannot plead that they worked together towards a common purpose.

**Finally**, Plaintiffs do not put forth a viable theory establishing money laundering as a RICO predicate; do not allege the elements of aiding and abetting (which, in any event, cannot form the basis of a civil RICO action); and do not plausibly allege a RICO conspiracy. The Court should dismiss the SAC in its entirety with prejudice.

## FACTUAL BACKGROUND

### I.    Plaintiffs' Exposure to Crypto Fraud Schemes Unrelated to Defendants

Like the FAC, the SAC seeks to hold Defendants liable for fraud schemes perpetrated by unknown and unidentified criminal syndicates. Using social media and messaging platforms, scammers convinced Plaintiffs to purchase the cryptocurrency Tether ("USDT"), issued by Tether Ltd., which the scammers stole. Plaintiffs do not allege that Defendants perpetrated or knew of the particular schemes and/or scammers, or that Plaintiffs were BHL or BAM users/customers.

All Plaintiffs, except Leonard Licht, allege that malicious code was executed on their wallets allowing scammers to steal their crypto, or that scammers otherwise gained unauthorized access to their wallets, and that some or all of their stolen crypto was converted to legal tender through "the Binance.com exchange." SAC ¶¶ 115–258. Licht alleges he transferred his crypto to scammers who transferred it "through the Binance.com exchange." *Id*. ¶¶ 6, 107–14.

BHL and BAM are separate entities and do not operate under a unified corporate structure. *Id*. ¶ 31. Plaintiffs allege that BHL is a Cayman Islands corporation that operates the cryptocurrency exchange Binance.com and BAM is a Delaware corporation headquartered in Florida or California that operates a platform called Binance.US. *Id*. ¶¶ 1, 30–31. Mr. Zhao, BHL's founder, is alleged to be a Canadian citizen domiciled in Dubai. *Id*. ¶ 32.

## II. Plaintiffs' Five Alleged RICO Enterprises

Plaintiffs advance six civil RICO claims corresponding to five alleged enterprises (Enterprises #1–#5)[1] engaged in alleged violations of 18 U.S.C. §§ 1962(c) and 1962(d).

### A. Enterprises #1–#2 (Alleged Association-in-Fact Enterprises) and Enterprise #3 (Alleged "Binance Corporate Enterprise")

Plaintiffs allege that BHL and BAM were the members of Enterprise #1 and that Mr. Zhao and BHL and BAM employees, officers, and executives with whom Mr. Zhao conspired, were the members of Enterprise #2. SAC ¶¶ 261–62; *see also id*. Count 1, Count 2. Plaintiffs allege that BHL was the sole member of Enterprise #3. *Id*. ¶ 263; *see id*. Counts 3 & 5.

Plaintiffs allege that Enterprise #1 operated an unlicensed money transmitting business in violation of 18 U.S.C. §§ 1960(a) and 1956(a)(1)(A)(i), purportedly by virtue of guilty pleas. *Id*. ¶ 267. According to Plaintiffs, "but for" the activities of Enterprise #1, "Binance [would have]

---

[1] For ease of reference, Defendants refer to these alleged enterprises as Enterprises #1–#5 but contest that any enterprise exists or existed.

complied with the applicable anti-money laundering requirements, the pig butchering syndicates . . . would not have been able to launder [Plaintiffs'] USDT on the Binance.com exchange," and BHL would have "frozen the syndicates' Binance.com accounts, enabling law enforcement and Tether Ltd. to return the stolen USDT to the Plaintiffs." *Id*. ¶ 276.

Similarly, Plaintiffs claim that Enterprises #2 and #3 operated an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a) and aided and abetted wire fraud and money laundering under 18 U.S.C. §§ 1343 and 1956(a). *Id*. ¶ 269. Plaintiffs further claim that Enterprise #2 and #3 "enabled the pig butchering syndicates' successful completion of the fraud" and that "but for" the money laundering, Plaintiffs' USDT would have been "[]available to law enforcement and Tether Ltd." to seize, burn, or replace. *Id*. ¶ 277.

## B.     Enterprises #4 and #5 (Alleged Association-in-Fact Enterprises)

Plaintiffs allege that BHL, Mr. Zhao, and every supposed "syndicate" that defrauded Americans in crypto schemes and used the "Binance.com exchange" to convert crypto to legal tender were the members of Enterprise #4. *Id*. ¶ 264; *see id.* Count 4 (against BHL and Mr. Zhao). Enterprise #4 allegedly violated the money laundering statute and aided and abetted the "pig butchering syndicates' wire frauds" by allowing the syndicates to use the "Binance.com exchange" in crypto transactions involving illicit proceeds. *Id*. ¶ 271.

Plaintiffs allege that all "criminal syndicates that defrauded the Plaintiffs" were the members of Enterprise #5. *Id*. ¶ 265. Plaintiffs allege that BHL and Mr. Zhao conspired with Enterprise #5 "because they agreed to facilitate" the syndicates' wire fraud and money laundering by allowing them to convert crypto assets to legal tender on "the Binance.com exchange." *Id*. ¶ 265; *see also id.* Count 6 (against BHL and Mr. Zhao)

Plaintiffs allege that "the underlying wire frauds" and "money laundering" that comprise Enterprise #4's and #5's racketeering activities "were a but-for and proximate cause of the

Plaintiffs' economic injuries . . . because the wire frauds . . . caused the Plaintiffs' assets to be stolen in the first place and the laundering of those stolen assets on the Binance.com exchange is what caused the USDT to become unavailable to law enforcement and Tether Ltd." *Id.* ¶¶ 278–79.

### III.    Plaintiffs' Inadequate Allegations of Personal Jurisdiction

The SAC's personal jurisdiction allegations—which, as described below, are almost identical to the FAC's—rely almost exclusively on non-specific contacts between Defendants and the U.S., with none of the jurisdictional allegations relating to the claims at issue.[2]

As for BHL, Plaintiffs allege that general and specific personal jurisdiction exists based on contacts between BHL and the U.S., including that BHL "regularly and continuously solicit[ed] and d[id] business with customers located in the Commonwealth of Massachusetts, including on information and belief Commonwealth-based market makers." *Id.* ¶¶ 34–35.[3]

As for BAM, Plaintiffs allege that jurisdiction exists because BAM is a Delaware corporation headquartered in Florida or California and because it does business in Massachusetts, "including regularly and continuously soliciting and doing business with, on information and belief, thousands of customers based in the Commonwealth." SAC ¶ 37.[4] These are the same allegations the Court held insufficient to confer jurisdiction over BAM. R&R at 60.[5]

As for Mr. Zhao, Plaintiffs allege general personal jurisdiction exists because he was CEO of BHL and chairman of BAM's board and held approximately 90% of the equity in BHL and BAM. SAC ¶ 38. They allege specific jurisdiction because he "participated in and directed the

---

[2] In response to the R&R's conclusion that the Court can exercise personal jurisdiction over BHL and Mr. Zhao under Rule 4(k)(2), the SAC adds conclusory allegations reciting the components of that rule. SAC ¶¶ 36, 40.

[3] These jurisdictional allegations are the same as those in FAC ¶ 41.

[4] This is substantially the same as the FAC's specific jurisdiction allegations against BAM. FAC ¶ 42.

[5] This MTD cites the pages of the PDF version of the R&R that was entered on the docket. The R&R is also available at 2025 WL 625303 and 2025 U.S. Dist. LEXIS 37971.

conduct of the various RICO enterprises' predicate racketeering acts that were specifically directed at the United States market" and "conspired in the laundering on the Binance.com exchange of cryptocurrency assets stolen from U.S. citizen plaintiffs." *Id*. ¶ 39.[6]

## IV.    Plaintiffs' Other Cases Seeking the Same Relief from Different Defendants

As summarized in Defendants' Memorandum of Law in Support of their Joint Motion to Dismiss the FAC (ECF 56, "FAC MTD"), thirteen of the twenty Plaintiffs have filed ***other cases*** before ***other tribunals*** against ***other defendants*** based on the ***same crypto fraud schemes*** to recover the ***same damages***. *See* **Ex. 1** (Coinbase Arbitration Demand); **Ex. 2** (Supplement to Coinbase Arbitration Demand); **Ex. 4** (Licht Texas Complaint). Plaintiffs' judicially noticeable admissions in those cases undercut their claims here. *Bucci v. Essex Ins. Co.*, 393 F.3d 285, 296 n.5 (1st Cir. 2005) (party admission in another proceeding is "susceptible to judicial notice").

## PROCEDURAL BACKGROUND

On February 23, 2024, Licht filed the original Complaint. ECF 1. On May 1, 2024, other plaintiffs joined through the FAC. ECF 36. Defendants moved to dismiss the FAC on June 28, 2024. After the motion was fully briefed, the Court referred it to Magistrate Judge Kelley, ECF 57, 60–61. On February 5, 2025, Magistrate Judge Kelley recommended dismissal of the entire FAC because the Court lacks personal jurisdiction over BAM and Plaintiffs' did not plausibly allege causation or domestic injury as to BHL or Mr. Zhao. ECF 71. Plaintiffs, BHL, and Mr. Zhao filed objections to the R&R, and Plaintiffs moved for leave to file the SAC. ECF 73–75. On February 26, 2025, the Court accepted and adopted the R&R and granted Plaintiffs' motion. ECF 77–78. Plaintiffs filed the SAC. ECF 79. As in the FAC, Counts 1–4 of the SAC assert substantive RICO claims. SAC ¶¶ 280–91. Counts 5 and 6 assert RICO conspiracy claims. *Id*. ¶ 292–99.

---

[6] These are the same as the FAC's jurisdictional allegations against Mr. Zhao. FAC ¶¶ 43–44.

## ARGUMENT

**I.    The Court Lacks Personal Jurisdiction Over BAM.**

This Court has already dismissed the claims against BAM for lack of personal jurisdiction. Plaintiffs did not add any jurisdictional allegations regarding BAM, so there is no reason for the Court to revisit its prior holding. As Defendants understand it, Plaintiffs are prepared to concede that the Court's prior order controls and compels dismissal of the SAC with prejudice as to BAM, but simply wish to preserve their position on appeal. Accordingly, Defendants offer no additional argument here but simply refer the Court to pages 10-14 of the FAC MTD and pages 2-5 of the FAC Reply (ECF 61), which are hereby incorporated by reference. Should Plaintiffs nonetheless choose to include any substantive arguments with respect to personal jurisdiction over BAM in their Opposition, Defendants reserve the right to address those on reply.

**II.    The Court Lacks Personal Jurisdiction Over BHL and Mr. Zhao.**

Plaintiffs, who seek to invoke the Court's jurisdiction, must "proffer[] facts that, if credited, would support all findings 'essential to personal jurisdiction.'" *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 51 (1st Cir. 2020) (citation omitted). A complaint must be dismissed if it fails to establish that the court has general or specific personal jurisdiction as to ***each*** defendant. *See* Fed. R. Civ. P. 12(b)(2); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 617 (1st Cir. 2001).

General jurisdiction allows the court to "hear ***any*** claim against that defendant." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017). For individuals, general jurisdiction lies in the state where she is domiciled. *See id*. For corporations, general jurisdiction lies only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home.'" *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citation omitted). "[T]he place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id*. at 137 (quotations and citation omitted).

Specific jurisdiction exists only if "the *suit* . . . arise[s] out of or relate[s] to the defendant's contacts with the *forum*." *Bristol-Myers*, 582 U.S. at 262 (cleaned up). The plaintiff must show the relationship "arise[s] out of contacts that the '*defendant* himself' creates with the forum State," based on "defendant's contacts with the forum State itself, *not the defendant's contacts with persons who reside there*." *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) (emphasis added) (citations omitted). The defendant's "suit-related conduct must create a substantial connection with the forum [s]tate." *Id*. at 284. As such, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the *plaintiff (or third parties)* and the forum State." *Id.* (emphasis added); *see also Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987) ("The 'substantial connection' . . . between the defendant and the forum [] necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*.") (emphasis added) (citation omitted).

Plaintiffs have failed to allege general or specific jurisdiction over any Defendant.

## A.    The Court Lacks General Personal Jurisdiction.

*First*, there is no plausible allegation that any Defendant is subject to general jurisdiction in Massachusetts under due process principles. Plaintiffs' allegation that Mr. Zhao is not domiciled in Massachusetts, *see* SAC ¶ 32, forecloses general jurisdiction as to him. *See Bristol-Myers*, 582 U.S. at 262. The same is true for BHL, which is neither incorporated in nor has a principal place of business in Massachusetts. *See* Factual Background § I; *cf.* R&R at 61 (there "plainly" is no general jurisdiction over BAM in Massachusetts because it "is a Delaware corporation headquartered in California or Florida"). Further, Plaintiffs do not allege that BHL has offices or is essentially "at home," in Massachusetts. *See, Daimler*, 571 U.S. at 137–39 (defendant not "at home" in California because it neither was incorporated nor had its principal place of business

there). Plaintiffs' claims that BHL "regularly and continuously" conducted business in Massachusetts are insufficient; they do not include any factual allegations as to what BHL does in Massachusetts. *See, e.g.*, SAC ¶ 34. Indeed, in *Daimler*, the Court rejected the suggestion that general jurisdiction exists wherever a corporation engages in a substantial, continuous, and systematic course of business. *See* 571 U.S. at 138.

**Second**, Plaintiffs erroneously rely on RICO's provision allowing for **certain** process, SAC ¶ 37, focusing on Defendants' "continuous and systematic" contacts with the U.S., *id*. ¶¶ 34, 38.[7] To the extent Plaintiffs invoke personal jurisdiction under RICO pursuant to Rule 4(k)(1)(C),[8] the SAC—like the FAC—incorrectly alleges that the nationwide service provision in § 1965(d) confers personal jurisdiction over all defendants in a RICO case so long as they have minimum contacts with the U.S. as a whole. SAC ¶ 34.[9] Following other district courts in this Circuit, this Court expressly rejected Plaintiffs' argument and adopted the majority approach described in footnote 9 above. R&R at 47–52, 55–62. Indeed, this Court and other district courts interpret § 1965(b) to authorize nationwide service of process **only** when: (1) at least one defendant has minimum contacts with the forum state justifying the exercise of general or specific personal

---

[7] Because Plaintiffs rely on RICO's service of process provision in the context of general jurisdiction over BHL and the SAC's allegation that BHL "regularly and continuously solicit[ed] and d[id] business with customers located in the Commonwealth of Massachusetts," SAC ¶¶ 34–35, this MTD addresses personal jurisdiction under RICO in the context of general jurisdiction.

[8] The SAC does not mention Rule 4(k)(1), but BHL and Mr. Zhao presume that Plaintiffs' attempted invocation of RICO's service of process provision is based on Rule 4(k)(1)(C), under which a court may exercise personal jurisdiction "over a defendant . . . when authorized by a federal statute." *See* R&R at 42–43, 47–48 (relying on Rule 4(k)(1) to determine whether RICO authorized personal jurisdiction over Defendants).

[9] That is not the law of most circuits. The First Circuit has not interpreted the scope of § 1965, but district courts in this Circuit follow the majority approach of the Second, Third, Sixth, Seventh, Ninth, Tenth, and D.C. Circuits. *See, e.g., Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC, Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir. 1987); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71–72 (2d Cir. 1998); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006); *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1098–1100 (D.C. Cir. 2008), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 892 (D.C. Cir. 2021); *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 117–18 (3d Cir. 2020); *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 439–41 (6th Cir. 2022).

jurisdiction over it; and (2) the ends of justice require nationwide service of process over other out-of-state defendants. R&R 47–52, 55–62; *see, e.g., Ryan v. Greif, Inc.*, 2023 WL 5979711, at *13–14 (D. Mass. Sept. 1, 2023), *adopted in relevant part*, 2023 WL 8828220, at *2–4 (D. Mass. Dec. 21, 2023). The SAC contains no new or modified allegations to alter the R&R's correct conclusion that Plaintiffs failed to meet "their burden as to BAM under the traditional forum state contacts standard," R&R at 61, and the SAC—like the FAC—contains no facts showing that BHL or Mr. Zhao has Massachusetts contacts to justify jurisdiction here. As such, RICO's authorization of nationwide service of process cannot bring any Defendant within the Court's jurisdiction.

### B.    The Court Lacks Specific Personal Jurisdiction.

Plaintiffs' specific jurisdiction allegations fare no better. ***First,*** Plaintiffs fail to identify some "activity or an occurrence" in Massachusetts that would confer jurisdiction under the Massachusetts long-arm statute.[10] *Bristol-Myers*, 582 U.S. at 262 (quotations and citation omitted). For BHL, the SAC's specific jurisdiction allegations—which are substantially the same as the FAC—have nothing to do with Massachusetts. SAC ¶ 35. The SAC does not (i) contain any factual allegations about how BHL solicited or did business with Massachusetts customers or market-makers, (ii) identify any such customers or market-makers, and (iii) include any facts that BHL targeted business in Massachusetts. As to Mr. Zhao, Plaintiffs ***do not even attempt*** to allege specific jurisdiction based on Massachusetts conduct. *Id*. ¶ 39. Nor does the SAC allege that any of Plaintiffs' claims ***arise out*** of BHL's or Mr. Zhao's purported contacts with Massachusetts.

***Second,*** as explained in BHL and Mr. Zhao's partial objections to the R&R, Plaintiffs cannot rely on Rule 4(k)(2) to confer specific jurisdiction over BHL and Mr. Zhao. ECF 73 at 5–

---

[10] While the SAC alleges that the court has specific jurisdiction over BAM under the Massachusetts long-arm statute, SAC ¶ 37, the SAC does not allege that the long-arm state confers jurisdiction over BHL or Mr. Zhao, nor could it.

10.[11] While the SAC parrots the rule's requirements without any supporting facts, SAC ¶¶ 36, 40, exercising jurisdiction over BHL and Mr. Zhao would violate Rule 4(k)(2)'s requirements, Constitutional due process, and the Court's R&R finding no relationship between Plaintiffs' claims and BHL's or Mr. Zhao's contacts with the U.S.

Rule 4(k)(2)(B) does not confer personal jurisdiction unless "exercising jurisdiction is consistent with the U.S. Constitution and laws."[12] Because Plaintiffs assert federal claims, in the context of Rule 4(k)(2), the Court considers whether the claims **_arise out_** of BHL's and Mr. Zhao's contacts with the U.S. as a whole. _Cf. AngioDynamics, Inc. v. Clarion Med. Techs._, 2019 WL 10787926, at *8–10 (D. Mass. Sept. 25, 2019) (specific personal jurisdiction under Rule 4(k)(2) because claims for RICO, conspiracy, and related state claims "ar[o]se directly" out of defendant allegedly shipping products into the U.S.).

Each contact between BHL or Mr. Zhao and the U.S. underpinning Plaintiffs' jurisdictional allegations is **_unrelated_** to Plaintiffs' claims here. The SAC focuses on BHL having U.S-based servers, personnel, "'VIP users'" "'market makers,'" and on BHL and Mr. Zhao having helped launch Binance.US. SAC ¶¶ 34–35, 39. But none of these alleged U.S. contacts support Plaintiffs' theory that, had BHL registered as a money transmitting business and maintained an effective AML program, Plaintiffs would not have been defrauded by foreign third parties who transferred Plaintiffs' crypto assets through Binance.com accounts that are not alleged to be located in the U.S. The same is true of the SAC's conclusory allegations that BHL and Mr. Zhao "participat[ed]" or "conspired" "in the laundering of the cryptocurrency assets that criminal syndicates stole from

---

[11] Plaintiffs raised Rule 4(k)(2) for the first time in their opposition to Defendants' FAC MTD. ECF 57 at 6–10; ECF 61 at 5. The FAC did not mention Rule 4(k).

[12] Rule 4(k)(2) provides: "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

Plaintiffs, many of them United States citizens or residents." *Id*. ¶¶ 35, 39. These allegations relate to contacts between unknown, foreign, third-party fraudsters and the U.S., ***not*** between BHL or Mr. Zhao and the U.S. *See Walden*, 571 U.S. at 284 (contacts "between the plaintiff (or third parties) and the forum State" are not relevant to the minimum contacts inquiry).

Indeed, the R&R recognized the fatal "factual gap in plaintiffs' causal progression" that applies equally here: Plaintiffs failed to assert "non-conclusory, non-speculative allegations in support of a plausible conclusion that the scammers' transactions in these pig butchering schemes would have been flagged as suspicious by Binance and their accounts would have been frozen and the suspicious transactions reported to FinCEN." R&R at 74. The R&R continues:

> The cause of plaintiffs' injury was a set of actions (pig butchering schemes) ***entirely distinct from the operation of Binance as an unlicensed, unregistered MTB (defrauding the United States), and even entirely distinct from putative money laundering***. That Binance and Zhao, allegedly with the assistance of BAM, failed to comply with United States laws and, therefore, Binance.com offered a more convenient "cash out" point ***did not mean that the scammers necessarily would target plaintiffs***, and plaintiffs' inability to recover the stolen cryptocurrency because it was converted to fiat currency may have resulted from other, independent factors.

*Id*. at 76 (emphasis added). The R&R is replete with similar explanations of why Plaintiffs' claims do not arise out of BHL's or Mr. Zhao's contacts with the U.S. *See, e.g.*, *id*. at 77 n.52, 78, 81–82; *see also* Argument § III.A below. At bottom, Plaintiffs' claims cannot arise out of BHL's and Mr. Zhao's U.S. contacts because Plaintiffs' theories of liability have nothing to do with the U.S. The only U.S. contacts related to Plaintiffs' claims are that ***Plaintiffs*** are American, which is entirely irrelevant to whether the Court may properly exercise specific jurisdiction over a defendant. *See Walden*, 571 U.S. at 284–85; *Bristol-Myers*, 582 U.S. at 262; *Asahi*, 480 U.S. at 112. Thus, applying Rule 4(k)(2) to find specific jurisdiction as to BHL and Mr. Zhao is inconsistent with Constitutional requirements of due process.

III.    **The SAC Should Be Dismissed for Failure to State a Claim.**

The entire SAC should be dismissed for failure to allege causation, a domestic injury, a RICO enterprise, a proper RICO predicate, and a RICO conspiracy.[13]

A.    **Plaintiffs Fail to Allege Causation.**

RICO creates a private right of action for "[a]ny person injured in his business or property ***by reason of*** a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (emphasis added). Under this standard, the predicate offense must be both the actual (but-for) cause and the proximate cause of the injury. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).

"The inquiry with respect to but-for causation asks whether the plaintiff would have suffered the injury absent the alleged misconduct." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 315 F.R.D. 116, 125 (D. Mass. 2016) (citation omitted), *aff'd*, 915 F.3d 1 (1st Cir. 2019); R&R at 69. But-for causation may not be established through "wholly speculative" assertions about a supposed causal relation between separate events. *See Scivally v. Graney*, 1993 WL 207758, at *3 n.3 (D. Mass. June 7, 1993), *aff'd*, 21 F.3d 420 (1st Cir. 1994). Proximate causation is a higher standard, which "requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp.*, 559 U.S. at 9 (quoting *Holmes v. Securities Inv. Protection Corp.*, 503 U.S. 258, 268 (1992)). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.* (quoting *Holmes*, 503 U.S. at 271, 274). A RICO plaintiff generally fails to plead proximate causation if her injury is more than one step removed from the alleged predicate act. *See id.* at 10 (for RICO, the law generally does not "go beyond the first step"); R&R at 70.

---

[13] Because Magistrate Judge Kelley recommended dismissing the claims against BHL and Mr. Zhao for failure to allege causation and domestic injury, the R&R did not reach other arguments in Defendants' FAC MTD, including that Plaintiffs failed to allege a RICO enterprise, a proper RICO predicate, and a conspiracy. R&R at 64–65.

The Court dismissed FAC Counts 1–4[14] because Plaintiffs failed to plead a but-for or proximate causal link between Defendants' former alleged predicate acts—(1) failure to maintain an adequate AML program, and (2) money laundering[15]—and Plaintiffs' injuries (theft by non-party criminal syndicates). R&R at 65-80. The R&R was clear that "[t]he cause of plaintiffs' injury was a set of actions (pig butchering schemes) *entirely distinct* from the operation of Binance as an unlicensed, unregistered MTB (defrauding the U.S.), and even *entirely distinct* from putative money laundering." R&R at 76 (emphases added); Argument § II.C above.

Plaintiffs try to cure this fatal deficiency with a third RICO predicate (aiding and abetting wire fraud). But these new allegations only highlight the causal defects the Court identified and confirm Plaintiffs' alleged injuries would have occurred regardless of Defendants alleged predicate acts. The Court should dismiss the SAC for lack of but-for and proximate causation.

### 1.    The SAC Fails to Adequately Allege But-For Causation.

Plaintiffs' claims rely on a series of speculative assumptions that fail to adequately allege that any of Defendants' alleged RICO predicates were the but-for cause of their injuries.

***Alleged Failure to Maintain an Effective AML Program***. Just like the FAC, the SAC's causation allegations require at least eight speculative steps between Defendants' alleged failure to maintain an adequate AML program and Plaintiffs' alleged injuries. *See* MTD at 15–19. The

---

[14] The Court assumed without deciding that Defendants' causation challenges did not apply to Count 6 (RICO conspiracy). In doing so, the Court noted "[i]f plaintiffs' theory of causation for either of the conspiracy counts were the same as its theory of causation for the substantive counts, then the conspiracy counts would fail, as well." R&R at 73 n.50. The SAC confirms Plaintiffs' causation theory for Count 6 is the same as for the substantive RICO counts (1–4). *See e.g.,* SAC ¶ 265 ("Binance and Zhao conspired with Enterprise #5 to violate 18 U.S.C. § 1962(c), because they agreed to facilitate Enterprise #5's wire frauds and money laundering by permitting Enterprise #5 unfettered use of the Binance.com exchange as a laundering facility and essential cash-out point for the otherwise traceable and seizable cryptocurrency assets that Enterprise #5 fraudulently stole from the Plaintiffs (and countless other victims who are not parties to this lawsuit)."). Thus, Count 6 fails to allege causation for the same reasons as Counts 1–4. *See Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 147 (2d Cir. 2018) (dismissing RICO conspiracy claim because plaintiff's failed causation theory was the same for the substantive RICO and conspiracy claims).

[15] The Court assumed without deciding that the FAC plausibly alleged money laundering, which Defendants disputed. R&R at 77 n.52. The SAC restyles this predicate as "aiding and abetting . . . money laundering." *E.g.*, SAC ¶ 278.

Court agreed as to the FAC, highlighting the glaring "absence of non-conclusory, non-speculative allegations in support of a plausible conclusion that the scammers' transactions in these pig butchering schemes would have been flagged as suspicious by Binance and their accounts would have been frozen and the suspicious transactions reported to FinCEN." R&R at 74. As the R&R explained, Plaintiffs alleged no "threshold or exemplary 'pattern of inflows' and 'cash-out activities'" that would have triggered an alert for a money transmitting business with an effective AML program. R&R at 35. Although one Plaintiff (Licht) alleged one fraudster's BHL accounts received over $40 million through 140 transactions from a syndicate's wallet, FAC ¶ 85, the Court found that Plaintiffs failed to allege any facts "regarding flagging and reporting thresholds, or examples of transactions flagged and reported," so "the allegation that even the Licht scheme involved 'tell-tale' signs [was] conclusory and speculative." R&R at 36. And that "factual gap" was even more pronounced for other Plaintiffs, who merely alleged a "substantial" or "'significant' portion" of their stolen asserts were laundered through the BHL exchange. *Id.* at 36, 74.

The SAC makes a meager attempt to repair the deficient but-for causation allegations. Specifically, for just three of 19 Plaintiffs (other than Licht), Plaintiffs now offer details regarding how scammers allegedly transferred funds into BHL accounts used to launder Plaintiffs' stolen cryptocurrency. SAC ¶¶ 69–70 (scammers transferred more than $6 million to their BHL account in a three-month period, depositing the money "within hours" of receiving it in their self-custodied wallets); *id.* ¶ 72 (scammers transferred "hundreds of thousands of dollars' worth of USDT to the scammers' Binance.com account almost immediately" after the funds landed in their self-custodied wallets); *id.* ¶ 74 (alleging merely that "[a]pproximately 30% of Shaylor's stolen USDT was deposited into the scammers' Binance.com account").

Plaintiffs' claims still fail, though, because they do not explain why any of those details permit a reasonable inference that the scammers' accounts would have been reported if BHL had implemented an effective AML program. In fact, the only purportedly suspicious detail, that the transfers were made shortly *after* funds appeared in the scammers' self-custodied wallets, would not even have been knowable to BHL. *Id*. ¶¶ 6, 42–44 (self-custodied wallets are "off-exchange"). Even so, Plaintiffs summarily claim that "[t]he activity in the scammers' Binance.com account had all the telltale signs of money laundering." *Id*. ¶ 69; *see also id.* ¶ 72 ("any competent KYC program would have red-flagged" these transfers). With no supporting facts, Plaintiffs' new allegations do not plausibly establish the accounts would have been flagged if BHL maintained an effective AML program. And Plaintiffs do not even try to cure their deficient but-for causation allegations for 16 of 20 Plaintiffs. *Id*. ¶ 66 (alleging only that "[t]he illustrative examples described below [for three plaintiffs] . . . are consistent with the facts for all the Plaintiffs").

Even if Plaintiffs could fill the factual gap that the R&R highlighted, several others remain unaddressed in the SAC. For example, Plaintiffs allege no facts plausibly establishing that BHL would have frozen any assets involved in the reported transactions, or that U.S. law enforcement would have investigated BHL's hypothetical reports of the third-party syndicate's activities and seized the stolen assets, permitting Plaintiffs to recover them. *See* FAC MTD at 17 (highlighting these gaps). Accordingly, Plaintiffs' speculative allegations fail to establish but-for causation for the predicate of failing to maintain an effective AML program. *See Singh v. Illusory Sys., Inc.*, 2024 WL 1386356, at *3 (D. Del. Mar. 29, 2024) (dismissing RICO claim predicated on alleged operation of unlicensed money transmitter business because plaintiffs did not explain how improved compliance program would have prevented non-party actions that harmed them).

*Alleged Aiding and Abetting Money Laundering*. The same is true for Plaintiffs' theory that Defendants aided and abetted the syndicates' money laundering. Although the Court did not previously address whether Plaintiffs adequately alleged this predicate as a but-for cause of their injuries, the SAC's new allegations conclusively demonstrate that they did not: for Plaintiff spotlighted above, the SAC now expressly allege that the scammers laundered significant portions of their stolen cryptocurrency at *other* exchanges. *See* SAC ¶ 74 (70% of Shaylor's stolen USDT laundered at other exchanges ); *id.* ¶ 67 (40% of Cai's stolen cryptocurrency laundered through BHL); *id.* ¶ 71 (84% of Gordon's stolen cryptocurrency laundered through BHL). [16] These allegations demonstrate that even if BHL had not purportedly aided and abetted the scammers' money laundering, the scammers easily could have laundered stolen crypto elsewhere. Accordingly, the contention that Defendants' alleged aiding and abetting of money laundering was a but-for cause of Plaintiffs' injuries is speculation, requiring dismissal. *See, e.g., Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002) ("[S]peculative 'but for' causation is insufficient to state a RICO violation."); R&R at 74.

*Alleged Aiding and Abetting Wire Fraud*. Plaintiffs' new theory that Defendants aided and abetted the alleged wire fraud of international criminal syndicates that Defendants are not alleged to have been aware of and that Plaintiffs cannot even identify fares no better. As set forth below, *infra* Argument § III.D, to plausibly allege this predicate, Plaintiffs would have to allege that Defendants took affirmative acts in furtherance of *each* syndicate's scams (to which Defendants were not privy) with the intent of facilitating those scams. *United States v. Fernandez-*

---

[16] All other Plaintiffs besides Licht merely allege that "a substantial portion of [their] stolen assets were laundered through the Binance.com exchange," leaving the Court to speculate as to what portion was allegedly laundered through BHL. *E.g.*, SAC ¶ 121; *see* R&R at 36; *see also* SAC ¶¶ 129, 136, 143, 151, 159, 167, 173, 180, 187, 193, 202, 212, 218, 234, 241, 250, 258. Licht concedes he does not know what portion of his stolen assets were allegedly laundered through BHL, SAC ¶ 113, and in other litigation, he has alleged that his assets were laundered through six different exchanges. *See Licht*, No. 23-cv-1018 at ECF 23 (Order Granting Preliminary Injunction at 7–9).

*Jorge*, 894 F.3d 36, 43 (1st Cir. 2018). And even if Plaintiffs had adequately alleged this predicate, they still have not alleged that Defendants' supposed aiding and abetting was a but-for cause of Plaintiffs' injuries. To do so, Plaintiffs would need to establish that they would not have suffered their injuries absent aiding and abetting. R&R at 69; *In re Celexa*, 315 F.R.D. at 125. Here too, Plaintiffs' allegations refute such an inference because Plaintiffs admittedly ***were*** injured absent Defendants' alleged aiding and abetting. *See* SAC ¶¶ 67, 71, 74.

### 2.    The SAC Fails to Adequately Allege Proximate Causation.

The SAC also does not adequately allege proximate causation for any RICO predicate. The First Circuit looks to "three functional factors with which to assess whether proximate cause exists under RICO": (1) "concerns about proof" because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"; (2) "concerns about administrability and the avoidance of multiple recoveries"; and (3) "the societal interest in deterring illegal conduct and whether that interest would be served in a particular case," considering that "directly injured victims can generally be counted on to vindicate the law . . . without any of the problems attendant upon suits by plaintiffs injured more remotely." *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 35–36 (1st Cir. 2021) (internal citations and quotations omitted); R&R at 70–71.

As the R&R recognized, courts reject RICO claims on proximate cause grounds where the alleged conduct causing the harm is one or more steps removed from the RICO predicate. R&R at 70. In *Anza v. Ideal Steel Supply Corp.*, for example, the plaintiff alleged that its competitor's failure to pay taxes allowed the competitor to undercut the plaintiff's prices, which caused the plaintiff to lose customers. 547 U.S. 451, 453–54 (2006). The Supreme Court found proximate cause lacking because the RICO predicate (tax evasion) was "entirely distinct" from the conduct causing the injury (lowering of prices). *Id.* at 458; *see also Sterling*, 990 F.3d at 36.

The case for proximate cause is even weaker when the alleged harm stems from distinct conduct of **third parties** not before the court. R&R at 77. In *Hemi Group*, for example, New York City sued an out-of-state cigarette retailer under RICO for failure to provide New York State with information about the retailer's in-state customers, which allegedly caused the City to lose tax revenues from those in-state customers. 559 U.S. at 4. The Supreme Court rejected the RICO claim for lack of proximate cause because the residents' failure to pay taxes to the City—not the retailer's failure to report information to the State—was the direct cause of the City's injury. *Id.* at 11. With reasoning that applies with equal force here, the Supreme Court held that failing to provide information to the government—even information that could aid in law enforcement—would not satisfy proximate causation because "the City's theory of liability rests not just on separate *actions*, but separate actions carried out by separate **parties**." *Id.* (original emphasis).

Relatedly, as in *Hemi Group* and *Anza*, courts frequently find proximate cause inadequately alleged where another entity, such as the government, is better positioned to enforce the law and hold appropriate parties accountable. *See, e.g., Hemi Grp.*, 559 U.S. at 12 (State of New York better positioned to sue, as direct victim of tax fraud); *Anza*, 547 U.S. at 458–61 (same); *Roe v. Healey*, 78 F.4th 11, 27 (1st Cir. 2023) ("[A]s the proximate victim of the alleged fraud, the United States would be the better party to sue were there fraud"); R&R at 75.

Here, the Court readily found proximate causation lacking in the FAC because "the directness concern and concerns about proof squarely counsel in favor of dismissal." R&R at 75. The Court observed that the United States was "better position[ed] to sue in relation to the operation of Binance as an unlicensed, unregistered MTB," and indeed, it had already taken action, securing "criminal convictions and sentences, including jail time for Zhao, accompanied by steep financial penalties, including fines and a forfeiture order in the billions for Binance," which "surely

serve[d] the societal interest in deterring illegal conduct." *Id*. Moreover, Plaintiffs' injury was anything but direct: the cause of Plaintiffs' injuries (pig butchering schemes) was separate conduct by separate parties—several steps removed from Defendants' alleged failure to maintain an effective AML program. *Id*. at 76 ("[T]he fourth-party scammers here only caused harm to the pig butchering scheme victims if they decided to engage in wire fraud. Binance and Zhao's obligation was to register with FinCEN, not the pig butchering scheme victims, and the victims' harm was directly caused by the scammers, not Binance and Zhao (or BAM).").

That was equally true for the alleged money laundering. In analyzing proximate causation for that alleged predicate, the R&R properly looked to the Ninth Circuit's closely analogous decision in *Oki Semiconductor Co*. There, an armed robbery victim sued a bank under RICO, alleging a bank employee's laundering of the robbery proceeds caused his harm. 298 F.3d at 771. The Ninth Circuit disagreed, holding that "[t]he direct and proximate cause of [plaintiff's] loss was not [the employee's] money laundering . . . ; it was theft." *Id*. at 774. Because the allegations established, "at most, that [the employee] laundered the proceeds ***after*** the Conspiracy stole the semiconductors and sold them," the money laundering lacked a direct relationship to the robbery. *Id.* This was true even though the employee knew about and supported the armed robbery. *Id. Oki* is directly on point, and the R&R properly rejected Plaintiffs' attempt to distinguish it. R&R at 77 n.52.

Plaintiffs' amendments attempting to rehabilitate their proximate causation theory are unavailing for each alleged RICO predicate:

***Alleged Failure to Maintain Effective AML Program***. In an attempt to establish a direct line between Defendants' alleged failure to maintain an effective AML program and Plaintiffs' injuries resulting from international scams, Plaintiffs seize on a single question posed by the

R&R—"Was the intermediary cryptocurrency exchange complying with United States law?"—as if the R&R's outcome hinged on the answer to that question. R&R at 78. In response to that passing remark, Plaintiffs add dozens of allegations to the SAC clarifying that the wallets that received Plaintiffs' stolen cryptocurrency were "self-custodied," rather than exchange-hosted, meaning there was no intermediary exchange. *E.g.*, SAC ¶¶ 6, 42–44, 56-57, 112. Those new allegations are inconsequential because the R&R expressly clarified that its comment about the intermediary exchange was ***not necessary*** to its finding on proximate cause. R&R at 75; (relying exclusively on first and third factors of First Circuit's test to find proximate cause lacking); *id*. at 78–79 & n.54 (discussing potential involvement of intermediary exchange in connection with second factor (risk of multiple recoveries), without making any finding on that factor).

*Alleged Aiding and Abetting Money Laundering*. In attempting to draft around the holding of *Oki*, Plaintiffs now allege that the laundering of Plaintiffs' stolen assets was a proximate cause of the theft because "the laundering is what caused the [cryptocurrency] to become unavailable to law enforcement." SAC ¶ 277; *see also id.* ¶ 63. These new allegations, too, fail to save Plaintiffs' claims. To start, they are not new at all—the FAC already alleged that money laundering was a critical component of the pig butchering schemes that rendered the stolen assets "unrecoverable." *E.g.*, FAC ¶ 291. And regardless, the R&R found *Oki* on point because the alleged "money laundering occurred after the theft," severing any direct relationship between the money laundering and Plaintiffs' injuries from that theft. R&R at 77 n.52; *see Oki*, 298 F.3d at 774. Nothing about Plaintiffs' new allegations changes that conclusion.

*Alleged Aiding and Abetting Wire Fraud.* As noted, Plaintiffs also add a new RICO predicate—aiding and abetting wire fraud—in a transparent attempt to bypass RICO's proximate cause standard by conflating Defendants' conduct with the distinct conduct of non-parties whom

Defendants have never met. This type of gamesmanship does not revive Plaintiffs' claims. *See, e.g., Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991) ("[I]t would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering"), *abrogated on other grounds by United States v. Velazquez-Fontanez*, 6 F.4th 205, 213 n.2 (1st Cir. 2021).

At bottom, "aiding and abetting wire fraud" is just a new name for the same conduct that Plaintiffs alleged in their FAC. For example, FAC ¶ 4 and SAC ¶ 4 contain materially identical factual allegations, but the SAC has a new label tacked on the end:

| **FAC ¶ 4**: "Binance and Zhao knowingly and willfully allowed the criminal syndicates to use the Binance.com exchange to launder their criminal proceeds and to convert those proceeds into untraceable, unrecoverable fiat currency . . . . " | **SAC ¶ 4**: "Binance and Zhao knowingly and willfully allowed the criminal syndicates to use the Binance.com exchange to . . . launder their illicitly obtained cryptocurrency and convert those otherwise traceable assets into untraceable, unrecoverable fiat currency—*therefore aiding and abetting the syndicates' wire frauds and money laundering activities*." (Emphasis added.) |
|---|---|

Allowing Plaintiffs to avoid dismissal through this sort of semantic gambit would render toothless the demanding proximate cause standard and lead to widespread abuse of the RICO statute. The SAC's factual allegations are substantially the same as the FAC's: labels aside, the Court should again find that Plaintiffs have not adequately alleged proximate causation.

### B.    Plaintiffs Fail to Plausibly Allege Domestic Injury

Plaintiffs' failure to plead domestic injury is an independent basis for dismissing the SAC in its entirety, just as the Court recognized in dismissing Count 6 of the FAC.[17] R&R at 81. The

---

[17] The Court previously dismissed Count 6 of the FAC for lack of a domestic injury, declining to reach the issue for Counts 1–5 of the FAC, which were dismissed on other grounds. *See* R&R at 80-82. But because 18 U.S.C. § 1964(c) "requires a civil RICO plaintiff to allege and prove a domestic injury"—which, for the reasons set forth herein,

SAC's only new domestic injury allegations—that Plaintiffs and their cryptocurrency wallets were in the U.S. at the time of the international racketeering activity—do not cure this defect. In *Yegiazaryan v. Smagin*, the Supreme Court rejected such "bright-line" pleading standards. 599 U.S. 533, 545 (2023); R&R at 71. Rather, the Court adopted a "context-specific inquiry that turns [] on the particular facts alleged in a complaint" to determine if the "circumstances sufficiently ground the injury in the United States." 599 U.S. 533, 543–45 (2023) (citation omitted); *see* R&R at 72. The *Yegiazaryan* court—"looking to the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity"—concluded that an injury arises domestically if the racketeering activity: (1) "largely occurred in" the U.S.; or (2) was "directed from *and* targeted at" the U.S.. *Id*. at 544, 549 (emphasis added). The SAC should be dismissed because it satisfies neither factor.

> ***First***, the predicate racketeering activity occurred outside the U.S. As explained in the R&R, "[t]he racketeering conduct that directly caused [Plaintiffs'] injuries was 'international wire communications' by one or more 'international' syndicates" ***occurring "abroad."*** R&R at 82 (emphasis added). Nothing in the SAC alters that conclusion. To the contrary, the SAC alleges that Plaintiffs "had fallen prey to pig butchering schemes committed by ***international crime syndicates***" and that their "cryptocurrency assets [were] stolen . . . via ***international*** wire communications." SAC ¶¶ 79, 39 (emphases added). Accordingly, the only plausible inference from the SAC is that the racketeering activity occurred overseas, not in the U.S., rendering Plaintiffs' injuries non-domestic. *Compare Yegiazaryan*, 599 U.S. at 549 (finding a domestic injury because plaintiff "was impaired by racketeering activity that largely occurred in" California) *with U.S. ex rel. Hawkins v.*

---

Plaintiffs fail to establish—all Counts of the SAC should be dismissed for failure to allege a domestic injury. *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 354 (2016).

*ManTech Int'l Corp.*, ---F.Supp.3d ---, 2024 WL 4332117, at *6 (D.D.C. Sept. 27, 2024) (finding no domestic injury because "unlike the situation in *Yegiazaryan*, the alleged conduct giving rise to the claim was undertaken almost exclusively abroad").

**Second**, the SAC fails to plead that the injury was both "directed from and targeted at" the U.S. *Yegiazaryan*, 599 U.S. at 549. Pleading a domestic injury requires satisfying both criteria. As noted above, the SAC's allegation that the scammers directed their fraud from abroad dooms Plaintiffs' domestic injury argument. *See id*. Despite this fatal defect, the SAC should be dismissed because it also does not allow the reasonable inference that the "'international' syndicates [] target[ed] United States-based victims." R&R at 82. Unlike the racketeering in *Yegiazaryan*, which impacted rights that "exist[ed] only" in California and were exclusively "targeted at California," the SAC's additional allegations, that Plaintiffs had American area codes or social profiles and that generally "[s]cammers prefer to target U.S.-based victims," fail to prove that the alleged pig butcherers here were solely, or even primarily, targeting Americans. *Compare Yegiazaryan*, 599 U.S. at 546, 549, *with* SAC ¶ 51–52. Targeting aside, Plaintiffs' failure to prove that the racketeering activity was directed from the U.S. necessitates dismissal. *See Hawkins*, 2024 WL 4332117 at *6 (no domestic injury, even though theft targeted U.S. citizens, because alleged racketeering was "carried out abroad"); R&R at 72 n.48 ("allegations of domestic injury [can] be insufficient" under *Yegiazaryan*'s context-specific test even if Plaintiffs "are United States-based").

The SAC's new allegations that Plaintiffs' and their cryptocurrency were in the U.S. are insufficient to plead a domestic injury. Not only does the SAC fail to plausibly plead that Plaintiffs' wallets were in the U.S.,[18] but *Yegiazaryan* rejected a "residency-based rule," and courts applying

---

[18] The allegation that "[c]ryptocurrency is a digital asset . . . exist[ing] only in electronic form" contradicts the bald assertion that the "location of the victim and . . . wallet is one and the same." SAC ¶¶ 42, 56. Nonetheless, U.S. area codes and social media profiles do not imply that the crypto was purchased in the U.S. *See id*. ¶ 44.

that guidance have determined that "location of the property at the time of racketeering" does *not* domesticate an otherwise foreign injury. *Yegiazaryan*, 599 U.S. at 545; *Percival Partners Ltd. v. Nduom*, 99 F.4th 696, 703 (4th Cir. 2024); *Dixit v. Smith*, 2023 WL 6150816, at *5 (W.D. Tenn. Aug. 11, 2023) ("Whether the property 'originated on US' soil . . . is irrelevant to determining whether an injury is [] domestic"). Fatally, the SAC does not allege where the Plaintiffs actually "felt the effects of the 'international wire communications' by the 'international' [crime] syndicates'"—facts that this Court recognized must be pled because the "*Yegiazaryan* Court rejected the [] bright-line test that economic injuries are necessarily felt where one lives." R&R at 82 (citing *Yegiazaryan,* 599 U.S. at 543-544, 548).

## C.    Plaintiffs Fail to Allege the Existence of a RICO Enterprise.

The SAC should also be dismissed because it fails to allege the existence of ***any*** criminal enterprise.[19] To plead an association-in-fact enterprise, a plaintiff must plausibly allege that: (1) the enterprise shares a purpose, (2) there is a relationship among those associated with the enterprise, and (3) there is longevity among the enterprise sufficient to permit the associates to pursue the enterprise's purposes. *See Boyle v. United States*, 556 U.S. 938, 944–46 (2009). In addition, "the unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it." *See Doyle v. Hasbro, Inc*., 103 F.3d 186, 190 (1st Cir. 1996).

None of Plaintiffs' five alleged criminal enterprises (*see* Background § II) satisfy these requirements. For each purported enterprise, Plaintiffs' allegations fail on one or both of two grounds. ***First***, Plaintiffs do not establish an association-in-fact because they fail to adequately plead a common purpose or longevity by alleging a "continuing unit that functions with a common

---

[19] *See* 18 U.S.C. § 1962(c) (it is "unlawful for any person employed by or *associated with **any enterprise*** . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." (emphasis added)).

purpose." *See Metropolitan Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc*., 266 F. Supp. 3d 502, 523 (D. Mass. 2017) (citation omitted). Instead, Plaintiffs allege, at most, "parallel, uncoordinated fraud," which "RICO does not penalize." *Id*. **Second**, Plaintiffs fail to adequately distinguish the person conducting the unlawful scheme from the enterprise itself, which dooms their claims under controlling First Circuit precedent. *See Doyle,* 103 F.3d at 190 (plaintiffs' "failure to identify any enterprise, distinct from a named [] defendant, is fatal under RICO").

**Enterprise 1 (allegedly comprised of BHL and BAM).** "Enterprise #1" fails because it does not allege an enterprise distinct from the "person" purportedly engaged in racketeering activity—instead alleging that BHL and BAM are both the enterprise and the racketeering participants. *See Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23–24 (1st Cir. 1988). In *Odishelidze*, the complaint characterized Aetna, its subsidiaries, its officers, and certain employees as both the enterprise and the "persons" who conducted the enterprise's affairs through a pattern of racketeering activity. *Id.* The court dismissed the § 1962(c) claim because the complaint failed to distinguish the "person" from the "enterprise." *Id.* at 23 (affirming dismissal of RICO claims because the "Aetna companies and their officers or employees . . . cannot be the entity that conducts its own affairs through a pattern of racketeering activity"). Here, "Enterprise #1," which alleges that "Binance, BAM, and Zhao participated in . . . a pattern of racketeering activity" to mislead the United States, fails to identify an enterprise in precisely the same way as the failed allegations in *Odishelidze*. SAC ¶ 267.

**Enterprise 2 (allegedly comprised of Mr. Zhao and BHL and BAM personnel with whom he conspired).** "Enterprise #2" fails for three reasons. **First**, the SAC does not distinguish between the enterprise and the named defendant directing the enterprise, pointing to Mr. Zhao as the single individual who conducted the enterprise, employed its officers and executives, and directed the

27

pattern of racketeering activity. *See Rhone v. Energy North, Inc.*, 790 F. Supp. 353, 358–59 (D. Mass. 1991) (dismissing RICO complaint because it identified individuals as the enterprise and then identified those same corporate officers as conducting the pattern of racketeering activity). Indeed, Plaintiffs allege Mr. Zhao maintained majority ownership of BHL, served as its CEO until November 2023, and "[u]ntil at least 2022 . . . owned approximately 90% of Binance's equity and BAM's equity and directed and controlled all of Binance's and BAM's corporate decisions, strategies, and conduct." SAC ¶¶ 1, 32. But "[a] single entity cannot be both an enterprise and person for purposes of RICO." *Boston Carriage, Inc. v. Boston Suburban Coach, Inc.*, 2022 WL 4626918, at *15 (D. Mass. Sept. 30, 2022)); *accord Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.*, 788 F. Supp. 54, 58 (D. Mass. 1991).

*Second*, Plaintiffs' allegations do not satisfy RICO's common purpose or longevity requirements. Instead of pleading a "continuing unit that functions with a common purpose," *Metropolitan Prop.*, 266 F. Supp. at 523 (citation omitted), Plaintiffs merely recite barebones allegations referencing Mr. Zhao's guilty plea—without identifying the executives in question or how they purportedly acted in a continuing unit or with a common purpose. This is precisely the kind of "parallel, uncoordinated fraud" that "RICO does not penalize." *See id.* (citation omitted); *see Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*, 2016 WL 6110565, at *4–7 (S.D.N.Y. Aug. 4, 2016) ("something more than parallel conduct" must be alleged to satisfy RICO's common purpose requirement); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183–84 (D. Mass. 2003) (defendants were not "part of the same RICO enterprise" simply because both allegedly took payments in exchange for prescriptions and were "aware of the involvement of other similarly-situated providers").

*Third*, Plaintiffs do not allege *any* facts demonstrating "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. "Enterprise #2" does not satisfy the longevity requirement for the additional reason that, based on Plaintiffs' own allegations, Brian Shroder did not become CEO of BAM until "August 2021 . . . *after* the Cambodian syndicate's fraud scheme against" lead Plaintiff Licht. SAC ¶ 102. Accordingly, this alleged association-in-fact lacks the requisite longevity as Plaintiffs do not allege it existed at the time of the pattern of racketeering activity (and because they allege the opposite).

*Enterprise 3 (allegedly comprised of BHL only).* "Enterprise #3" fails because it does not identify an enterprise distinct from a named defendant. Plaintiffs again allege that Mr. Zhao directed the conduct of "Enterprise #3." This Court has been clear that the person committing the illegal acts must be distinct from the enterprise. *See Deane v. Weyerhauser Mortg. Co.*, 967 F. Supp. 30, 34 (D. Mass. 1997) (the First Circuit looks to the complaint's allegations to determine whether the person and enterprise are distinct at the time of the RICO activity). Here, as in *Deane*, there is an "integrated operational relationship" between BHL and Mr. Zhao and therefore no RICO enterprise is established. *Id.* at 34–35 (the "three entities . . . are not distinct" because "[w]hen the enterprise benefits from the person's unlawful activities neither is distinct for Section 1962(c) purposes"). Plaintiffs allege that Mr. Zhao founded BHL, owned approximately 90% of its equity at all relevant times, and "directed and controlled all of Binance's and BAM's corporate decisions, strategies, and conduct." SAC ¶ 32. Therefore, just as for "Enterprise #2," no RICO enterprise is pled because one person does not constitute an enterprise.

*Enterprise 4 (allegedly comprised of BHL, Mr. Zhao, and every supposed "syndicate" that defrauded Americans).* "Enterprise #4" consists of implausible and conclusory allegations woefully insufficient to establish an enterprise. Plaintiffs have not pled an association-in-fact

between BHL, Mr. Zhao and the pig butchering syndicates comprising a "continuing unit with a common purpose." *In re Pharm. Indus.*, 263 F. Supp. 2d at 184. Plaintiffs do not, and cannot, allege that BHL or Mr. Zhao knew of these specific pig butchering schemes, let alone coordinated with the pig butcherers to carry out criminal activities. This pleading defect is fatal. *Id.* (dismissing the AWP Enterprise because the "complaint makes no allegation . . . [plausibly pleading] a common fraudulent purpose" amongst defendants). As in *Ezell v. Lexington Insurance Company*, Plaintiffs fail to allege the supposed participants in "Enterprise #4" "associated together for a common illegal purpose as opposed to merely conducting their business in parallel"—and therefore fail to plead a RICO enterprise. 335 F. Supp. 3d 91, 96–97 (D. Mass. 2018) (no association-in-fact enterprise where two insurance brokers engaged in alleged fraudulent practices in parallel and no common purpose established).

**Enterprise 5 (allegedly comprised of every supposed "syndicate" that defrauded Plaintiffs).** "Enterprise #5" fails similarly to establish an association-in-fact enterprise because no pled facts indicate a "continuing unit that functions with a common purpose." *Metropolitan Prop. & Cas. Ins. Co.*, 266 F. Supp. 3d. at 523. Instead, Plaintiffs here assert a series of criminal acts by distinct criminal syndicates carrying out pig butchering schemes, with each organization consisting of unknown and unidentified individuals with no alleged connections to each other. A random collection of individuals who happen to be engaged in the same conduct does not constitute a RICO enterprise. *See In re Pharm. Indus.*, 263 F. Supp. 2d at 184 (dismissing portions of the complaint because "plaintiffs have not alleged an association in fact . . . that forms a continuing unit with a common purpose"); SAC ¶ 265 ("[I]t is not presently known whether the Plaintiffs were victimized by a single common syndicate or multiple syndicates."). The Supreme Court has explicitly cautioned against confusing "the common purpose of a single enterprise with the several,

though similar, purposes of numerous separate enterprises of like character." *In re Pharm. Indus.*, 263 F. Supp. 2d at 183 (*citing Kotteakos v. United States,* 328 U.S. 750, 769 (1946)).

### D.    Plaintiffs Fail to Allege a Proper RICO Predicate.

The SAC fails to properly allege a RICO predicate underlying Count 1 (money laundering) or Counts 2–4 (aiding and abetting wire fraud and money laundering), requiring dismissal.

#### 1.    The SAC Fails to Allege Money Laundering.

The alleged RICO predicates for Enterprise #1 are based on Plaintiffs' assertion that because BHL operated an unlicensed money transmitting business in violation of § 1960(a), every transaction on the "Binance.com exchange" automatically constitutes money laundering under § 1956(a)(1)(A)(i), which is a RICO predicate. *See* SAC ¶ 267; *see also id*. ¶¶ 35, 88, 104.

This strained attempt to identify two RICO predicates fails for several reasons. ***First***, just because § 1961(1) defines "racketeering activity" to include violations of §§ 1956 (money laundering) and 1960 (unlicensed money transmitting), that does not mean the commission of unlicensed money transmitting necessarily results in the commission of other § 1961 offenses. Similarly, § 1956's definition of a "specified unlawful activity" ("SUA") includes offenses listed in § 1961, but that does not mean that a § 1961 offense automatically implicates a § 1956 offense.

***Second***, Plaintiffs must allege that Defendants engaged in racketeering activity by committing an "indictable" predicate act and must allege facts supporting all elements of the predicate offense. 18 U.S.C. § 1961(1)(B); *Natale v. Espy Corp.*, 2 F. Supp. 3d 93, 100 (D. Mass. 2014) (dismissing RICO claim because plaintiff "fails adequately to plead . . . predicate offenses for RICO purposes"). Plaintiffs' attempt to include money laundering as a RICO predicate is based solely on the money laundering statute's (18 U.S.C. § 1956(c)(7)(A)) cross-reference to 18 U.S.C. § 1961(1). Plaintiffs have not attempted to allege facts supporting each element of money laundering, *i.e.*, a defendant (i) conducted financial transactions involving the "proceeds" of a SUA

(*i.e.*, unlicensed money transmitting) while (ii) knowing the "proceeds" were "of some form of unlawful activity" and (iii) either (a) knowing the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the SUA proceeds or (b) with the intent to promote the carrying on of the SUA. *See* 18 U.S.C. § 1956(a)(1). Plaintiffs have not set forth facts establishing each element, so they have not plausibly alleged money laundering.

**Finally**, contrary to Plaintiff's improper reading, violations of the unlicensed money transmitting and money laundering statutes do not—and cannot—merge because each offense requires proof of a fact which the other does not. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."); *United States v. Liggins*, 2023 WL 7693958, at *3 (D. Mass. Nov. 15, 2023) (comparing differing elements of money transmitting and money laundering statutes). Plaintiffs' position would improperly conflate the two statutes and render every money transmitting violation a money laundering violation based on the same financial transactions.

### 2.    The SAC Fails to Allege Aiding and Abetting.

In the SAC, Plaintiffs amended Enterprises #2–#4's purported racketeering activity to allege that Defendants aided and abetted unspecified syndicates in wire fraud and money laundering schemes perpetrated against unspecified victims. These theories fail for two reasons.

**First**, consistent with *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), this Court should dismiss Plaintiffs' aiding and abetting claims (Counts 2–4) because § 1962(c) does not permit civil RICO claims based on the aiding and abetting of underlying predicate racketeering acts. In *Central Bank*, the Supreme Court held that private civil liability under § 10(b) of the Securities Exchange Act of 1934 did not extend to those

who aided and abetted manipulative or deceptive acts in connection with the purchase or sale of securities because the statutory text did not expressly permit such claims. 511 U.S. at 167, 185. The Court noted that Congress "has taken a statute-by-statute approach to civil aiding and abetting liability" and expressly provided for such liability in various other statutes. *Id*. at 182–84. The Court—which did not identify the RICO statute as one that establishes civil aiding and abetting liability—reasoned that "[i]f . . . Congress [had] intended to impose aiding and abetting liability . . . it would have used the words 'aid' and 'abet' in the statutory text. But it did not." *Id*. at 177.

Multiple courts have relied on *Central Bank* to conclude that a § 1962(c) claim cannot be based on aiding and abetting predicate acts.[20] Indeed, § 1962(c) does not reference aiding and abetting as a prohibited form of racketeering activity. And the definition of "racketeering activity" in § 1961(1) does not provide that aiding and abetting a predicate act qualifies as an independent predicate act itself. The definition also does not include a cross-reference to 18 U.S.C. § 2, which imposes criminal liability for aiding and abetting other offenses. Absent clear Congressional intent to include aiding and abetting as a RICO predicate, such liability may not be read into to the statute.

The First Circuit has not substantively addressed *Central Bank's* impact on RICO.[21] Nevertheless, the First Circuit's treatment of *Central Bank* in other contexts supports that (i) laws

---

[20] *See, e.g.*, *Pennsylvania Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 844 (3d Cir. 2000) (rejecting plaintiff's claim that defendant "aided and abetted RICO predicate acts of mail and wire fraud" and noting that "[*Central Bank*] makes it abundantly clear that, in the absence of statutory authorization, there is no presumption in favor of recognizing a civil aiding and abetting claim."); *Salas v. Int'l Union of Operating Eng'rs*, 2015 U.S. Dist. LEXIS 20077, at \*19–21 (C.D. Cal. 2015) ("An exception allowing civil RICO claims to be premised upon the aiding and abetting of underlying predicate acts would swallow [*Central Bank's*] rule foreclosing [] civil aiding and abetting liability."); *Young v. Wells Fargo & Co.*, 671 F.2d 1006, 1028-29 (S.D. Iowa 2009) ("[T]he majority of recent case law . . . holds that RICO does not recognize civil liability for persons who merely aid and abet the underlying predicate offenses."); *Ross v. Patrusky, Mintz & Semel*, 1997 U.S. Dist. LEXIS 5726, at \*32-38 (S.D.N.Y. 1997) ("[n]owhere in the text of RICO is there any indication of a congressional intent to impose aiding and abetting liability for civil RICO violations").

[21] Although the First Circuit, in *Aetna Casualty Sur. Co. v. P & B Autobody*, cited a criminal case that relied on case law predating *Central Bank* for the proposition that civil RICO claims could lie where a defendant was found to have aided and abetted the commission of at least two predicate racketeering acts, the Court did not address *Central Bank*. 43 F.3d 1546, 1560–62 (1st Cir. 1994). And in *Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, the First Circuit "reserve[d] to another day the issue of whether *Central Bank* necessarily implies that aiding and abetting securities

should be interpreted in conjunction with their explicit statutory text; and (ii) the language of § 1962(c) forecloses claims of aiding and abetting predicate acts. *See, e.g.*, *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 24 (1st Cir. 2021) (M.G.L. c. 93A did not contain an aiding and abetting cause of action, and such an action likely did not exist); *Asociación Hosp. Del Maestro, Inc. v. Becerra*, 10. F.4th 11, 17–18 (1st Cir. 2021) (federal agency secretary "was powerless to substitute his [own] judgment or language" in place of the language that Congress used in a statute); *Dinco v. Dylex Ltd.*, 111 F.3d 964, 968 (1st Cir. 1997) (rejecting argument that "vicarious liability" was not a permissible theory under state statute that explicitly stated that "third-party liability [could] be based on 'control,' 'aiding,' partnership, and other particular grounds").

***Second***, even if this Court were to conclude that aiding and abetting is a valid RICO predicate, the SAC would still fail to state a claim. Plaintiffs must allege facts showing that: (i) the principal committed the underlying substantive act; (ii) the defendant shared the principal's specific intent; and (iii) the defendant associated himself with the principal's venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed. *See United States v. Loder*, 23 F.3d 586, 590-91 (1st Cir. 1994) (describing elements of aiding and abetting); *Schultz*, 94 F.3d at 731 (record did not support aiding and abetting claims primarily because there was insufficient evidence defendant "'consciously shared' in the principal wrongdoer's [] specific intent to defraud the plaintiffs"). Here, the SAC merely alleges that Defendants knew some unspecified group of bad actors used the Binance.com exchange to perpetrate unspecified fraudulent activity against unspecified U.S.-based victims. These vague and

---

fraud cannot be a 'racketeering activity' within the meaning of § 1961(1)." *See* 94 F.3d 721, 731 (1st Cir. 1996). Whether aiding and abetting an offense in § 1961(1) constitutes racketeering activity remains unsettled within the First Circuit. *See Trustees of Boston Univ. v. ASM Communs. Inc.,* 33 F. Supp. 2d 66, 72 (D. Mass. 1998) (opining that aiding and abetting mail or wire fraud constitutes a predicate act but observing that *Schultz* declined to decide whether aiding and abetting securities fraud can be a RICO predicate after *Central Bank*).

conclusory allegations—which do not even touch upon the second or third prongs of the test—are insufficient to support aiding and abetting as a RICO predicate.

### E.    Count 6 Fails to Allege a Conspiracy.

To state a RICO conspiracy claim, Plaintiffs must allege at a minimum that Defendants agreed with others to commit a substantive RICO violation. 18 U.S.C. § 1962(d); *Douglas v. Lalumiere*, 2022 WL 860250, at *3 (D. Me. Mar. 23, 2022) ("[T]he [plaintiff] must show that the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense.") (internal quotations omitted) (quoting *Velazquez-Fontanez*, 6 F.4th at 212); *see also Douglas v. Hershon*, 63 F.4th 49, 56 (1st Cir. 2023) (for RICO conspiracy, "the complaint must plausibly allege … that [defendants] knowingly joined the purported RICO conspiracy."). Count 6 must be dismissed because Plaintiffs do not plausibly allege an agreement.

Plaintiffs allege that "[BHL] and Zhao conspired with Enterprise #5 and its pattern of racketeering activity—*i.e.*, conspired with Enterprise #5." SAC ¶ 297. But the substantive allegations concerning Enterprise #5 do not even imply that BHL or Mr. Zhao entered any agreement with a criminal syndicate to steal crypto currency that would eventually be transferred to a Binance.com account and converted to legal tender. Instead, the SAC contains a single, conclusory and circular claim that "[BHL] and Zhao conspired with Enterprise #5 . . . because they agreed to facilitate Enterprise #5's wire frauds and money laundering . . . ." *Id*. ¶ 265. This is insufficient under the law. *See Jakuttis v. Town of Dracut, Mass.*, 656 F. Supp. 3d 302, 349 (D. Mass. 2023) (dismissing RICO conspiracy claim where plaintiff failed to allege facts giving rise to inference that defendants "all agreed to work together" or "all agreed to a scheme").

### CONCLUSION

For the reasons set forth above, the SAC should be dismissed in its entirety with prejudice.

Dated: March 28, 2025

Respectfully submitted,

/s/ Joseph P. Davis III
Joseph P. Davis III (BBO # 551111)
Linda M. Ricci (BBO # 600284)
Mian R. Wang (BBO # 683656)
Alison T. Holdway (BBO # 690569)
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, MA 02110
Tel.:   (617) 310-6000
davisjo@gtlaw.com
linda.ricci@gtlaw.com
wangm@gtlaw.com
alison.holdway@gtlaw.com

- and -

David I. Miller (*pro hac vice*)
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Tel.:   (212) 801-9200
david.miller@gtlaw.com

*Counsel for Defendant Binance Holdings Limited*

/s/ Avi Perry
Avi Perry (*pro hac vice*)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC 2005
Tel.:   (202) 538-8330
aviperry@quinnemanuel.com

- and -

Isaac Saidel-Goley (BBO # 699659)
Zi Chun Wang (BBO # 709803)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02118
Tel.:   (617) 712-7100

isaacsaidelgoley@quinnemanuel.com
michellewang@quinnemanuel.com

- and -

Peter Fountain (*pro hac vice*)
Ted Ovrom (*pro hac vice*)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10010
Tel.:    (212) 849-7000
peterfountain@quinnemanuel.com
tedovrom@quinnemanuel.com

*Counsel for Defendant Changpeng Zhao*

*/s/ George Mastoris*
Seth C. Farber (BBO # 554652)
George Mastoris (*pro hac vice*)
Thania Charmani (*pro hac vice*)
Gabriela Beata Wolk (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel.:    (212) 294-6700
sfarber@winston.com
gmastoris@winston.com
acharmani@winston.com
gwolk@winston.com

- and -

Daniel T. Stabile (*pro hac vice*)
WINSTON & STRAWN LLP
200 S. Biscayne Boulevard
Miami, FL 33131
Tel.:    (305) 910-0500
dstabile@winston.com

*Counsel for Defendant BAM Trading
Services, Inc.*