# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEONARD LICHT, ZHENGJUN CAI, HENRY CHEN, DANIEL CHANG, DOMINIC CHOW, CHENGGUO DONG, IHAB W. FRANCIS, JOHN GORDON, DALTON GREEN, MICHAEL GRILLI, IRAKLIS KARABASSIS, NADER LOBANDI, JAMES MOSKWA, ANH NGUYEN, BRIAN ROTHAUS, GORDON SHAYLOR, RICHARD SLAVANT, NATHANIAL THRAILKILL, JACK YAO, and JUN ZHAI, | No. 1:24-cv-10447-NMG |
| Plaintiffs, | |
| v. | |
| BINANCE HOLDINGS LIMITED, d/b/a BINANCE.COM, BAM TRADING SERVICES, INC., d/b/a BINANCE.US, and CHANGPENG ZHAO, | |
| Defendants. | |

## REPLY IN SUPPORT OF
## DEFENDANTS' JOINT MOTION TO DISMISS

## **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................2

I.  Plaintiffs Concede the Dismissal of Count 1 and All Claims Against BAM (Counts 1 and 5)..............................................................................................2

II. Plaintiffs Have Not Plausibly Alleged Personal Jurisdiction Over BHL or Mr. Zhao. ..........................................................................................................2

III. The SAC Should Be Dismissed for Failure to State a Claim. ..........................6

    A.  Plaintiffs Fail to Plausibly Allege Causation................................................6

        1.  Plaintiffs Still Fail to Plausibly Allege But-For Causation.............7

        2.  Plaintiffs Still Fail to Plausibly Allege Proximate Causation. ....................................................................................9

    B.  Plaintiffs Fail to Plausibly Allege Domestic Injury. ..................................12

    C.  Plaintiffs Fail to Plausibly Allege the Existence of a RICO Enterprise. ..................................................................................................14

    D.  Plaintiffs Fail to Plausibly Allege a Proper RICO Predicate.....................15

        1.  The SAC Fails to Allege Money Laundering. ...............................15

        2.  The SAC Fails to Allege Aiding and Abetting. .............................16

    E.  Count 6 Fails to Allege a RICO Conspiracy. .............................................19

IV. The SAC Should Be Dismissed With Prejudice. ...........................................20

CONCLUSION............................................................................................................20

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Abernathy v. Carlyle Grp., Inc.*,
    2024 WL 5331993 (D.D.C. Sept. 27, 2024) .............................................................................. 13

*Aetna Casualty Sur. Co. v. P & B Autobody*,
    43 F.3d 1546 (1st Cir. 1994)..................................................................................................16, 17

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ........................................................................................................................ 12

*Aquino v. Mobis Alabama, LLC*,
    739 F. Supp. 3d 1152 (N.D. Ga. 2024) ...................................................................................... 13

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
    754 F.2d 57 (2d Cir. 1985)............................................................................................................. 9

*Boit v. Gar-Tec Prods., Inc.*,
    967 F.2d 671 (1st Cir. 1992)......................................................................................................... 4

*Boyle v. United States*,
    556 U.S. 938 (2009) ....................................................................................................................... 15

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
    582 U.S. 255 (2017) ......................................................................................................................... 5

*Busic v. United States*,
    446 U.S. 398 (1980) ......................................................................................................................... 8

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ...................................................................................................... 16, 17, 18

*Commerce Oil Refining Corp. v. Miner*,
    303 F.2d 125 (1st Cir. 1962)......................................................................................................... 3

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
    924 F. Supp. 449 (S.D.N.Y. 1996) ............................................................................................. 8

*Douglas v. Lalumiere*,
    2021 WL 4470399 (D. Me. Sep. 29, 2021) ............................................................................. 20

*Doyle v. Hasbro, Inc.*,
    103 F.3d 186 (1st Cir. 1996), and (2)....................................................................................... 15

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
    902 F.3d 132 (2d Cir. 2018) ...................................................................................................... 11

*GAF Corp. v. Circle Floor Co.*,
329 F. Supp. 823 (S.D.N.Y. 1971) .................................................................3

*Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*,
76 F.4th 1266 (9th Cir. 2023) .....................................................................13

*Guy v. Lexington-Fayette Urban Cty. Gov't*,
488 F. App'x 9 (6th Cir. 2012) ....................................................................3

*Harlow v. Children's Hosp.*,
432 F.3d 50 (1st Cir. 2005) ..........................................................................3

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) ..........................................................................................7

*Higgins v. New Balance Athletic Shoe, Inc.*,
194 F.3d 252 (1st Cir. 1999) .......................................................................5

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*,
46 F.3d 258 (3d Cir. 1995) ....................................................................9, 17

*Jakuttis v. Town of Dracut, Mass.*,
656 F. Supp. 3d 302 (D. Mass. 2023) .......................................................19

*Lang's Bowlarama, Inc. v. Amf, Inc.*,
1974 WL 902 (D.R.I. May 31, 1974) ..........................................................3

*Lee v. Grondolsky*,
2012 WL 1109268 (D. Mass. Mar. 30, 2012) ...........................................13

*Linde v. Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018) ........................................................................8

*Marrero-Rolon v. Autoridad*,
2015 U.S. Dist. LEXIS 134211 (D.P.R. Sept. 29, 2015) ..........................17

*Med. Marijuana, Inc. v. Horn*,
145 S. Ct. 931 (2025) ............................................................................13, 14

*Miranda v. Ponce Fed. Bank*,
948 F.2d 41 (1st Cir. 1991) ........................................................................11

*Neelon v. Krueger*,
2015 WL 4576825 (D. Mass. July 30, 2015) .............................................4

*Negron-Almeda v. Santiago*,
579 F.3d 45 (1st Cir. 2009) ..........................................................................4

*Norceide v. Cambridge Health Alliance*,
    2014 WL 775453 (D. Mass. Feb. 24, 2014) ....................................................... 4

*O'Brien v. Lowell Gen. Hosp.*,
    749 F. Supp. 3d 209 (D. Mass. 2024) .............................................................. 4

*Pa. Ass'n of Edwards Heirs v. Rightenour*,
    235 F.3d 839 (3d Cir. 2000) .......................................................................... 17

*Parker v. Hurley*,
    514 F.3d 87 (1st Cir. 2008) ........................................................................... 13

*Percival Partners Ltd. v. Nduom*,
    99 F.4th 696 (4th Cir. 2024) ......................................................................... 13

*Raanan v. Binance Holdings Ltd.*,
    2025 U.S. Dist. LEXIS 33874 (S.D.N.Y. Feb. 25, 2025) ............................. 19

*Raanan v. Binance Holdings Ltd.*,
    No. 1:24-cv-00697-JGK-BCM (S.D.N.Y.) ..................................................... 19

*Rolo v. City Investing Co. Liquidating Trust*,
    155 F.3d 644 (3d Cir. 1998) .......................................................................... 17

*Rosemond v. United States*,
    572 U.S. 65 (2014) .......................................................................................... 8

*Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*,
    94 F.3d 721 (1st Cir. 1996) ........................................................................... 18

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*,
    990 F.3d 31 (1st Cir. 2021) ....................................................................... 7, 11

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 118 (2d Cir. 2013) ....................................................................... 8, 9

*Trs. of Boston Univ. v. ASM Communs., Inc.*,
    33 F. Supp. 2d 66 (D. Mass. 1998) ................................................................ 9

*Twitter, Inc. v. Tamneh*,
    598 U.S. 471 (2023) ...................................................................................... 18

*United States v. Elbaz*,
    52 F.4th 593 (4th Cir. 2022) ......................................................................... 14

*United States v. Loder*,
    23 F.3d 586 (1st Cir. 1994) ........................................................................... 18

*United States v. United Smelting Refining & Mining Co.*,
   339 U.S. 186 (1950) .................................................................................................. 3

*United States v. Vigneau*,
   337 F.3d 62 (1st Cir. 2003) ...................................................................................... 4

*Yegiazaryan v. Smagin*,
   599 U.S. 533 (2023) ..................................................................................... 12, 13, 14

## **Statutes / Rules**

18 U.S.C. § 1956(a)(1)(A)(i) ........................................................................................ 16

18 U.S.C. § 1956(c)(7)(A) ............................................................................................ 16

18 U.S.C. § 1960(a) ...................................................................................................... 15

18 U.S.C. § 1961(1) ................................................................................................. 16, 18

18 U.S.C. § 1961(1)(B) ................................................................................................ 15

18 U.S.C. § 1962(c) ................................................................................................. 15, 18

18 U.S.C. § 1964(c) ....................................................................................................... 8

18 U.S.C. § 2 ............................................................................................................ 8, 18

18 U.S.C. § 2333(d) ...................................................................................................... 19

18 U.S.C. § 2333(d)(2) ................................................................................................... 8

## **Other Authorities**

Rule 4(k)(2) ............................................................................................................ 3, 4, 5

Plaintiffs' Second Amended Complaint suffers from the same fatal deficiencies that led this Court to dismiss their First Amended Complaint. Despite attempting to repackage their claims through creative labeling, Plaintiffs cannot overcome several fundamental problems: they cannot establish personal jurisdiction, they cannot demonstrate causation, they cannot show domestic injury, and they cannot otherwise plead the elements of a RICO claim.

***First***, this Court lacks personal jurisdiction over all Defendants. Plaintiffs concede that the Court lacks personal jurisdiction as to BAM, requiring dismissal of Counts 1 and 5. And Plaintiffs have not established specific or general jurisdiction as to BHL or Mr. Zhao. Plaintiffs' reliance on the law-of-the-case doctrine to establish jurisdiction over BHL and Mr. Zhao fails because that doctrine applies only to final judgments, not to preliminary determinations made using the *prima facie* motion to dismiss standard. More fundamentally, the SAC[1] alleges no suit-related contacts with Massachusetts or the United States and contains only conclusory allegations regarding contacts with the United States generally.

***Second***, Plaintiffs do not plausibly allege causation for any count. Abandoning their previous arguments, Plaintiffs now assert they need only show a causal link between their injuries and the actions of non-party criminal syndicates—not Defendants' alleged conduct. This end-run around RICO's "by reason of" requirement fails as a matter of law. Simply relabeling the same factual allegations as "aiding and abetting" cannot transform an inadequate causation theory into a viable claim.

***Third***, Plaintiffs still fail to plead a domestic injury. Plaintiffs' allegation that the non-party scammers knew a handful of their victims were American does not establish that the scammers targeted U.S. victims. Similarly, Plaintiffs' conclusory allegations regarding the location of their

---

[1] Unless otherwise noted, this Reply uses the same abbreviations as are used in Defendants' MTD.

cryptocurrency do not establish a domestic injury. In any event, the SAC makes clear that any alleged injury largely manifested abroad because the alleged racketeering activity—wire fraud orchestrated by international syndicates through international wires—occurred and was directed overseas.

*Fourth*, Plaintiffs do not plausibly allege a RICO enterprise. Plaintiffs mischaracterize this Court's prior order in arguing that the Court's failure to reach Defendants' enterprise arguments was a tacit rejection of those arguments. As was true of the FAC, each alleged enterprise in the SAC lacks essential elements required under binding precedent.

*Finally*, the SAC should be dismissed because Plaintiffs do not plausibly allege money laundering as a RICO predicate, the elements of aiding and abetting (which, under Supreme Court precedent cannot form the basis of a civil RICO action), or the existence of a RICO conspiracy.

Because Plaintiffs have already twice amended their original complaint, and the FAC was dismissed on the merits, the SAC should be dismissed in its entirety with prejudice.

## ARGUMENT

### I.    Plaintiffs Concede the Dismissal of Count 1 and All Claims Against BAM (Counts 1 and 5).

Plaintiffs concede that Count 1 should be dismissed as to all Defendants, and that all claims against BAM (Counts 1 and 5) should be dismissed. Opp. 1 n.2, 8–9. Accordingly, Defendants' MTD as to Counts 1 and 5 should be granted as unopposed.

### II.    Plaintiffs Have Not Plausibly Alleged Personal Jurisdiction Over BHL or Mr. Zhao.

Instead of responding to Defendants' MTD showing that Plaintiffs have not plausibly alleged—nor can they—that this Court has specific or general personal jurisdiction over BHL or Mr. Zhao, MTD 8–13, Plaintiffs argue that the law-of-the-case doctrine bars BHL's and Mr. Zhao's Rule 12(b)(2) challenge because the R&R found BHL and Mr. Zhao were subject to

personal jurisdiction under Rule 4(k)(2). This is a misapplication of the law-of-the-case doctrine. The Supreme Court has long held that "a final judgment [is required] to sustain the application of the rule of the law of the case." *United States v. United Smelting Refining & Mining Co.*, 339 U.S. 186, 199 (1950); *see also Lang's Bowlarama, Inc. v. Amf, Inc.*, 1974 WL 902, at *4 (D.R.I. May 31, 1974) ("The doctrine of law of the case[,] which merely expresses the practice of courts . . . not a limit to their power[,] is not applicable in the absence of a final order." (cleaned up)); *GAF Corp. v. Circle Floor Co.*, 329 F. Supp. 823, 826 (S.D.N.Y. 1971) (same). Accordingly, "[i]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case." *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005) (affirming district court's dismissal of case for lack of personal jurisdiction after removal to federal court following state court's ruling that defendant was subject to personal jurisdiction) (quotation marks and citation omitted); *see also Commerce Oil Refining Corp. v. Miner*, 303 F.2d 125, 128 (1st Cir. 1962) ("A ruling denying a motion to dismiss is not the law of the case, and is not final even in the district court."); *accord Guy v. Lexington-Fayette Urban Cty. Gov't*, 488 F. App'x 9, 17 (6th Cir. 2012) ("An interlocutory order can be changed before the district court reaches a final judgment; therefore, a court is not estopped from acting contrary to its own interlocutory order, and an interlocutory order cannot create the law of a case"). Plaintiffs attempt to avoid the clear requirements of the law-of-the-case doctrine by claiming that the R&R is not an interlocutory order because the Court granted Defendants' FAC MTD. Opp. 1 n.1. But Plaintiffs fail to recognize that the R&R **denied** BHL and Mr. Zhao's Rule 12(b)(2) motion on personal jurisdiction grounds. R&R 64. As such, the decision is "open to trial court reconsideration." *Harlow*, 432 F.3d at 55.

Moreover, Judge Kelley found personal jurisdiction using the *prima facie* method, R&R

3–4, and denial of a Rule 12(b)(2) motion under the *prima facie* method does not implicate the law-of-the-case doctrine because it "is 'an implicit deferral until trial of the final ruling on [personal] jurisdiction.'" *Neelon v. Krueger*, 2015 WL 4576825, at *10 (D. Mass. July 30, 2015) (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 678 (1st Cir. 1992) (*prima facie* method "avoids potentially troubling issues of 'issue preclusion' or 'law of the case' (at least when the court denies the motion) because a determination by such an intermediate standard . . . does not purport to be a finding by the same standard on the same issue as will be decided at trial")). The cases cited by Plaintiffs do not hold otherwise, nor do they arise in the same procedural posture as this case.[2] As a result, BHL and Mr. Zhao properly moved to dismiss the SAC for lack of personal jurisdiction, and the Court can (and should) dismiss the SAC on that ground.

Even if the law of case doctrine were implicated—it is not—this case falls into the exception for erroneous and prejudicial determinations. *See Negron-Almeda v. Santiago*, 579 F.3d 45, 51–52 (1st Cir. 2009) (quotation marks and citation omitted) (affirming district court's decision to "revisit and revise" its prior ruling, which was "obviously wrong" and "highly prejudicial"). As set forth in both Defendants' MTD and Partial Objections to the R&R (ECF 73) ("R&R Obj."), Defendants respectfully submit that the R&R's conclusion that Rule 4(k)(2) confers specific jurisdiction was in error and should be corrected consistent with Rule 4(k)(2)'s requirements, Constitutional due process, and the R&R's finding that there is no relationship between Plaintiffs'

---

[2] Plaintiffs cite *United States v. Vigneau*, 337 F.3d 62, 67–68 (1st Cir. 2003) (law-of-the-case doctrine precluded re-litigation of arguments the First Circuit previously rejected); *O'Brien v. Lowell Gen. Hosp.*, 749 F. Supp. 3d 209, 213–14 (D. Mass. 2024) (district court declined to revisit its prior rulings granting a motion to dismiss under Rules 12(b)(1) and 12(b)(6)); and *Norceide v. Cambridge Health Alliance*, 2014 WL 775453, at *4 (D. Mass. Feb. 24, 2014) (denying defendant's summary judgment motion that requested reconsideration of the court's prior ruling about the legal standards to be applied to plaintiff's wage claims). Opp. 1, 8. None of these cases involved the denial of a Rule 12(b)(2) motion.

claims and BHL's or Mr. Zhao's contacts with the U.S. MTD 11–13; R&R Obj. 5–10.

As to the substance, a court may exercise specific jurisdiction *only* if the plaintiff's claims arise out of contacts the defendant makes with the forum. *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017); MTD 9 (citing cases). But here, Plaintiffs provide no explanation of how their claims have any relationship to BHL's or Mr. Zhao's contacts with either Massachusetts or the U.S. generally—nor can they. MTD 11–13. Indeed, the MTD is replete with examples of the SAC's deficiencies, yet the Opposition responds to none, instead staking everything on the law-of-the-case argument while making passing reference to Plaintiffs' Opposition to Defendants' FAC MTD (Opp. 8–9). Plaintiffs have therefore waived any argument that Rule 4(k)(2) confers specific jurisdiction here. *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed . . . ."). Adhering to the R&R's Rule 4(k)(2) conclusion would be erroneous and would highly prejudice BHL and Mr. Zhao by requiring them to defend this lawsuit despite Plaintiffs' failure to plausibly allege facts establishing specific jurisdiction.

Plaintiffs similarly waived any argument that the Court may exercise general jurisdiction. Rather than address the MTD's arguments, the Opposition merely reiterates that the MTD should be denied because the FAC's and SAC's personal jurisdiction allegations are "identical" and refers to Plaintiffs' Opposition to Defendants' FAC MTD. Opp. 1, 9.[3] But Plaintiffs' Opposition to the FAC MTD did not advance a general jurisdiction argument against BHL or Mr. Zhao. R&R 62. As a result, Plaintiffs' reference to their prior opposition brief is a tacit concession that this Court does not have general jurisdiction over either BHL or Mr. Zhao. MTD 9–11.

---

[3] Plaintiffs' assertion that the FAC's and SAC's jurisdictional allegations are "identical" is not entirely accurate because the SAC includes boilerplate recitations of the components of Rule 4(k)(2), which were not in the FAC. MTD 6 n.2, 12 n.11.

In sum, Plaintiffs' attempt to establish personal jurisdiction over BHL and Mr. Zhao fails. The law-of-the-case doctrine is inapplicable, and Plaintiffs offer no substantive argument that the SAC alleges facts allowing the Court to exercise specific or general jurisdiction. As a result, the SAC should be dismissed with prejudice for lack of personal jurisdiction.

## III.    The SAC Should Be Dismissed for Failure to State a Claim.

The SAC should be dismissed in its entirety because it fails to allege causation, a domestic injury, or the existence of a RICO enterprise. In addition, Counts 2–4 should be dismissed because Plaintiffs fail to allege a proper RICO predicate, and Count 6 should be dismissed for failure to allege conspiracy.

### A.    Plaintiffs Fail to Plausibly Allege Causation.

The SAC's factual allegations of causation are materially identical to those in the FAC, which this Court already found fatally deficient as "conclusory," "speculative," and "attenuat[ed]." R&R 36, 78. Plaintiffs admit that they cannot cure the deficiencies that doomed their previous theory of causation (reflected in Count 1 of the SAC). Opp. 1 n.2 (agreeing that Count 1 must be dismissed). But Plaintiffs argue that by repleading their allegations as "aiding and abetting," they have revived their claims.

Remarkably, while relying on the exact same factual allegations that this Court previously found legally insufficient, Plaintiffs now claim that simply relabeling those allegations as "aiding and abetting" makes their theory of causation "straightforward." Opp. 2, 10, 13. In fact, according to Plaintiffs, because they have recast Defendants' conduct as aiding and abetting, they no longer need to plead that Defendants' conduct was the but-for or proximate cause of their alleged injuries. Plaintiffs' argument contorts the law beyond recognition and cannot cure the causation defects that led this Court to dismiss Counts 2–4 of the FAC.

### 1. Plaintiffs Still Fail to Plausibly Allege But-For Causation.

It is black-letter law that a plaintiff in a civil RICO action must plausibly allege that the *defendant's* actions were the but-for cause of the plaintiff's injury. R&R 68 ("'Three Supreme Court cases interpret 'by reason of' to require that a plaintiff in a civil RICO action show that the *defendant's actions were . . . a 'but for' cause of [the plaintiff's] injury*.'" (emphasis added) (quoting *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 35 (1st Cir. 2021))). More specifically, a plaintiff must allege that the defendant's alleged predicate offense caused the plaintiff's injury. *See, e.g.*, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the plaintiff is required to show that *a RICO predicate offense . . . was a 'but for' cause of his injury*.'" (emphasis added) (internal quotations omitted)).

Plaintiffs cannot satisfy this standard—and they do not even try. Plaintiffs allege that Defendants aided and abetted money laundering and wire fraud, but they do not even attempt to plead that Defendants' aiding and abetting was a but-for cause of their alleged injuries. And the SAC refutes that possibility by expressly alleging that non-party syndicates successfully stole Plaintiffs' cryptocurrency and laundered significant portions of it at *other exchanges*, without Defendants' alleged assistance. MTD 18 (citing SAC ¶¶ 67, 71, 74). Even by their own allegations, Plaintiffs *were in fact injured* absent Defendants' alleged aiding and abetting.

Having pled themselves out of any argument for but-for causation, Plaintiffs pivot to argue that, "[i]n the context of aiding and abetting, the only causal link that a plaintiff must show is a link between *the principal's criminal acts* and the plaintiff's injuries." Opp. 11 (emphasis added). In other words, Plaintiffs maintain that they need only plead that the actions of the non-party syndicates (wire fraud and money laundering) caused their injuries. *Id.*

Plaintiffs do not cite any case for this novel theory that RICO's causation requirements do not apply in aiding and abetting cases because no such authority exists. The only purported basis

for Plaintiffs' argument is 18 U.S.C. § 2, which provides that a defendant who aids and abets an offense against the United States is punishable as a principal. *See* Opp. 12–13 (citing *Busic v. United States*, 446 U.S. 398, 411 n.18 (1980) and *Rosemond v. United States*, 572 U.S. 65, 70, 73 (2014)). But Section 2 is not part of RICO, nor does it have any bearing on whether Plaintiffs have satisfied RICO's causation requirement. *See, e.g.*, *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 476 (S.D.N.Y. 1996) ("Section 2 has no application to § 1964(c), the provision that creates the civil RICO action, because a violation of § 1964(c) is not 'an offense against the United States' within the meaning of § 2."). Section 2 merely establishes criminal liability for aiders and abettors; it says nothing about civil RICO's explicit "by reason of" causation requirement.

Plaintiffs' reliance on *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018), is misplaced. Plaintiffs cite *Linde* for the proposition that "causation would not be in dispute if the bank is considered an aider and abettor of Hamas acts of terrorism." Opp. 12 (citing *id.* at 318). Plaintiffs omit, however, that *Linde* considered the standard of causation under the Justice Against Sponsors of Terrorism Act ("JASTA"), which modified the Antiterrorism Act by expressly providing that "liability may be asserted as to any person who ***aids and abets***, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2) (emphasis added). RICO contains no analogous aiding-and-abetting provision. And in fact, before passage of JASTA, courts applying the Antiterrorism Act rejected the argument that Plaintiffs now advance. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013) (holding that a defendant cannot be liable under the ATA on an aiding-and-abetting theory of liability and, moreover, that plaintiffs had not plausibly alleged that "defendants' actions" caused plaintiffs' injuries).

8

Plaintiffs' remaining citations are equally inapposite because they do not analyze causation at all. Opp. 12 (citing *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 270 (3d Cir. 1995) (analyzing elements of aiding and abetting) and *Trs. of Bos. Univ. v. ASM Commc'ns, Inc.*, 33 F. Supp. 2d 66, 72 n.6 (D. Mass. 1998) (discussing whether aiding and abetting is a predicate offense under RICO)). Even worse, to the extent Plaintiffs' cited cases are relevant to causation, they reinforce the need for Plaintiffs to allege a causal link between Defendants' alleged aiding and abetting and Plaintiffs' alleged injuries. *See, e.g.*, *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985) ("In alleging the requisite 'substantial assistance' by the aider and abettor, the complaint must allege that ***the acts of the aider and abettor*** proximately caused the harm to the corporation on which the primary liability is predicated." (emphasis added)).

## 2. Plaintiffs Still Fail to Plausibly Allege Proximate Causation.

Plaintiffs' new theory of proximate causation suffers from the same fatal flaws as their but-for causation theory. Despite relabeling their claims, Plaintiffs have not established proximate causation for Counts 2–4 (which rely on the RICO predicates of aiding and abetting money laundering and aiding and abetting wire fraud) or Count 6 (RICO conspiracy).

***Aiding and Abetting Money Laundering***. This Court already rejected the argument that money laundering proximately caused Plaintiffs' alleged injuries:

> The court assumes without deciding that plaintiffs plausibly allege money laundering as a predicate act. It can adopt similar reasoning and recommend dismissal. Plaintiffs argue that *Oki* is inapposite because, there, the money laundering occurred after the sales of the semiconductors, *see* 298 F.3d at 771, 774, whereas here, the money laundering transactions "were the sales," so to speak. (#57 at 29-30.) The court agrees with defendants, *see* #61 at 17, that the salient fact is that the money laundering occurred after the theft. No allegations here suggest that the scammers laundered the cryptocurrency and cashed it out in order to show plaintiffs that their investments were increasing in value and to convince them to purchase more

cryptocurrency. ***Thus, plaintiffs' injury, that is, the stolen cryptocurrency, lacks the requisite "direct relationship" to the alleged money laundering***.

R&R 77 n.52 (emphasis added). The SAC contains no new allegations that warrant a departure from this ruling. In fact, it does the opposite by adding another intervening step between Defendants' conduct and Plaintiffs' alleged injuries. Whereas the FAC alleged that Defendants themselves laundered Plaintiffs' stolen cryptocurrency, the SAC alleges that Defendants aided and abetted the non-party syndicates' money laundering. MTD 15 n.15. This additional attenuation only confirms the absence of proximate causation.

In a futile attempt to salvage their claims, Plaintiffs argue that the SAC "fleshes out [the money laundering allegations] in considerably greater detail as compared to the FAC." Opp. 11. In support of that argument, they cite one paragraph of the SAC that alleges how Tether Ltd. can freeze or "burn[]" stolen USDT if theft is reported. *Id.* (citing SAC ¶ 60). That new allegation is inconsequential. To start, the FAC already alleged that money laundering was a critical component of the pig butchering schemes because it rendered the stolen assets "unrecoverable." *E.g.*, FAC ¶ 291. Further, Plaintiffs' new allegations do not address the deficiency that this Court identified with the money laundering predicate—namely, that "[n]o allegations here suggest that the scammers laundered the cryptocurrency and cashed it out in order to show plaintiffs that their investments were increasing in value and to convince them to purchase more cryptocurrency." R&R 77 n.52. Thus, Plaintiffs still have not alleged a proximate causal link between Defendants' alleged aiding and abetting of money laundering and Plaintiffs' alleged injuries.

***Aiding and Abetting Wire Fraud***. Plaintiffs' theory of proximate causation for aiding and abetting wire fraud has the same flawed premise as their but-for causation theory. They recognize that they cannot plausibly allege a proximate causal link between Defendants' conduct and their

alleged injuries. Instead, they argue that they need not connect Defendants' conduct to their alleged injuries because the syndicates' wire fraud is "imputed to Binance and Zhao as aiders and abettors." Opp. 2–3. That argument fails for the reasons set forth above—Plaintiffs must allege a proximate causal link between ***Defendants' actions*** and Plaintiffs' injuries. R&R 68; *Sterling*, 990 F.3d at 35. They have not done so.

 ***Conspiracy***. Plaintiffs fail to plead causation for their RICO conspiracy count for the same reasons as their substantive RICO counts (1–4). MTD 15 n.14. Plaintiffs call this argument "absurd,", Opp. 13, but this Court previously adopted it, correctly recognizing that "[i]f plaintiffs' theory of causation for either of the conspiracy counts were the same as its theory of causation for the substantive counts, then the conspiracy counts would fail, as well." R&R 73 n.50. To the extent Plaintiffs advance any theory of causation for Count 6, it appears to be the same as their theory for aiding and abetting (*i.e.*, that they need only establish a causal link to the non-party syndicates' alleged money laundering or wire fraud). The only case that Plaintiffs cite for this argument is *Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991), which rejected a RICO conspiracy claim because the underlying offense was not actionable under RICO. *Id.* at 48–49. *Miranda* does not address the standard for causation under RICO. If anything, it reinforces why Plaintiffs' RICO claim should be dismissed out of hand. *See id.* at 48 (affirming dismissal of "perfunctory" RICO conspiracy allegation that "fail[ed] to provide any specifics as to the details of the alleged conspiracy or the predicate acts committed in the pursuit thereof"). Because Plaintiffs' theory of causation on Count 6 is the same as Counts 2–4, Count 6 similarly fails for lack of causation. *See id.* at 47–49; *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 147 (2d Cir. 2018) (dismissing RICO conspiracy claim because plaintiff's failed causation theory was the same for the substantive RICO and conspiracy claims).

**B.    Plaintiffs Fail to Plausibly Allege Domestic Injury.**

The SAC should be dismissed because, contrary to Plaintiffs' Opposition, it fails to (1) "include[] the essential factual allegations" this Court required to state a domestic injury and (2) plausibly allege that the Plaintiffs' injuries "largely manifested" in the U.S. Opp. 14–15.

*First*, the SAC fails to plead that the scammers were "targeting United States-based victims" and that the "stolen cryptocurrency originated in the United States"—allegations this Court found essential to state a domestic injury. R&R 82; Opp. 14. The Supreme Court has indicated that the "targeting" inquiry assesses if *the underlying racketeering activity* "predominantly [] targeted" the U.S. *Yegiazaryan v. Smagin*, 599 U.S. 533, 537 (2023). Thus, Plaintiffs' failure to establish that the alleged pig butchering schemes were solely, or even primarily, targeting Americans is fatal. MTD 25. As explained in the R&R, the pig butchering schemes were carried out "by one or more 'international' syndicates," R&R 82, and the only plausible inference from the SAC is that those syndicates, who "engaged in a variety of *international* crimes," targeted victims regardless of locale, SAC ¶ 274 (emphasis added). Indeed, this Court recognized that the pig butchering schemes targeted foreign citizens—six of whom were plaintiffs in the FAC—in addition to U.S. residents. R&R 81. Plaintiffs' only response—that the SAC alleges the "scammers knew" that a handful of their victims were American (Opp. 14)—does not plausibly allege "targeting." *See Parker v. Hurley*, 514 F.3d 87, 96 (1st Cir. 2008) ("targeting" requires "singling out" a specific group, not simply affecting one group in addition to others).

Moreover, the SAC's new allegation regarding self-custodied wallets does not plausibly establish that the "stolen cryptocurrency originated" in the U.S. R&R 82; Opp. 14. To plead the location of Plaintiffs' wallets, the SAC alleges in conclusory terms that "the 'location' of a self-custodied wallet is the same as the location of the self-custodied wallet's owner." SAC ¶ 44. This allegation directly contradicts Plaintiffs' other allegations, MTD 25 n.18, and is precisely the type

of "bald assertion[]" and "unsupportable conclusion" that this Court "should 'eschew any reliance on.'" *Lee v. Grondolsky*, 2012 WL 1109268, at *1 (D. Mass. Mar. 30, 2012) (citation omitted). In any event, pleading the "location of the property at the time of racketeering" alone does not domesticate an otherwise foreign injury, *Percival Partners Ltd. v. Nduom*, 99 F.4th 696, 703 (4th Cir. 2024) (citing *Yegiazaryan*, 599 U.S. at 545), and the SAC still fails to allege "where the Plaintiffs actually 'felt the effects of the international wire communications.'" MTD 26 (quoting R&R 82 (internal quotations omitted)).

*Second*, the SAC fails to plead that "plaintiffs' financial injuries largely manifest[ed]" in the U.S. Opp. 15. In *Yegiazaryan*, the alleged injury "largely manifested" domestically because, under the "contextual approach" reaffirmed in *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 941 (2025), the racketeering activity: (1) "largely occurred in" the U.S.; or (2) was "directed from *and* targeted at" the U.S. *Yegiazaryan*, 599 U.S at 543, 549 (emphasis added).[4] Applying those factors here, Plaintiffs' injuries "largely manifested" abroad. *Id* at 546; *see Med. Marijuana, Inc.*, 145 S. Ct. at 941; MTD 23–25. The only plausible inference from the SAC is that Defendants' alleged racketeering activity largely occurred overseas, rendering any injury non-domestic. MTD 24.[5] Even if this Court finds that Plaintiffs plausibly pled "targeting" and/or that the cryptocurrency

---

[4] Courts analyzing domestic injury in the wake of *Yegiazaryan* have looked to these two factors to determine if the injury is domestic in nature. *See, e.g.*, *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1276 (9th Cir. 2023) (alleged injury was domestic because "the alleged racketeering activity 'largely occurred in or was directed from and targeted at' the United States" (quoting *Yegiazaryan,* 599 U.S. at 549); *Abernathy v. Carlyle Grp., Inc.,* 2024 WL 5331993, at *7 (D.D.C. Sept. 27, 2024); *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1185 (N.D. Ga. 2024).

[5] Plaintiffs' citation to *United States v. Elbaz*, 52 F.4th 593 (4th Cir. 2022), is unavailing. Opp. 15. The cited portion of *Elbaz* analyzes where wire fraud occurs for *venue* purposes. And even under the less stringent venue standard, *Elbaz* notes that wire fraud occurs both where the "wire [] was sent" and "where it was [] received," *id*. at 604, factors that weigh against finding a domestic injury here. MTD 23–25.

"originated in the [U.S.]," R&R 82, the SAC should be dismissed because the syndicates' schemes were "directed from" abroad. MTD 24–25.

In attempting to cure the deficiencies that this Court previously identified, Plaintiffs point to four alleged facts, none of which establish that their injuries "largely manifest[ed]" domestically. Opp. 15. First, the SAC is devoid of any factual allegations supporting the assertion that "the plaintiffs received the false and fraudulent [] communications from the scammers" in the U.S. *Id.* Second, Plaintiffs' allegations about U.S. area codes, social media profiles, and self-custodied wallets do not support a reasonable inference that "the plaintiffs maintained the money and property that the scammers stole from them" in the U.S. *Id.*; MTD 25 n.18. Third, the Supreme Court has rejected Plaintiffs' assertion that where the "plaintiffs resided" is indicative of domestic injury. Opp. 15; *Yegiazaryan*, 599 U.S. at 545. Finally, Plaintiffs' assertion that the "scammers knew they were directing their fraudulent [] communications" to the U.S. is unsupported and does not establish "targeting," which, in any event is insufficient to plead domestic injury. Opp. 15; *see* MTD 25.

## C.    Plaintiffs Fail to Plausibly Allege the Existence of a RICO Enterprise.

Plaintiffs do not even attempt to defend their failure to allege the existence of any criminal enterprise. Instead, they reimagine this Court's prior motion to dismiss order as "refus[ing] to endorse (and thus implicitly reject[ing])" Defendants' enterprise arguments. Opp. 20. This is fiction. The Court's prior order unequivocally provided that "[t]he Court need not, and does not, address" Defendants' enterprise arguments. R&R 65. Declining to reach an argument, particularly because other arguments counseled in favor of dismissal, in no way "implicitly reject[s]" that argument.

After mischaracterizing the R&R, Plaintiffs refer to arguments made in their Opposition to Defendants' Motion to Dismiss the First Amended Complaint. Opp. 20. Those arguments fail for

the same reasons identified in Defendants' FAC Reply. FAC Reply 12. Namely, Plaintiffs ignore binding precedent establishing that (1) "the unlawful enterprise itself cannot also be the person [allegedly] conducting it," *Doyle v. Hasbro, Inc*., 103 F.3d 186, 190 (1st Cir. 1996), and (2) a plaintiff must plausibly allege "a continuing unit that functions with a common purpose" to plead an association-in-fact enterprise under § 1962(c), *Boyle v. United States,* 556 U.S. 938, 948 (2009). This precedent is fatal to Plaintiffs' enterprise allegations.

### D.    Plaintiffs Fail to Plausibly Allege a Proper RICO Predicate.

### 1.    The SAC Fails to Allege Money Laundering.

Plaintiffs concede that the SAC's allegations concerning money laundering as a RICO predicate are baseless. Opp. 1 n.2, 8–9; MTD 31–32.[6] The SAC alleges that "[b]ecause the Binance.com exchange operated in violation of 18 U.S.C. § 1960(a) [(operating an unlicensed money transmitting business)], and because a violation of 18 U.S.C. § 1960(a) is a RICO predicate under 18 U.S.C. § 1961(1)(B), every financial transaction that Binance conducted on the Binance.com exchange also was a violation of 18 U.S.C. § 1956(a)(1)(A)(i) [(money laundering)] by virtue of 18 U.S.C. § 1956(c)(7)(A)'s cross-reference to 18 U.S.C. § 1961(1)." SAC ¶ 267; *see also id*. ¶¶ 88, 104. This allegation was made primarily with respect to Enterprise #1 in Count 1, *id*. ¶¶ 267, 281, which Plaintiffs concede must be dismissed, but it also potentially applies to Enterprise #5 (Count 6) and the allegations that BHL and Mr. Zhao conspired with criminal syndicates to launder crypto assets. *Id*. ¶¶ 88, 104, 274, 297.[7] To the extent Plaintiffs assert that

---

[6] Plaintiffs appear to have abandoned their prior contention that money laundering is a RICO predicate, focusing instead on otherwise insufficient aiding and abetting claims. Opp. 1 n.2, 8–9. In an abundance of caution, as described in the MTD, BHL and Mr. Zhao maintain that the SAC fails to plausibly allege money laundering. MTD 31–32.

[7] In contrast to Counts 1 and 6, for which Plaintiffs claim that money laundering is a RICO predicate, Counts 2–4 allege that aiding and abetting money laundering is a predicate. SAC ¶¶ 269,

money laundering is a predicate underlying Count 6, their Opposition does not include any argument that the SAC sets forth facts plausibly alleging every element of money laundering, and Plaintiffs' so-called "cross-reference" argument is nonsensical. MTD 31–32. Plaintiffs merely rely on conclusory assertions that BHL and Mr. Zhao knew that unspecified criminals laundered money using Binance.com, which are plainly insufficient to allege that BHL or Mr. Zhao themselves knowingly laundered the proceeds of any crime.

### 2.    The SAC Fails to Allege Aiding and Abetting.

Plaintiffs' attempt to assert aiding and abetting liability under RICO misconstrues precedent; ignores the clear limitations in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), that when Congress intends to impose aiding and abetting liability, it uses those words in the statutory text; and fails to state a claim.

*First*, Defendants' MTD demonstrated that aiding and abetting is not a predicate offense under RICO. MTD 32–34. In response, Plaintiffs rely on an incomplete reading of *Aetna Casualty Sur. Co. v. P & B Autobody*, 43 F.3d 1546 (1st Cir. 1994), claiming that the First Circuit determined aiding and abetting can support a RICO claim. Contrary to Plaintiffs' suggestions, *Aetna* did not consider the impact of *Central Bank* on RICO. Instead, *Aetna* cited a criminal case that relied on cases **pre-dating** *Central Bank* for the proposition that civil RICO claims could lie where a defendant aided and abetted at least two predicate racketeering acts. *Id*. at 1560. Further, Plaintiffs' attempt to characterize the First Circuit's treatment of aiding and abetting claims under RICO as well-settled is misleading. As described in *Marrero-Rolon v. Autoridad*, to which Plaintiffs cite, while the court there cited *Aetna* for the proposition that aiding and abetting mail fraud may

---

271, 284, 287, 290. As explained in Section III.D.2 below, Plaintiffs' aiding and abetting claims fail as a matter of law.

constitute a RICO predicate, the court also noted that the First Circuit has "declined to decide whether that remains the law in light of [*Central Bank*]." 2015 U.S. Dist. LEXIS 134211, at *51 n.36 (D.P.R. Sept. 29, 2015); Opp. 16.

Plaintiffs' argument is further undermined by its citation to *Jaguar Cars*, 46 F.3d 258. Opp. 12. In *Jaguar Cars*, the Third Circuit noted that "a defendant may be liable under RICO if he aided or abetted the commission of at least two predicate acts of mail fraud." *Id*. at 270. But in *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998), the Third Circuit **expressly rejected** *Jaguar Cars*' discussion of aiding and abetting liability, holding that a "private cause of action for aiding and abetting a RICO violation cannot survive the Supreme Court's decision in [*Central Bank*]." *Id*. at 656. The court clarified that the parties in *Jaguar Cars* did not challenge "the existence of a cause of action for aiding and abetting" a RICO violation, and that its opinion "neither explicitly nor implicitly decided the impact of *Central Bank* . . . on the continued availability of a private cause of action for aiding and abetting a RICO violation." *Id*. at 657; *see also Pa. Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 843 (3d Cir. 2000) (referencing *Rolo*'s holding "that, after *Central Bank*, aiding and abetting liability under RICO [is] no longer available").

Consistent with *Central Bank*, this Court should conclude that a § 1962(c) claim cannot be based on aiding and abetting predicate acts. *See* MTD 33 n.20 (citing cases). As set forth under § 1961(1), "racketeering activity" includes, among other things, acts that are "indictable under" certain statutes. Aiding and abetting a substantive offense, however, is not automatically "indictable under" the substantive-offense statute alone. Any such indictment must also include 18 U.S.C. § 2 (aiding and abetting statute), which is not referenced under § 1961(1). Accordingly, absent clear congressional intent to include aiding and abetting as a RICO predicate, courts cannot

17

and should not read aiding and abetting liability into RICO. To do so would improperly expand the statute beyond its boundaries, violating both its text and principles of statutory construction.

**Second**, even if this Court were to conclude that aiding and abetting is a valid RICO predicate, the SAC still fails to state a claim because it does not plausibly allege, at the very least, that BHL and Mr. Zhao: (1) shared the scammers' specific intent, and (2) associated themselves with the scammers' venture, participated in that venture as something they wished to bring about, and sought by their actions to make it succeed. *See Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, 94 F.3d 721, 731 (1st Cir. 1996) (record did not support aiding and abetting RICO claims primarily because there was insufficient evidence that defendant "'consciously shared' in the principal wrongdoer's [] specific intent to defraud the plaintiffs"); *United States v. Loder*, 23 F.3d 586, 590–91 (1st Cir. 1994) (describing elements of aiding and abetting); *see also Twitter, Inc. v. Tamneh*, 598 U.S. 471, 498 (2023) (plaintiffs failed to allege that defendants "culpably associated themselves with the . . . attack, participated in it as something that they wished to bring about, or sought by their action to make it succeed" (cleaned up)). Here, the SAC merely alleges that BHL and Mr. Zhao knew some unspecified group(s) of bad actors used the Binance.com exchange to convert stolen crypto into legal tender. Plaintiffs' attempt to bolster their claims by pointing to instances of purported compliance-related misconduct to which BHL and Mr. Zhao pled guilty— each only tangentially related to otherwise generically-alleged wrongful conduct here—does nothing to substantiate their case and remains plainly insufficient. *See* Opp. 17.

Plaintiffs' reliance on *Raanan v. Binance Holdings Ltd.*, 2025 U.S. Dist. LEXIS 33874 (S.D.N.Y. Feb. 25, 2025), is misplaced. *Raanan*'s secondary liability claims arise under JASTA, which—unlike RICO—expressly imposes liability for aiding and abetting terrorism. *See* 18 U.S.C. § 2333(d). As a result, the court and parties in *Raanan* had no need to grapple with the impact of

18

*Central Bank* on JASTA. This critical distinction dooms any comparison between this case and *Raanan*.[8]

### E.    Count 6 Fails to Allege a RICO Conspiracy.

Plaintiffs continue to skirt their obligation to plausibly allege that BHL and Mr. Zhao knowingly joined a RICO conspiracy and agreed with one or more co-conspirators to commit two RICO offenses. *Jakuttis v. Town of Dracut, Mass.*, 656 F. Supp. 3d 302, 349 (D. Mass. 2023) ("[A] plaintiff must allege sufficiently that the defendants knowingly entered into an agreement to commit two or more predicate crimes." (cleaned up)); MTD 35 (citing cases). The SAC, like the FAC, does not plead any ***facts*** establishing the existence of any such agreements. The SAC contains no allegations that BHL or Mr. Zhao knew of the existence of the criminal syndicates comprising Enterprise #5[9]—Plaintiffs admit that even they do not know whether the enterprise was made up of "a single common syndicate or multiple syndicates," SAC ¶ 265—much less that BHL or Mr. Zhao agreed to a pattern of racketeering activity with those syndicates. The SAC's conclusory assertion that BHL and Mr. Zhao "agreed to facilitate Enterprise #5's wire frauds and money laundering by permitting Enterprise #5 unfettered use of the Binance.com exchange" (SAC ¶ 265) is insufficient because alleged knowledge that unidentified third-parties converted stolen crypto to legal tender on Binance.com does not establish an agreement. *See, e.g., Douglas v.*

---

[8] As shown in BHL and Mr. Zhao's motions for reconsideration and to certify an interlocutory appeal in *Raanan*, it is Defendants' position that the court there erred in sustaining the JASTA claim. *See Raanan v. Binance Holdings Ltd.*, No. 1:24-cv-00697-JGK-BCM (S.D.N.Y.), Dkt. No. 58 (Memorandum of Law in Support of Defendants' Joint Motion for Reconsideration of the Court's February 25, 2025 Order) at 2–11 *and* Dkt. No. 62 (Memorandum of Law in Support of Defendants' Joint Motion to Certify the Court's February 25, 2025 Order for Interlocutory Appeal) at 5–15. However, this Court need not reach that issue because, as noted above, *Raanan*'s analysis of JASTA liability is inapplicable to this case.

[9] Enterprise #5 is allegedly comprised of "[e]ach of the criminal syndicates that defrauded the Plaintiffs." SAC ¶ 265.

*Lalumiere*, 2021 WL 4470399, at *4 (D. Me. Sep. 29, 2021) (allegations that defendants "realized the proceeds" of the RICO enterprise and "knew about the fraud committed by the Enterprise" are insufficient). The Opposition makes no attempt to identify facts in the SAC establishing the required agreement, which only confirms that Count 6 must be dismissed.

## IV.    The SAC Should Be Dismissed With Prejudice.

In their MTD, Defendants specifically requested that the Court dismiss the SAC with prejudice. Notably, Plaintiffs' Opposition does not request leave to amend or argue that any dismissal should be without prejudice, effectively conceding that further amendment would be futile. Accordingly, the Court should dismiss the SAC with prejudice.

## <u>CONCLUSION</u>

The SAC should be dismissed in its entirety with prejudice.

Dated: May 9, 2025                           Respectfully submitted,

                                             */s/ Joseph P. Davis III*
                                             Joseph P. Davis III (BBO # 551111)
                                             Linda M. Ricci (BBO # 600284)
                                             Mian R. Wang (BBO # 683656)
                                             Alison T. Holdway (BBO # 690569)
                                             GREENBERG TRAURIG, LLP
                                             One International Place, Suite 2000
                                             Boston, MA 02110
                                             Tel.:    (617) 310-6000
                                             davisjo@gtlaw.com
                                             linda.ricci@gtlaw.com
                                             wangm@gtlaw.com
                                             alison.holdway@gtlaw.com

                                             - and -

                                             David I. Miller (*pro hac vice*)
                                             GREENBERG TRAURIG, LLP
                                             One Vanderbilt Avenue
                                             New York, NY 10017
                                             Tel.:    (212) 801-9200
                                             david.miller@gtlaw.com

                                             *Counsel for Defendant Binance Holdings Limited*

                                             */s/ Avi Perry*
                                             Avi Perry (*pro hac vice*)
                                             QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP
                                             1300 I Street, NW, Suite 900
                                             Washington, DC 2005
                                             Tel.:    (202) 538-8330
                                             aviperry@quinnemanuel.com

                                             - and –

                                             Isaac Saidel-Goley (BBO # 699659)
                                             Zi Chun Wang (BBO # 709803)
                                             QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP
                                             111 Huntington Avenue, Suite 520
                                             Boston, MA 02118
                                             Tel.:    (617) 712-7100

21

isaacsaidelgoley@quinnemanuel.com
michellewang@quinnemanuel.com

- and -

Peter H. Fountain (*pro hac vice*)
Ted Ovrom (*pro hac vice*)
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10010
Tel.:    (212) 849-7000
peterfountain@quinnemanuel.com
tedovrom@quinnemanuel.com

*Counsel for Defendant Changpeng Zhao*

*/s/ George Mastoris*
Seth C. Farber (BBO # 554652)
George Mastoris (*pro hac vice*)
Thania Charmani (*pro hac vice*)
Gabriela Beata Wolk (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel.:    (212) 294-6700
sfarber@winston.com
gmastoris@winston.com
acharmani@winston.com
gwolk@winston.com

- and -

Daniel T. Stabile (*pro hac vice*)
WINSTON & STRAWN LLP
200 S. Biscayne Boulevard
Miami, FL 33131
Tel.:    (305) 910-0500
dstabile@winston.com

*Counsel for Defendant BAM Trading
Services, Inc.*